IN THE UNITED STATES DISTRICT COURT
FOR THE NOTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| CRST EXPEDITED, INC.,<br><br>Plaintiff<br><br>v.<br><br>SWIFT TRANSPORTATION CO., INC.,<br><br>Defendant. | Case No. 1:17-cv-00025-LRR<br><br>**COMPLAINT AND<br>JURY DEMAND** |

Plaintiff CRST Expedited, Inc., for its Complaint against Defendant Swift Transportation Co., Inc., states and alleges as follows:

## PARTIES

1. Plaintiff CRST Expedited, Inc. ("CRST"), formerly known as CRST Van Expedited, Inc., is a resident and citizen of the State of Iowa with its principal place of business in Cedar Rapids, Linn County, Iowa.

2. Defendant Swift Transportation Co., Inc. ("Swift") is a resident and citizen of the State of Arizona, incorporated under the laws of the State of Delaware, but with a principal place of business in Phoenix, Arizona.

## JURISDICTION AND VENUE

3. This Court has diversity jurisdiction over this cause of action pursuant to 28 U.S.C. §1332(a)(1) as the amount in controversy exceeds $75,000, exclusive of interest and costs, and the parties are citizens of different states.

1

4. Venue is proper in this Court and District by operation of 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in Cedar Rapids, Linn County, Iowa.

## FACTUAL BACKGROUND

CRST Generally

5. CRST is one of a handful of trucking companies that provide long-haul, expedited freight hauling services to its customers.

6. To fulfill its clients' needs, CRST staffs each of its trucks with two drivers, enabling the trucks to move continuously, decreasing the shipping time for coast-to-coast shipments.

7. CRST's two-driver model is both cost and personnel intensive, requiring CRST to continually recruit and train new drivers.

8. CRST has invested substantial time, expense, and manpower in establishing a Driver Training Program ("Driver Training Program" or the "Program") that allows individuals to become licensed truck drivers by satisfying all the applicable state and federal regulations. This investment includes the cost of the Program itself, personal expenses of the students attending the Program, orientation expenses, and the expense of maintaining recruitment and orientation departments.

9. CRST also expends substantial time, expense, and manpower in advertising and recruiting individuals for its Driver Training Program.

10. Individuals enrolled in the Driver Training Program acknowledge the expenses that CRST incurs in running the Program by executing both a Pre-Employment Driving Training Agreement and a Driver Employment Contract (the "Employment

2

Contract"). *See* Exhibit A, redacted to remove proprietary information, attached hereto and incorporated by this reference as if fully set forth herein.

11. In consideration for CRST advancing the cost of participation in its Driver Training Program, the individual driver/trainee agrees to employment with CRST on the terms outlined in the Employment Contract, and barring compliance with those terms, that the individual driver will not compete with CRST for a period of time equal to the term of employment agreed to.

12. Specifically, pursuant to the Employment Contract, in exchange for CRST advancing the cost of participation in the Driver Training Program, the driver agrees to a ten (10) month employment term with CRST. In doing so, the driver acknowledges that:

> Employee's ability to render the services under this [Employment] Contract is the result of CRST having made a substantial financial commitment in Employee's driver training to satisfy the U.S. Department of Transportation and CRST requirements to become a professional truck driver with the expectation that CRST would recover such financial commitment during Employee's continuous employment for at least an eight (8) month period.

*See* Exhibit A, ¶5(a).

13. The Employee further acknowledges:

> If Employee's employment is terminated before the end of the [ten-month] Term, CRST will not recover such fees, expenses and costs, and CRST will suffer damages.

*See* Exhibit A, ¶5(a).

14. The Employee further agrees:

> For a period equal to the greater of the Restrictive Term and the duration of CRST's employment of Employee, Employee will not directly or indirectly provide truck driving services to any CRST Competitor within the continental United States....

