**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

CRST EXPEDITED, INC,

        Plaintiff,

vs.

SWIFT TRANSPORTATION CO. OF
ARIZONA, LLC,

        Defendant.

No. 17-CV-25-CJW

**ORDER**

---

## TABLE OF CONTENTS

I.  Motions to Stay and for a Protective Order ................................................. 4

  A.  Applicable Law ................................................................................. 5

  B.  Discussion of Motion to Stay ............................................................ 6

    1.  Undue Prejudice or Clear Tactical Disadvantage to Non-Movant ................ 6

    2.  Whether a Stay Will Simplify the Issues .............................................. 8

      a.  Intentional Interference with Contract ............................................ 9

      b.  Intentional Interference with Prospective Economic Advantage and
          Unjust Enrichment ................................................................. 12

    3.  Discovery and Trial Date ............................................................... 13

    4.  Consideration of All Factors Together ............................................... 14

  C.  Motion for a Protective Order .......................................................... 16

II.  Motion for Reconsideration .................................................................. 16

III.  Motion to Strike and Modification of Scheduling Order ............................. 20

  A.  Motion to Strike ............................................................................ 20

    1.  Applicable Law .......................................................................... 21

    2.  Discussion ................................................................................ 21

B.  Scheduling Order ......................................................................24

IV.  Conclusion.......................................................................... 26

This matter is before the Court on a number of motions: 1) defendant's Motion to Strike Expert Disclosure and Bar Testimony (Doc. 68); 2) defendant's Rule 16 Motion for a Pretrial/Scheduling Conference to Address Discovery and Depositions (Doc. 72); 3) plaintiff's Motion to Stay (Doc. 77); and 4) plaintiff's Motion for Protective Order (Doc. 78).  Plaintiff timely filed resistances to defendant's motion to strike (Doc. 76), and to defendant's motion for a scheduling conference.  (Doc. 79).  Defendant timely filed a reply in support of its motion to strike (Doc. 83), and timely filed a combined resistance to plaintiff's motion to stay and motion for protective order.  (Doc. 80). Plaintiff timely filed a combined reply in support of its motions to stay and for a protective order.  (Doc. 84).  In its motion for a scheduling conference, defendant also made a motion for reconsideration of the Court's Order docketed at docket number 70.  (Doc. 72, at 8-10).  The Court will construe defendant's embedded motion for reconsideration as a formal motion for reconsideration.  Because this motion was included in the motion for a scheduling conference, plaintiff's resistance is included in its resistance to the motion for a scheduling conference.  (Doc. 79, at 7-8).

Plaintiff filed a Supplement Regarding Motion for Protective Order on August 16, 2018, in which plaintiff renewed its request for a protective order.  (Doc. 85).  As the supplement merely provides an update to the Court as to the status of discovery, the Court has considered the supplement.

On August 6, 2018, the Court heard argument on all pending motions.  Therefore, the portion of defendant's Rule 16 Motion for a Pretrial/Scheduling Conference to Address Discovery and Depositions (Doc. 72) that sought a hearing should be considered

**granted**. For the following reasons, defendant's Motion to Strike Expert Disclosure and Bar Testimony (Doc. 68) is **denied**; defendant's motion for reconsideration (Doc. 72, at 8-10) is **granted in part and denied in part**; plaintiff's Motion to Stay (Doc. 77) is **denied**; and plaintiff's Motion for Protective Order (Doc. 78) is **denied**.

The Court notes that two motions to compel are also pending. (Docs. 61, 81). This Order, however, does not address either motion. The parties advised that they were attempting to reach a compromise on the issues presented in defendant's motion to compel (Doc. 61) and therefore requested that the Court not rule on the motion until after the parties have had an opportunity to confer in an attempt to reach an agreement. The Court finds it appropriate to hold defendant's motion to compel (Doc. 61) in abeyance, to the extent the Court has not already ruled on the motion. (*see* Doc. 67). Defendant is directed to inform the Court by **August 31, 2018**, as to the status of the parties' meet and confer attempts. Specifically, defendant is to inform the Court of whether a complete agreement has been reached such that the motion is moot. If the parties are unable to reach a complete agreement, defendant is directed to inform the Court and, further, is directed to inform the Court as to whether and how the scope of the motion has been narrowed. The Court does not need information regarding the specifics of the parties' negotiations, aside from the information set forth *supra*. Plaintiff's motion to compel (Doc. 81) is not ripe, and the Court will not presently consider the motion.

Rather than addressing the motions in the order in which they were filed, the Court will first consider the motion to stay and the motion for a protective order, together, before considering defendant's motion for reconsideration. The Court will then consider defendant's motion to strike simultaneously with discussing the deadlines governing this case. Further, because the pending motions do not share a common factual background that is relevant to all motions, the Court will provide a separate factual summary in its discussion of each motion rather than provide a single overarching background section

for all of the motions, together.

## I.    MOTIONS TO STAY AND FOR A PROTECTIVE ORDER

The alleged factual background that led plaintiff to bring this lawsuit is largely immaterial to the present motions. In sum, both plaintiff and defendant are trucking companies that hire drivers. (Doc. 43, at 2-4). Plaintiff alleges that defendant has wrongfully poached, and continues to poach, plaintiff's drivers, even though the drivers were allegedly under contract with plaintiff and had signed a non-competition agreement with plaintiff. (*Id.*, at 4-5). The parties disagree as to whether the contracts are valid and enforceable agreements.