*See* Exhibit A, ¶5(b). The Employment Contract further defines "Restrictive Term" to be the remainder of the 10-month employment term. *See* Exhibit A, ¶5(b).

Swift Generally

15. Swift is a transportation and logistics company based in Arizona.

16. Like CRST, Swift also operates a driver training program. Swift also recruits already licensed and experienced drivers from other carriers to satisfy its personnel needs.

17. Swift actively recruits drivers nationwide, including the State of Iowa.

Recruitment of CRST Drivers

18. Swift is actively recruiting CRST drivers who were within the Restrictive Term outlined in the Employment Contract to leave CRST and begin employment with Swift.

19. Department of Transportation regulations require trucking companies, such as CRST and Swift, to conduct employment verification checks on all drivers prior to employment. This check includes verifying employment with all other trucking companies listed by the driver for the three-year preceding the start of employment.

20. CRST has experienced an increase in the number of employment verification requests it was receiving from Swift for drivers that were in the 10-month Restrictive Term outlined in the Employment Contract.

21. Preliminary investigation revealed that in 2016 CRST received approximately 150 such employment verification requests from Swift for drivers who were within the 10-month Restrictive Term of their individual contracts.

22. Each time CRST received an employment verification request for a driver within the 10-month Restrictive Term of his or her individual contract, CRST sent correspondence to Swift, notifying it of the driver's contractual commitment to CRST. *See*

example of said notice correspondence, Exhibit B, redacted to remove personal data, attached hereto and incorporated by this reference as if fully set forth herein.

23. As a result of its receipt of this correspondence, Swift had knowledge both of the existence of the Employment Contract and its terms, including CRST's investment in its Driver Training Program.

24. CRST is aware that drivers who were within the 10-month Restrictive Term of their individual contracts with CRST remained employed by and/or affiliated with Swift.

### COUNT I – INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

25. CRST restates and incorporates the allegations contained in Paragraphs 1 – 24.

26. CRST's Driver Training Program was established to create an economic advantage for CRST over its competitors, by providing CRST with a reliable source of professional truck drivers in furtherance of CRST's business.

27. CRST's Driver Training Program is intended to provide a reasonable expectation of profit for CRST, in addition to an economic advantage for CRST over its competitors.

28. The expectation of both CRST and its trainees/drivers is that CRST will recoup the cost of the Driver Training Program first through a set term of employment with the driver upon successful completion of the Program, and, failing that, by preventing the driver from taking the advantage that CRST has paid for to one of its competitors.

29. Swift is aware of this expectation, because of its operation in the same industry and because of its receipt of the notice correspondence.

5

30. By and through its conduct, Swift has tortiously interfered with CRST's economic advantage by inducing and causing CRST's drivers to breach their respective employment contracts with CRST.

31. Swift's conduct is intentional and improper, and designed to deprive CRST of its prospective economic advantage.

32. As a result of Swift's intentional and improper interference, CRST has been damaged in an amount in excess of $75,000.

33. Swift's intentional interference is wanton and willful, justifying the imposition of punitive and exemplary damages against Swift.

WHEREFORE, CRST Expedited, Inc. demands judgment in an amount equal to its actual and consequential damages arising from Swift's intentional interference, for punitive damages, for the fees and costs associated with this action, all interest allowable on such awards at the maximum rate allowed by law, for permanent injunctive relief as further outlined herein, and such other and further relief as may be just and proper under the circumstances.

## COUNT II – UNJUST ENRICHMENT

34. CRST restates and incorporates the allegations contained in Paragraphs 1 – 24.

35. By recruiting CRST's drivers, Swift is able to reduce the need to separately train new drivers and obtain the labor of newer truck drivers at lower costs than more experienced drivers that would demand a higher market rate for their services.

36. This benefit to Swift comes at CRST's expense. Swift's recruitment of CRST's drivers during the Restrictive Term both prevents CRST from recouping the costs associated

with its Driver Training Program and deprives CRST of its expectation in certain fixed labor costs associated with training and employing newly licensed drivers that demand a lower market rate for their services.