It is noteworthy that this case is one of four related cases,[1] each of which is based on the same basic set of factual allegations and causes of action. On July 31, 2018, this Court granted summary judgment in favor of the defendant in one of the related cases, *CRST Expedited, Inc. v. TransAm Trucking, Inc.* (hereinafter "*TransAm*"). No. C16-52-LTS, 2018 WL 3738017 (N.D. Iowa July 31, 2018). The *TransAm* plaintiff[2] immediately filed a notice of appeal of the *TransAm* decision. (*TransAm*, No. 16-CV-52-LTS, Doc. 195). The following day, plaintiff in the instant case moved to stay the instant case during the pendency of the *TransAm* appeal. (*CRST Expedited, Inc. v. Swift Transp. Co.*, 17-CV-25-CJW (hereinafter "*Swift*"), (Doc. 77).

In support of its motion to stay, plaintiff argues that "[b]ecause the issues in this case are identical to those in *TransAm*, the merits of [plaintiff's] claims will be addressed by the Eighth Circuit Court of Appeals in adjudicating its appeal of this Court's grant of summary judgment in favor of TransAm." (Doc. 77-1, at 3-4). Further, plaintiff filed

---

[1] The three other related cases are *CRST Expedited, Inc. v. TransAm Trucking Inc.*, 16-CV-52-LTS; *CRST Expedited, Inc. v. Knight Transportation, Inc.*, 17-CV-24-CJW; and *CRST Expedited, Inc. v. JB Hunt Transport, Inc.*, 17-CV-26-CJW.

[2] The plaintiffs are the same in both *TransAm* and the instant case.

its motion for a protective order contemporaneously with its motion to stay and requested expedited relief on its motion for a protective order. (Doc. 78). Plaintiff seeks "a protective order specifying that all [plaintiff] witness depositions be postponed until its Motion to Stay is decided." (Doc. 78, at 2). Thus, the motion for a protective order is tied to the motion to stay.

In response, defendant argues that staying this case "will prejudice [defendant] and improperly delay final adjudication of this case." (Doc. 80, at 3). Further, defendant argues that staying this case will not conserve judicial resources because although defendant may argue some issues that were considered in the *TransAm* decision, defendant also intends to make additional arguments that will result in a summary judgment in favor of defendant. As such, defendant asserts that staying this case until such time as the Eighth Circuit rules on the appeal will not result in any benefit—to the Court or the parties—because, defendant argues, this Court will be able to grant defendant's motion for summary judgment on different bases than will be considered by the Eighth Circuit in *TransAm*. In response to plaintiff's motion for a protective order, defendant argues that the depositions sought to be postponed were properly noticed and, further, that plaintiff has not met its "heavy burden" of showing that a protective order is warranted. (Doc. 80, at 8, 11-13).

Despite plaintiff's arguments to the contrary, the Court finds that a stay is not warranted in this case, and plaintiff's motion to stay is therefore **denied**. As the protective order sought is intended to cover only those depositions that had been noticed for the time period between when plaintiff filed its motion to stay and this Court's Order on the motion to stay, plaintiff's motion for a protective order is **denied as moot**. The motion for a protective order will be discussed in greater depth *infra*.

### A.    *Applicable Law*

In determining whether to stay a case, courts generally consider the following

factors: 1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; 2) whether a stay will simplify the issues in question and trial of the case; and 3) whether discovery is complete and whether a trial date has been set. *Dordt College v. Burwell*, No. C 13-4100-MWB, 2014 WL 5454649, at *1 (N.D. Iowa Oct. 27, 2014) (citation omitted). Although the parties and issues presented in a case sought to be stayed need not be identical to the parties and issues in a proceeding that prompted the motion to stay, a court has the inherent power to stay proceedings "to control the disposition of the causes on its docket with economy of time and effort[,] for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). In determining whether to stay an action, a court must exercise its judgment and "weigh competing interests and maintain an even balance." *Id.* (citations omitted). The party seeking a stay bears the burden of persuasion in showing that a stay is appropriate. *New York Times Co. v. Jascalevich*, 439 U.S. 1304, 1305 (1978).

## B. Discussion of Motion to Stay

### 1. Undue Prejudice or Clear Tactical Disadvantage to Non-Movant

Defendant argues that staying this case would cause defendant undue prejudice and would "threaten[ ]" to place defendant at a tactical disadvantage. (Doc. 80, at 5-6). Specifically, defendant argues that a stay would "forc[e] [defendant] into a holding pattern of uncertainty for an unknown amount of time," and could expose defendant to greater liability if defendant continues to hire plaintiff's former drivers during the pendency of the stay. (*Id.*, at 5). Further, defendant argues that plaintiff would gain an "unfair tactical advantage" over defendant if this case were stayed because "a stay would improperly allow [plaintiff] to regroup and reformulate its strategy given its loss in *TransAm.*" (*Id.*, at 5-6).

The Court agrees with defendant that staying this case would result in discovery, dispositive motions, and trial being delayed. "While a stay always presents a risk of

delaying final resolution of a dispute, [however,] [t]he mere potential for delay . . . is insufficient to establish undue prejudice." *Destination Maternity Corp. v. Target Corp.*, 12 F. Supp.3d 762, 766 (E.D. Pa. 2014) (citation, internal quotation marks, and emphasis omitted) (second alteration in original). *See also 1st Tech., LLC v. Digital Gaming Sols. S.A.*, No. 4:08CV586 HEA, 2010 WL 883657, at *2 (E.D. Mo. Mar. 5, 2010) (holding, in a patent case, that "the delay inherent to the reexamination process does not constitute, by itself, undue prejudice" (citation and internal quotation marks omitted)). As such, although defendant is correct that a stay would delay final adjudication of this case, such delay does not weigh in favor of denying the motion to stay.