37. To permit Swift to retain the benefit of CRST's investment in its Driver Training Program, at CRST's expense, is both unjust and unreasonable.

WHEREFORE, CRST Expedited, Inc. demands judgment in an amount sufficient to restore CRST to the position it would have enjoyed but/for Swift's unjust enrichment, for punitive damages, for the fees and costs associated with this action, all interest allowable on such awards at the maximum rate allowed by law, and for such other and further relief as may be just and proper under the circumstances.

## COUNT III – INTENTIONAL INTERFERENCE WITH CONTRACT

38. CRST restates and incorporates the allegations contained in Paragraphs 1 – 24.

39. CRST has an Employment Contract with the drivers recruited by Swift which prohibits those drivers from leaving CRST during the Restrictive Term to work with a competitor.

40. Swift knows of the existence of these Employment Contracts both by virtue of its operation in the industry and its receipt of the notice correspondence.

41. Swift has intentionally and improperly interfered with CRST's Employment Contracts by recruiting, encouraging, and/or otherwise assisting drivers to leave CRST during the Restrictive Term and begin working for Swift, a direct competitor of CRST.

42. Swift's conduct is intentional and improper, and intended to deprive CRST of the benefit of its Employment Contracts with its drivers.

7

43. As a result of Swift's intentional and improper interference, CRST has been damaged in an amount in excess of $75,000.

44. Swift's intentional interference is wanton and willful, justifying the imposition of punitive and exemplary damages against Swift.

WHEREFORE, CRST Expedited, Inc. demands judgment in an amount equal to its actual and consequential damages arising from Swift's intentional interference, for punitive damages, for the fees and costs associated with this action, all interest allowable on such awards at the maximum rate allowed by law, for permanent injunctive relief as further outlined herein, and for such other and further relief as may be just and proper under the circumstances.

## COUNT IV – REQUEST FOR PERMANENT INJUNCTIVE RELIEF

45. CRST restates and incorporates the allegations contained in Paragraphs 1 – 44.

46. CRST has valid and enforceable contracts with its drivers that govern their respective obligations not to compete with CRST during the Restrictive Term. The restrictions in the Employment Agreement attached hereto as Exhibit A are reasonable and necessary for the protection of CRST's investment in its Driving Training Program, its expected economic advantage from that Program, and its other business interests.

47. As set forth above, Swift has intentionally interfered with both CRST's prospective economic advantage and the contracts it has with its individual drivers.

48. As a direct result of Swift's conduct, CRST has suffered and will continue to suffer irreparable harm unless and until Swift is permanently enjoined from any further intentional and improper interference.

49. Any burden resulting from the imposition of injunctive relief on Swift is negligible in comparison to the potential on-going harm suffered by CRST should the conduct be allowed to continue.

50. The imposition of injunctive relief is in the public interest as it will prevent Swift from continuing to build its business at CRST's expense and through the use of unlawful means and promote the adherence to valid and enforceable contractual interests and discourage intentional and improper interference with those interests. Furthermore, it will prevent ongoing damage to CRST's operations.

WHEREFORE, CRST Expedited, Inc. demands the entry of a permanent injunction enjoining Swift from any further or continued interference with CRST's prospective economic advantage and/or contracts with its drivers for the fees and costs associated with this action, and for such other and further relief as may be just and proper under the circumstances.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury in the above-entitled matter.

DATED: March 20, 2017

SIMMONS PERRINE MOYER BERGMAN PLC

By: /s/ Kevin J. Visser
Kevin J. Visser #AT0008101
Paul D. Gamez #AT0002806
115 Third Street SE, Suite 1200
Cedar Rapids, IA 52401
Telephone: (319) 366-7641
kvisser@simmonsperrine.com
pgamez@simmonsperrine.com

ATTORNEYS FOR PLAINTIFF