Defendant next argues that it would be prejudiced by a stay because defendant would be forced to either cease hiring plaintiff's former drivers during the pendency of the stay or risk allegations that plaintiff's former drivers hired during the stay led to higher damage figures. (Doc. 80, at 5). This, however, is not a new dilemma. Defendant has been faced with this choice since the inception of this lawsuit. Throughout the duration of this lawsuit, defendant has had to choose whether to risk accumulating higher damages by hiring plaintiff's former drivers or abstain from hiring plaintiff's former drivers entirely. Although the Court recognizes that a stay would prolong the duration of defendant's choice, the choice itself would not be a product of this case being stayed.

Finally, defendant argues that a stay would allow plaintiff to refine its arguments in light of this Court's decision in *TransAm*, which would place defendant at a tactical disadvantage. (*Id.*, at 6). In support of this position, defendant cites only one case, from the District of Delaware. (*Id.* (citing *St. Clair Intellectual Prop. Consultants, Inc. v. Sony Corp.*, No. Civ.A. 01-557JJF, 2003 WL 25283239 (D. Del. Jan. 30, 2003))). Although the cited case does address a motion to stay, the case does not address the issue of tactical disadvantage. As defendant offers no other support—legal or factual—for its

allegation that defendant would be placed at a tactical disadvantage were the stay to be granted, defendant has, in truth, offered no support at all for this argument. In considering defendant's argument, however, the Court finds that the additional time a stay would provide could allow plaintiff to refine its legal theories in light of this Court's *TransAm* holding. Defendant would, however, be afforded the same time period to refine its own legal theories and anticipate plaintiff's arguments. Because defendant would likewise have additional time to craft its legal arguments in light of the *TransAm* decision and in light of plaintiff's anticipated arguments in the instant case, the danger of defendant being placed at a tactical disadvantage is mitigated, to a degree.

Having considered all of defendant's arguments regarding unfair prejudice and defendant being placed at a tactical disadvantage, the Court finds that the balance, thus far, weighs in favor of granting the stay.

### 2. *Whether a Stay Will Simplify the Issues*

Plaintiff's arguments in favor of a stay largely hinge on the proposition that the issues in the *TransAm* appeal will be identical to the issues in the instant case. The Court, however, is not persuaded that the issues in the two cases are identical, or will be identical. The central issues in *TransAm* were the validity and enforceability of the contracts with which the defendant in that case allegedly interfered. *See TransAm*, 2018 WL 3738017, at *8 ("The bulk of the parties' arguments . . . revolve around [the element of a valid and enforceable contract]."). It is likely—though not certain—that these issues will present themselves in the instant case as well. At first glance, then, it would appear that the issues in the instant case are indeed the same as those to be appealed in *TransAm*.[3]

Upon closer inspection, however, key differences are apparent. First, the Court

---

[3] The Court notes that although the Notice of Appeal has been filed in *TransAm*, the parties have yet to file their merits briefs. Thus, the Court can do no more than speculate as to the issues that will be litigated before the Eighth Circuit Court of Appeals.

in *TransAm* entered summary judgment in favor of the defendant on the intentional interference with a contract claim on the sole issue of whether the passive hiring of plaintiff's drivers satisfied the third element the claim: that is that the defendant intentionally and improperly interfered with plaintiff's prospective economic advantage. *See id.* at *7. Second, with respect to that claim, in *TransAm*, this Court applied Iowa law in determining whether the contracts were valid and only had to conduct a conflict of laws analysis with respect to two different bodies of law. Specifically, the *TransAm* plaintiff argued that Iowa law applied, while the *TransAm* defendant argued that Kansas law applied. *See id.* at *5-7. Because plaintiff must satisfy the third element of the intentional interference with a contract claim here, as in *TransAm*, the *TransAm* appeal could, thus, be dispositive of this case if plaintiff loses on appeal. On the other hand, if plaintiff prevails on appeal, the *TransAm* decision may not be dispositive of this case for two reasons. First, Iowa law may not apply to this case. Second, defendant has asserted that it has other grounds upon which it will seek summary judgment. Further, an appellate decision in *TransAm* will not necessarily be dispositive of plaintiff's intentional interference with prospective economic advantage and unjust enrichment claims.

***a.  Intentional Interference with Contract***
***i.   Choice of Law***

Although plaintiff in the instant case again argues that Iowa law applies, defendant in the instant case makes a materially different choice of law argument than the defendant in *TransAm*. The *TransAm* defendant's theory for *why* Kansas law applied was based on the *TransAm* defendant being a *non-signatory resident of Kansas*. (*TransAm*, Doc. 156-2, at 10).

In conducting a choice of law analysis, the Court determined that Iowa law governed the issue of whether the contracts were valid and enforceable. *TransAm*, 2018 WL 3738017, at *7, *9-11. The Court reasoned that Iowa law was to govern because

there was no "true conflict" between Iowa law and Kansas law on the relevant issues. (*Id.* at *4-7 (explaining that where there is not a "true conflict" between the law of two forums, a court is to apply the law of the forum state in order to avoid engaging in a choice of law analysis)). Because this Court found that Iowa law was to govern the validity and enforceability of the contracts at issue in *TransAm*, the Eighth Circuit Court of Appeals will, presumably, only be confronted with potential errors surrounding either this Court's choice of law analysis, or the substantive application of Iowa law.[4]

During the hearing in the instant case, defendant clarified its position regarding which body of law applies. Although defendant agrees that Iowa law governs the substantive legal claims at issue—intentional interference with prospective economic advantage, unjust enrichment, and intentional interference with contract—defendant argues that the validity and enforceability of each contract at issue may be governed by a different state's or territory's laws. (*See* Doc. 43). Defendant has not detailed its theory as to which body of law applies to the validity or enforceability of each contract

---

[4] The Court notes that the plaintiff in *TransAm* reasoned that Iowa law should apply because "[i]n the absence of a conflict of laws, the Court should apply Iowa law." (*TransAm*, Doc. 167, at 28). Although the *TransAm* plaintiff used slightly different language than the "true conflict" language used by the Court, *TransAm*, 2018 WL 3738017, at *4, plaintiff's rationale in arguing in favor of Iowa law is nearly identical to the Court's rationale in determining that Iowa law did govern the enforceability and validity of the contracts. *See TransAm*, Doc. 167, at 28-29, *and* 2018 WL 3738017, at *4-7. As the Court's choice of law analysis so closely followed the analysis posited by plaintiff, and as the Court found—in plaintiff's favor—that Iowa law governed the relevant issues, the Court finds it doubtful that plaintiff will attempt to appeal the Court's methodology in determining which body of law governed the relevant issues. As such, it follows that when plaintiff in the instant case—which is the same plaintiff as in *TransAm*—asserts that the issues in the *TransAm* appeal will be the same as the issues presented in the instant case, plaintiff is referring to the Court's application of Iowa law to the facts in *TransAm*. To the extent plaintiff in the instant case may be expecting the *TransAm* defendant to challenge this Court's choice of law analysis that led to Iowa law being applied, such an expectation would be based on speculation at this stage and would, therefore, be an improper basis upon which to rest its motion to stay.

or why that body of law applies, and the Court finds that it is not error for defendant to have withheld its theory thus far. To the best of the Court's understanding, however, defendant intends to argue that the body of law governing the validity and enforceability of each contract is to be determined based on circumstances surrounding the *driver-signatory*. This Court in *TransAm* was not confronted with the issue of the validity and enforceability of the contracts each, potentially, being governed by a different body of law *based on the circumstances of the driver-signatories* and this Court, therefore, did not need to address the issue.

The Court will not venture a guess as to which circumstances defendant will argue may influence the choice of law determination with respect to the validity and enforceability of the contracts themselves. The Court finds it sufficient to state that the Court is willing to entertain the argument that a different body of law could govern the validity and enforceability of each contract. To be clear, the Court is not presently ruling on the merits of which body of law applies to the validity and enforceability of the contracts, nor is the Court ruling on the substantive issue of whether the validity and enforceability of each contract could be governed by a different body of law. The Court is merely stating that it is willing to consider such arguments.

The Court acknowledges that the facts in the instant case are similar to those presented in *TransAm*. However, this Court's analysis in *TransAm* regarding the validity and enforceability of the subject contracts only becomes applicable to the instant case if the Court finds that Iowa law applies to the issue of the enforceability and validity of the contracts. There is a possibility that this Court will so hold. If the Court does so hold, the Eighth Circuit's decision with respect to how Iowa law applies to the enforceability and validity of the contracts could be probative on this issue.[5] Thus, if plaintiff loses on

---

[5] This is assuming, of course, that the Eighth Circuit takes up the issue of how Iowa law applies to the validity and enforceability of the contracts, which the Eighth Circuit is under no obligation

appeal on this issue, the Eighth Circuit's decision will likely be dispositive of the enforceability and validity issue in this case. On the other hand, if plaintiff prevails on this issue at the Eighth Circuit and this Court finds that Iowa law applies to all of the contracts at issue in this case, such a finding may not be dispositive in this case, depending on the alternative arguments defendant advances.

### ii.    *Validity and Enforceability*

As noted, in *TransAm*, defendant argued only that the non-competition provision in the contracts at issue were invalid and unenforceable. (*TransAm*, Doc. 156-2, at 11, 15-19). Thus, in *TransAm*, this Court only had to consider whether the non-competition provision—as opposed to the entire contract—was valid and enforceable, and whether Kansas law or Iowa law applied to determine the validity and enforceability of the non-competition provision.

Defendant in the instant case has represented that it has additional arguments that it intends to set forth that it believes will warrant summary judgment in its favor. Given the differing theories that have been posited by defendant thus far, the Court finds credible defendant's statement that it has additional arguments to set forth beyond those that were advanced in *TransAm*. The Court offers no statement as to whether those additional arguments will actually be dispositive. It is sufficient for the Court to conclude that if defendant's alternative arguments are successful, the outcome of the *TransAm* appeal may not be dispositive of this case.

### b.    *Intentional Interference with Prospective Economic Advantage and Unjust Enrichment*

With respect to the intentional interference with prospective economic advantage and unjust enrichment claims, the Court likewise finds that the appellate decision may

---

to do.

not be dispositive.  In *TransAm*, this Court only addressed whether, under Iowa law,[6] the defendant "acted with the sole or predominant purpose to injure or financially destroy the plaintiff."  *Id.*, at *17 (citation and internal quotation marks omitted).  Answering that question requires a fact intensive inquiry.  As such, differing factors in the conduct of the *TransAm* parties versus the conduct of the parties in the instant case could render the *TransAm* appellate decision of little benefit in addressing the issue in the instant case.

Next, this Court decided in *TransAm* that the unjust enrichment claim necessarily failed for two reasons: 1) the defendant received no benefit from the plaintiff, and 2) it rested on the success of the tortious interference claims, both of which the Court found must fail.  *Id.*, at *18.  Perhaps the Court will again reach the conclusion that defendant obtained no benefit from plaintiff.  It is likely, however, that in light of this Court's *TransAm* ruling, plaintiff may rethink its theory as to the benefit received and advance different arguments.  As a result, the Eighth Circuit Court of Appeals' ruling in *TransAm* may not be dispositive of the unjust enrichment claim.  Second, if the Court finds that the different posture of this case precludes summary judgment in favor of defendant on either of the two predicate claims, the Court cannot enter summary judgment in favor of defendant on the unjust enrichment claim based on the failure of both predicate offenses.  The Court therefore does not accept the argument that awaiting the Eighth Circuit's *TransAm* ruling will necessarily simplify the issues with respect to either the intentional interference with prospective economic advantage claim or the unjust enrichment claim.

### 3.    *Discovery and Trial Date*

As is discussed *infra*, the Court is continuing the trial in the instant case and is modifying the Scheduling Order, extending the existing deadlines for completion of discovery and filing of dispositive motions.  In determining whether to grant plaintiff's

---

[6] As explained *supra*, defendant agrees that Iowa law governs the intentional interference with prospective economic advantage claim.

motion to stay, the Court will consider the motion in light of the trial date and scheduling deadlines that are set forth *infra*.

Where a trial date has been set and discovery has proceeded nearly to completion, the scale tips in favor of denying a motion to stay. *1st Tech*, 2010 WL 883657, at *1 ("[S]tays are generally disfavored where . . . the case is in a late stage of litigation and approaching trial."). *See Dordt College*, 2014 WL 5454649, at *2. Here, a trial date has been set since June 23, 2017. (*Swift*, Doc. 25). The trial was continued once, on January 31, 2018, and the new trial date was set for February 25, 2019. (Doc. 41). The Court set that new trial date approximately six months prior to plaintiff filing its motion to stay, and the February 25, 2019 trial date is a mere six months from the date of this Order. As such, the pendency of trial—both the original trial date, the first continued date, and the second continued date set forth herein—favor the denial of the motion to stay.

With respect to discovery, the issue is less clear cut. The parties are in agreement that significant discovery remains to be completed. The Court is not privy to the specifics of outstanding discovery, but the Court understands that numerous depositions have yet to be taken, there are outstanding requests for production and interrogatories, and the bulk of plaintiff's electronically stored information ("ESI") has yet to be produced. Further, there is one outstanding motion to compel that is not ripe (Doc. 81), one motion to compel that the Court is holding in abeyance (Doc. 61), and the parties have indicated that additional motions to compel may be forthcoming.

The parties have also, however, completed substantial discovery and have had more than one year to engage in discovery. To the best of the Court's understanding, both parties have undertaken considerable expense in pursuing and responding to discovery requests, and the parties are much closer to the finish line than they are to the starting line with respect to discovery. The parties agree that discovery cannot be

completed by the current deadline for completion of discovery. The Court finds, however, that the inability of the parties to complete discovery by the current deadline can be remedied by extending the deadline for completing discovery. A stay is not necessary to allow the parties to resolve pending discovery issues. The discovery issue will be discussed in greater depth, *infra*. Here, let it suffice to note that the Court recognizes that discovery is not complete, but that the parties have undertaken substantial expense in pursuit of discovery and that discovery is nearing completion.

Although the status of discovery is not dispositive of the motion to stay in the instant case, the status of discovery, here, weighs against granting the motion to stay. Were the Court to grant the motion to stay, the parties would likely have to engage in voluminous discovery once the stay is lifted, much of which may be duplicative. Further, plaintiff's production of ESI has been substantially delayed already because of technical difficulties. Were the Court to stay this case, plaintiff would have no motivation to continue to work on producing ESI discovery and work through the technical difficulties it has encountered. Rather, plaintiff would likely make no effort to resolve the ESI production problem until the stay was lifted, which would only lead to further delays. As such, staying this case would not be economical or efficient when considering discovery.

### 4. *Consideration of All Factors Together*

The balance of interests in this case falls on the side of denying plaintiff's motion to stay. In this case, the most significant factor is whether the issues would be simplified by staying the case. The Court has explained that although the possibility for simplification exists, that possibility is too tenuous to form a basis upon which the Court may stay the case. Further, this case has progressed far beyond the early stages and is nearing completion. As such, the status of the case weighs heavily against staying the case. Although the first factor, whether defendant would face undue prejudice or would

be placed at a tactical disadvantage by a stay, weighs in favor of staying the case, the two remaining factors weigh much more heavily on the side of denying plaintiff's motion than does the first factor on the side of granting plaintiff's motion. The Court finds, in its discretion, that to stay a case that has proceeded to this late stage would be a waste of judicial and litigant resources and would not be in the best interests of either party. As such, plaintiff's Motion to Stay (Doc. 77) is **denied**.

### C.     *Motion for a Protective Order*

Plaintiff's accompanying motion for a protective order seeks to postpone "all [plaintiff] witness depositions . . . until its Motion to Stay is decided." (Doc. 78, at 2). In support of plaintiff's motion, plaintiff argues that it will be unnecessary to depose plaintiff's witnesses if the Eighth Circuit Court of Appeals finds in favor of the *TransAm* defendant. As such, plaintiff seeks to postpone depositions until plaintiff's motion to stay is decided so that plaintiff can avoid incurring costs in producing witnesses for depositions.

Plaintiff requests that depositions be postponed only until the Court rules on plaintiff's motion to stay. (Doc. 78, at 2). The Court, however, has opted to rule on the motion to stay and the motion for a protective order in the same Order. Therefore, as of the filing of this Order, plaintiff's motion for a protective order was rendered moot. Plaintiff's Motion for Protective Order (Doc. 78) is, therefore, **denied as moot**.

## II.     *MOTION FOR RECONSIDERATION*

The Court will now turn to defendant's motion for reconsideration, which is embedded within defendant's Rule 16 Motion for a Pretrial/Scheduling Conference to Address Discovery and Depositions. (Doc. 72, at 8-10). During the hearing, defendant further clarified its position with respect to the motion for reconsideration.

In response to a previous motion to compel filed by plaintiff, the Court ordered defendant "to respond to [plaintiff's] Interrogatory Number Five by providing all

information sought for those drivers who were hired by defendant between January 1, 2013, and the date of [the Court's prior] Order." (Doc. 70, at 6). Interrogatory Number Five asks defendant, *inter alia*, to "[i]dentify each driver hired by [defendant] . . . who was under contract with plaintiff at the time of hiring." (*Id.*, at 4). Defendant makes two arguments with respect to the Court's prior Order. First, defendant argues that plaintiff has advanced multiple theories of whether a driver was "under contract" with plaintiff, and defendant, therefore, has no way of knowing, definitively, whether a certain driver would be considered to be "under contract" with plaintiff within the meaning of Interrogatory Number Five. Second, defendant argues that it has no efficient way to search its records for individuals who previously worked for plaintiff and, instead, would have to manually search tens of thousands of driver personnel files to determine which drivers previously drove for plaintiff. This, defendant argues, would be unduly burdensome and disproportionate to the needs of the case. *See* FED. R. CIV. P. 26(b)(1). Plaintiff has indicated that it is willing to work with defendant to streamline the process of identifying plaintiff's former drivers, but the parties have been unable to reach an agreement as to how the identification process should proceed.

The Federal Rules of Civil Procedure do not account for "motions to reconsider," but such motions are "nothing more than Rule 60(b) motions when directed at non-final orders." *Nelson v. Am. Home Assurance Co.*, 702 F.3d 1038, 1043 (8th Cir. 2012) (citation and internal quotation marks omitted). Federal Rule of Civil Procedure 60(b)(6) provides that "the court may relieve a party . . . from a[n] . . . order . . . for . . . any other reason that justifies relief." For a motion to reconsider to be successful, the movant must "establish exceptional circumstances to obtain the extraordinary relief the rule provides." *Reynolds v. Condon*, 908 F. Supp. 1494, 1526 (N.D. Iowa 1995). The bar for establishing exceptional circumstances is high and typically cannot be met where a litigant had a full and fair opportunity to litigate its claim and the Court, nevertheless,

found against the litigant. *Id.* (citing *Atkinson v. Prudential Prop. Co.*, 43 F.3d 367, 373-74 (8th Cir. 1994)).

The Court's discovery Order was a non-final order because it resolved only a portion of the parties' dispute. *See id.*; *Auto Servs. Co. v. KPMG, LLP*, 537 F.3d 853, 856 (8th Cir. 2008) ("[A]n order dismissing fewer than all claims or parties is generally not a final judgment."). As such, Rule 60(b) governs defendant's motion to reconsider. Further, the Court finds that none of the reasons for reconsideration that are provided in Rule 60(b)(1)-(5) are applicable in the instant case, which leaves Rule 60(b)(6) as the only potential avenue for relief. Defendant previously had a full and fair opportunity to litigate its claims with respect to plaintiff's motion to compel, and defendant does not argue that it was deprived of such an opportunity. Indeed, in its resistance to plaintiff's motion to compel, defendant advanced arguments that are substantially the same as the arguments defendant now advances. (*See* Doc. 60, at 4-9).

The Court, however, did not appreciate the full gravity of defendant's arguments until defendant explained them more fully during the hearing. The Court now understands that if defendant were required to comply with the Court's Order regarding Interrogatory Number Five, such compliance would likely be prohibitively expensive. Based on the Court's reformed understanding of defendant's position, the Court agrees that compliance would be unduly burdensome and disproportionate to the needs of the case. The Court therefore finds that defendant has met its burden in pursuing its motion to reconsider. The Court, however, stands by its previous Order that plaintiff is entitled to the information sought.

Plaintiff has indicated that it is willing to compare the identities of defendant's drivers with the identities of plaintiff's former drivers to determine whether any of defendant's drivers were "under contract" at the time defendant hired them. To do so, however, plaintiff needs to know the identities of the drivers defendant hired. Plaintiff

previously proposed that defendant provide plaintiff with the names and social security numbers of all of the drivers defendant has hired in the past five years. Plaintiff explained that the social security numbers were necessary to identify drivers with certainty. Defendant, however, was understandably reluctant to provide such personal identifying information for thousands of drivers who could have nothing to do with this case.

The Court finds that a hybrid approach to this problem is appropriate. Although both names and social security numbers would remove any potential for misidentification of drivers, it is also highly intrusive. Further, it would be time consuming for defendant to gather both names and social security numbers, and even more so were the Court to require defendant to redact the social security numbers to provide only the last four digits. Although providing names only may lead to some confusion with certain drivers, the parties can resolve these issues if they arise by defendant then providing the last four digits of those drivers' social security numbers.

The parties are therefore ordered as follows: by **August 29, 2018**, defendant is directed to provide plaintiff with the names *only* of all drivers defendant has hired from January 1, 2013, through July 24, 2018; by **September 12, 2018**, plaintiff is to inform defendant of those drivers who plaintiff believes may have been "under contract"[7] with plaintiff at the time they were hired by defendant,[8] but whose identities plaintiff is unable to confirm; by **September 26, 2018**, defendant is to provide the last four digits of the

---

[7] The Court recognizes that there may be a legitimate dispute as to the meaning of "under contract" within the meaning of Interrogatory Number Five and within the greater scheme of this case. By requiring plaintiff to identify those drivers it alleges may have been "under contract" when hired by defendant, however, the Court may presently refrain from determining whether the class of drivers who were "under contract" must be restricted in some fashion.

[8] The Court recognizes that because the Court is not ordering defendant to provide the date of first hire or communication by August 29, 2018, plaintiff will not be able to determine, with certainty, whether a driver was "under contract" based on plaintiff's theory of the case.

Social Security Numbers for those individuals disclosed by plaintiff as suspected to have been "under contract," but whose identities were unable to be confirmed; by **October 10, 2018**, plaintiff will confirm with defendant which, if any, of the drivers who were suspected to have been "under contract" were actually employed by plaintiff at some point that could render them subject to being "under contract" at the time they were hired by defendant; by **October 24, 2018**, defendant will respond to Interrogatory Number Five *in full* with respect to those drivers confirmed by plaintiff as having been employed by plaintiff at some point in time such that they could have been "under contract" at the time they were hired by defendant. As such, defendant's motion for reconsideration is **granted in part and denied in part**.

### III.    *MOTION TO STRIKE AND MODIFICATION OF SCHEDULING ORDER*

The final issues the Court must confront are the Court's Scheduling Order and defendant's Motion to Strike Expert Disclosure and Bar Testimony. (Doc. 76). Although neither party explicitly moved to amend the Scheduling Order, defendant indicated that six to eight week extensions of the discovery deadline and the dispositive motions deadline would be adequate to allow the parties to complete discovery and submit dispositive motions. Plaintiff indicated that it did not think a six to eight week extension would allow adequate time to complete discovery. The Court is choosing to address the motion to strike in conjunction with the existing deadlines because the existing deadlines influence the motion to strike and vice versa.

### A.    *Motion to Strike*

Turning first to the motion to strike, it is not clear whether plaintiff intends to call Mr. David Souza, Chief Financial Officer of CRST International, Inc.—the witness who was allegedly not properly designated as an expert witness—as an expert witness or simply as a fact witness. Either way, the parties appear to agree that if called as an expert, Mr. Souza will be a non-retained expert witness. The Court will proceed as

though plaintiff intends to call Mr. Souza as an expert witness.

### 1. *Applicable Law*

The parties agree that if Mr. Souza provides expert testimony, it will be as a non-retained expert witness under Rule 26(a)(2)(C). Rule 26(a)(2)(C) requires a party to disclose "the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705," and "a summary of the facts and opinions to which the witness is expected to testify." Federal Rule of Civil Procedure 37(c) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) . . ., the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

### 2. *Discussion*

Defendant argues that Mr. Souza was not properly disclosed as an expert witness and that defendant will be prejudiced in its own expert disclosures by not having had the benefit of plaintiff's complete expert disclosures as of the date of defendant's expert disclosures. Allowing plaintiff to make its disclosures and extending the time for defendant's expert witness disclosures will resolve this issue. Defendant also argues that it will be "at risk of ambush at depositions and trial" as a result of plaintiff's incomplete disclosures. (Doc. 68-1, at 3). Again, extending the relevant deadlines will resolve these issues.

The Court recognizes that some depositions may have taken place in the time defendant's motion has been pending for which plaintiff's complete expert disclosures may have been beneficial. The Court does not, however, agree that plaintiff's incomplete disclosures would have left defendant vulnerable to potential "ambush." Although plaintiff provided "a summary of facts and opinions to which [plaintiff's] expert is expected to testify" in response to defendant's interrogatories, as opposed to in a separate

disclosure, defendant had the information required by Federal Rule of Civil Procedure 26(a)(2)(C). (*See* Doc. 76-1). Further, this information was provided to defendant on May 31, 2018, which was prior to the July 6, 2018, deadline for plaintiff to make its expert witness disclosures. (Docs. 76-1, at 5; 55). As such, defendant cannot properly argue that the information was disclosed after the deadline for plaintiff to make its expert witness disclosures, thereby prejudicing defendant in the interim. Finally, defendant has not identified any depositions conducted thus far that it alleges were compromised as a result of a lack of full expert disclosure.[9]

To be clear, the Court is not reaching a decision as to whether plaintiff's interrogatory responses (Doc. 76-1) discussing Mr. Souza's findings are sufficient to satisfy Federal Rule of Civil Procedure 26(a)(2)(C). Plaintiff has offered to re-disclose the information disclosed in Plaintiff's Supplemental Answers to Defendant Swift Transportation Co. of Arizona, LLC's First Set of Interrogatories (Doc. 76-1) in a format that will satisfy Federal Rule of Civil Procedure 26(a)(2)(C). The Court finds that this solution is satisfactory where, as here, the Court is modifying the Scheduling Order to extend discovery, which will consequently allow defendant the full benefit of having plaintiff's expert witness disclosures in the form contemplated by Rule 26(a)(2)(C). Further, this solution renders plaintiff's alleged failure to properly disclose its expert witness harmless. *See* FED. R. CIV. P. 37(c) (allowing the Court to decline to strike an expert that was improperly disclosed, unless, *inter alia*, the improper disclosure was harmless).

Excluding evidence is a harsh penalty that should be used sparingly. *Wegener v.*

---

[9] Although defendant might argue that permitting plaintiff to make its disclosures in the proper form will require defendant to retake certain depositions in light of plaintiff's disclosures, the Court is limiting plaintiff's disclosures to the information already within defendant's possession, as will be explained *infra*. As such, defendant will not come into any new information that would require defendant to take additional depositions.

*Johnson*, 527 F.3d 687, 692 (8th Cir. 2008). Further, the Court has great discretion in choosing to sanction an improper disclosure by excluding a witness. *Id.* Where, as here, the Court finds it necessary to modify the Scheduling Order and continue the trial for reasons independent of the potentially improperly disclosed witness, the Court finds it more appropriate to extend the expert witness deadlines than to strike the witness altogether. This case is unique in that the discovery issues—independent of the present expert witness issue—plaguing this case present an independent basis for granting a continuance and extending discovery deadlines. If the only reason for continuing the trial and extending the relevant deadlines were to permit plaintiff to disclose, in a different form, Mr. Souza as an expert witness, perhaps the Court would reach a different conclusion. Here, however, there is a degree of flexibility in the scheduling that permits an extension during which plaintiff may re-disclose the information disclosed in Plaintiff's Supplemental Answers to Defendant Swift Transportation Co. of Arizona, LLC's First Set of Interrogatories (Doc. 76-1) in a format that will satisfy Federal Rule of Civil Procedure 26(a)(2)(C).

The Court finds that should plaintiff choose to avail itself of the opportunity to re-disclose Mr. Souza's opinions, defendant should be given an opportunity to designate its own expert witness(es) in response. Defendant's expert witness disclosure deadline, however, has passed, and defendant has not sought an extension. (Doc. 55, at 3). The Court will therefore assume that defendant has disclosed all experts it intends to disclose, with the potential exception of experts responsive to Mr. Souza's opinions. The Court will permit defendant an opportunity to disclose expert witnesses responsive to Mr. Souza, if plaintiff chooses to re-disclose Mr. Souza as an expert witness. Finally, should plaintiff re-disclose Mr. Souza's opinions, and should defendant offer expert disclosures in response, plaintiff may disclose rebuttal expert witnesses on those issues raised by defendant's responsive experts regarding Mr. Souza's opinions. The deadlines for these

limited expert witness disclosures are set forth *infra*. Accordingly, defendant's Motion to Strike (Doc. 68) is **denied**.

### B. Scheduling Order

Although both parties indicated that they did not think the current deadlines would permit adequate time to complete discovery and prepare dispositive motions, neither party formally moved to continue the trial or modify the Scheduling Order. The matter of whether to continue the trial and modify the Scheduling Order is, therefore, before the Court on its own motion.

Federal Rule of Civil Procedure 16(b)(4) provides that a Scheduling Order "may be modified only for good cause and with the judge's consent." The Court finds that good cause exists for the modification. Although the expert witness disclosure issues discussed *supra* could constitute good cause, the Court finds it more proper to disregard the expert witness disclosure issue in determining whether good cause exists to modify the Scheduling Order. The Court will, therefore, look elsewhere.

The Court finds that the parties have been diligently attempting to meet the Scheduling Order's requirements, but due do the scope of this case and the volume of, and difficulties with, discovery—particularly ESI—the parties have simply been unable to complete discovery. *See French v. Cummins Filtration, Inc.*, No. C11-3024-MWB, 2012 WL 2992096, at *3 (N.D. Iowa July 19, 2012) ("The primary measure of good cause is the movant's diligence in attempting to meet the [scheduling] order's requirements." (citation and internal quotation marks omitted)). Extending only the discovery deadlines without continuing the trial is not a workable option because the Court will not have adequate time to rule on the parties' anticipated dispositive motions prior to the time by which the parties must begin preparing for trial. *See* LR 16(g) (requiring at least 150 days between the dispositive motions deadline and the parties' proposed trial ready date, so as to allow the Court time to rule on dispositive motions

prior to the parties beginning to prepare for trial). As a result, the parties could incur substantial expense in preparation for trial, only to have the case decided on a motion for summary judgment. The Court therefore finds that the trial date must be continued. *See Anzaldo v. Croes*, 478 F.2d 446, 450 (8th Cir. 1973) (stating that whether to continue a trial "is subject to the broad discretion of the trial judge").

Therefore, the new deadlines governing this case are as follows:

| | |
|---|---|
| Plaintiff's Expert Disclosures:[10] | August 31, 2018 |
| Defendant's Expert Disclosures: | September 28, 2018 |
| Plaintiff's Rebuttal Expert Disclosures: | October 26, 2018 |
| Completion of Discovery: | January 14, 2019 |
| Dispositive Motions: | February 15, 2019 |
| Trial Ready: | July 15, 2019 |
| **Trial:** | **July 15, 2019** |

The Court emphasizes that absent truly exceptional circumstances, the deadlines set forth herein—including the deadlines for completing discovery and filing dispositive motions—will not be extended yet again. Likewise, the trial date is firm, and the parties will be hard pressed to demonstrate the existence of a set of circumstances that would warrant a third continuance. The parties are, therefore, strongly encouraged to continue to work diligently to complete discovery and file their dispositive motions by the deadlines set forth herein.

---

[10] The parties are reminded that the expert witness disclosure deadlines set forth herein *only* permit the parties to disclose those expert witnesses as are contemplated in this Order.

## IV. CONCLUSION

**IT IS ORDERED** for the reasons set forth above:

The portion of defendant's Rule 16 Motion for a Pretrial/Scheduling Conference to Address Discovery and Depositions (Doc. 72) that sought a hearing should be considered **granted**;

Defendant's Motion to Strike Expert Disclosure and Bar Testimony (Doc. 68) is **denied**;

Defendant's motion for reconsideration (Doc. 72, at 8-10) is **granted in part and denied in part**;

Plaintiff's Motion to Stay (Doc. 77) is **denied**; and

Plaintiff's Motion for Protective Order (Doc. 78) is **denied**.

Defendant's Motion to Compel (Doc. 61) **is held in abeyance**, to the extent the Court has not already ruled on the motion. As set forth *supra*, defendant is directed to inform the Court by **August 31, 2018**, as to the status of the parties' meet and confer attempts regarding defendant's Motion to Compel. (Doc. 61). Plaintiff's Motion to Compel (Doc. 81) is not ripe and the Court, therefore, offers no opinion on the motion.

**IT IS SO ORDERED** this 17th day of August, 2018.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa