# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| CRST EXPEDITED, INC., <br><br> Plaintiff, <br><br> vs. <br><br> SWIFT TRANSPORTATION CO. OF ARIZONA, LLC, <br><br> Defendant. | No. 17-CV-25-CJW <br><br><br><br> ORDER |

This matter is before the Court on plaintiff's Motion to Compel.[1] (Doc. 81). Defendant timely filed its resistance (Doc. 89), plaintiff timely filed a reply (Doc. 96; *see also* Docs. 94-95), and with leave of the Court, defendant filed a sur-reply. (Doc. 99). For the following reasons, plaintiff's motion is **granted in part and denied in part**.

## I.  INTRODUCTION

Both plaintiff and defendant are trucking companies that rely upon drivers to transport goods. These drivers must either hold or obtain commercial driver's licenses. Plaintiff alleges that it has established a driver training program to allow individuals to obtain such licenses. (Doc. 43, at 2). Plaintiff further alleges that in exchange for plaintiff training its drivers, the drivers sign a contract in which they agree to a ten-month exclusive employment term with plaintiff. (*Id.*, at 2-3). The contract also appears to contain a liquidated damages provision. (Doc. 2-1, at 2-3).[2] Plaintiff alleges that

---

[1] The Court also notes that defendant filed a motion to compel (Doc. 61), and that defendant's motion to compel is still pending. Defendant's motion is not contemplated in this Order.

[2] This citation is to Exhibit A of plaintiff's original complaint. Although the original complaint

defendant has wrongfully recruited—and continues to recruit—plaintiff's drivers to breach their contracts with plaintiff in favor of working for defendant. (Doc. 43, at 4). As such, plaintiff brought claims against defendant for intentional interference with prospective economic advantage, unjust enrichment, and intentional interference with contract, and seeks a permanent injunction enjoining defendant "from any further or continued interference with [plaintiff's] prospective economic advantage and/or contracts with its drivers." (Doc. 43). The parties have encountered a number of discovery disputes, and plaintiff now seeks to compel responses to certain of plaintiff's requests for production and answers to certain of plaintiff's interrogatories.

## II. APPLICABLE LAW

Federal Rule of Civil Procedure 26(b) provides the scope and limitations of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

"In a discovery context, relevancy 'has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *In re Motion to Quash Subpoena to Bergan, Paulsen & Co.*, Nos. 7:10-cv-00434, 11-mc-00072-JSS, 2012 WL 117120, at *1 (N.D. Iowa Jan. 13, 2012) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). The

---

no longer governs this case, the Court understands that the representative employment contract (Exhibit A) attached to the original complaint is the same contract that continues to be at issue in this case.

scope of discovery is liberal in nature, and the party resisting discovery bears the burden of showing, specifically, "that the requested documents either do not come within the broad scope of relevance defined pursuant to [Federal Rule of Civil Procedure 26(b)(1)] or are of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *St. Paul Reinsurance Co. v. Comm. Fin. Corp.*, 198 F.R.D. 508, 511-12 (N.D. Iowa 2000). In spite of the broad scope of discovery, however, the propounding party must make "[s]ome threshold showing of relevance . . . before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1993).

### III. DISCUSSION

Plaintiff served interrogatories and requests for production on defendant on June 6, 2018. (Doc. 81, at 1). Defendant provided objections to the requests for production on July 10, 2018, and provided unverified interrogatory answers and objections on July 26, 2018. (*Id.*). Plaintiff asserts that defendant has yet to provide verified answers, and defendant does not dispute this contention. (Doc. 81-1, at 2). Plaintiff now makes a number of arguments regarding defendant's allegedly deficient discovery responses. First, plaintiff argues that defendant waived any right to object to plaintiff's third set of interrogatories by failing to timely make such objections. Further, plaintiff argues that certain discovery requests are relevant to damages, certain are relevant to defenses defendant may raise, and that plaintiff's attempts to expand the electronically stored information ("ESI") protocol are proper. As will be discussed *infra*, plaintiff made certain other discovery requests with which defendant has since agreed to comply. Notably, plaintiff has not sought to compel verification of defendant's interrogatory answers.

### A. *Waiver of Objections*

Plaintiff first argues that defendant "waived its untimely objections to interrogatories because [defendant] cannot show good cause for the late response." (Doc. 81-1, at 10). Although it is unclear whether defendant's answers to plaintiff's third set of interrogatories have been verified at the present time, the parties agree that the objections were untimely. (Docs. 81-1, at 11; 89, at 7-8). Plaintiff served its interrogatories on defendant on June 6, 2018, making defendant's responses due on July 9, 2018. (Doc. 81-3, at 24). FED. R. CIV. P. 6(a)(1), 33(b)(2). Defendant, however, served its answers and objections on July 26, 2018, which was seventeen days after the deadline to timely answer and object. (Doc. 81-3, at 40). Although the answers do not appear to have been verified by July 26, 2018, the objections were signed by defendant's counsel in compliance with Federal Rule of Civil Procedure 33(b)(5).

Federal Rule of Civil Procedure 33(b)(4) provides that "[a]ny ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." In determining whether good cause exists to excuse a failure to timely respond, the Court considers: 1) the length of the delay; 2) the reason for the delay; 3) whether the responding party acted in bad faith or engaged in any dilatory action; 4) whether the requesting party has been prejudiced; 5) whether the request was overly burdensome; and 6) whether waiver would impose a harsh result on the defaulting party. *E. Iowa Plastics, Inc. v. PI, Inc.*, No. C12-2088, 2014 WL 2121502, at *3 (N.D. Iowa May 21, 2014). Further, modern cases trend toward allowing trial courts great discretion in determining whether a waiver of discovery objections has been effected. *See id.*; *Cargill, Inc. v. Ron Burge Trucking, Inc.*, 284 F.R.D. 421, 425-26 (D. Minn. 2012).

In the instant case, five of the six factors weigh in favor of excusing defendant's failure to timely object to plaintiff's interrogatories. The delay was seventeen days, which, although not insignificant, is not extreme. It does not appear as though defendant

acted in bad faith in delaying, as is evidenced by defendant's communication with plaintiff throughout the process of responding to the interrogatories. (*See* Doc. 81-1, at 10-11). Likewise, the interrogatories propounded were thorough, and defendant's responses encompassed fifty-six double-spaced pages, with twelve-point font. This, together with defendant's statements that defendant required more time to respond, indicate that the delay was due to the scope of the interrogatories and of defendant's responses thereto. (Doc. 81-3, at 41-96).

The Court has not been called upon to individually assess the burden on defendant in responding to each interrogatory propounded, and the Court will, therefore, decline to determine whether the burden was undue. The Court notes, however, that the burden defendant would incur in responding to the interrogatories is not so minimal as to preclude any finding of good cause for defendant's delay.

At the time plaintiff filed its motion, discovery was set close on August 22, 2018, approximately one month after defendant served its interrogatory answers and objections. (Doc. 40). Since plaintiff filed its motion, however, the Court has continued the trial and all then-existing deadlines, including the deadline for completing discovery. (Docs. 86, 87). As such, discovery is now set to close on January 14, 2019, which allows plaintiff approximately six months from the date defendant served its answers and objections to evaluate and contest defendant's objections. Plaintiff does not assert any basis for its claim of prejudice aside from the then-impending discovery deadline. (*See* Doc. 81-1, at 10-11). As such, the Court finds that plaintiff has not been prejudiced by defendant's delay in objecting to plaintiff's interrogatories.

Finally, if the Court were to hold that defendant waived its objections by virtue of its untimely responses, such a holding would result in an impermissibly harsh remedy. The Court recognizes that this has been a contentious litigation with delays on both sides and that the sheer scope of this case has made compliance with deadlines difficult, though

5

not impossible. Based on the nature of this case and the course of litigation thus far, the Court finds that it would be too harsh a penalty to strike all of defendant's objections to plaintiff's third set of interrogatories, especially where the Court has not imposed such sanctions on plaintiff for similar delays. The Court therefore declines to strike defendant's objections to plaintiff's third set of interrogatories. (*see* Doc. 81-3, at 41-96).

### B. *Financial Information*

Turning now to the first of plaintiff's more specific arguments, plaintiff seeks to compel the production of financial information sought in Interrogatory Number Eighteen, and Request for Production Numbers Fifty-One through Fifty-Four. The discovery requests at issue are as follows:

> Interrogatory [Eighteen]: For the 2016 calendar year, state [defendant's] average profit per driver in its fleet, including the identification of all driver counts and revenue and expense descriptions and amounts utilized to make that computation.

(Doc. 81-3, at 8).

> [Request for Production Fifty-One]: [Defendant's] income statement for each of the years 2012 through 2017.
>
> [Request for Production Fifty-Two]: Each document [defendant] used to answer [plaintiff's] Interrogatory 18.
>
> [Request for Production Fifty-Three]: A copy of each financial statement that contains [defendant's] operating revenues for each of the years 2012 through 2017.
>
> [Request for Production Fifty-Four]: A copy of each financial statement that contains [defendant's] operating expenses for each of the years 2012 through 2017.

(Doc. 81-3, at 31-33).

Plaintiff argues that the information sought in these discovery requests is a "constituent part of [plaintiff's unjust enrichment damages] calculation, and directly relevant to [plaintiff's] damages in this matter." (Doc. 81-1, at 12-13). Defendant, in response, contends that the information sought in Interrogatory Number Eighteen and Request for Production Fifty-Two is not maintained and defendant, therefore, cannot produce the information or respond to the Interrogatory.[3] (Doc. 89, at 10-11). Further, defendant contends that the information sought in each of the aforementioned requests for production is publicly available, and defendant claims that it need not produce information that is publicly available. (*Id.*, at 9-10).

   1.   *Non-Existence*

Defendant asserts that the information sought in Interrogatory Number Eighteen and Request for Production Fifty-Two does not exist, and plaintiff has not provided a basis for its belief otherwise. Plaintiff's statement that defendant "has institutional knowledge . . . upon which it can make this average profit per driver calculation in response to [plaintiff's] Interrogatory [Eighteen], and possesses financial statements directly responsive to request[ ] . . . [Fifty-Two] . . ." is not evidence, and the Court cannot compel defendant to produce the information sought based on plaintiff's mere

---

[3] Defendant makes two separate statements with respect to the subject information. Defendant first states that the information sought is not maintained "in the ordinary course of business." (Doc. 89, at 10). Defendant goes on to further explain as follows: "The fact that [plaintiff] may maintain this information does not mean [defendant] does. [Defendant] cannot produce what does not exist." (*Id.*). Additionally, defendant includes a parenthetical citation explaining that in a cited case, this Court "den[ied a] motion to compel where documents did not exist." (*Id.* (citing *Joint Venture v. Fireman's Fund Ins. Co.*, No. 13-CV-4106-CJW, 2017 WL 562418, at *2 (N.D. Iowa Feb. 10, 2017))). Although defendant never explicitly states that the information does not exist, defendant certainly implies as such. The Court will therefore proceed as though any ambiguity as to whether the information exists is unintentional, and the Court will proceed as though the information does not exist.

assertions.[4] (Doc. 81-1, at 13). *See also Minneapolis Firefighter's Relief, Ass'n v. Medtronic, Inc.*, No. 08-6324 PAM/AJB, 2012 WL 12897388, at *1 (D. Minn. Jan. 19, 2012) (denying motion to compel on ground that plaintiffs did not establish that the information sought existed in a format maintained by defendant). As defendant maintains that the information sought does not exist and there is no indication to the contrary, the Court has no avenue by which to grant plaintiff's motion as to Interrogatory Eighteen and Request for Production Fifty-Two. *See Joint Venture*, 2017 WL 562418, at *2 (confronting the same issue of alleged non-existence and itemizing seven cases supporting the proposition that the Court has no ability to compel production of that which does not exist).

The Court finds it possible that defendant has raw data from which it could calculate its average profit per driver. To the extent plaintiff seeks the raw data upon which an average profit per driver calculation could be based, as plaintiff views such a calculation, Interrogatory Eighteen and Request for Production Fifty-Two have not been tailored to request such specific information. As such, plaintiff's motion is **denied** with respect to Interrogatory Eighteen and Request for Production Fifty-Two.

### 2. *Public Availability*

With respect to Requests for Production Fifty-One through Fifty-Four, defendant argues that because the information sought is publicly available, defendant need not produce the information. Defendant, however, is mistaken. Although courts in other circuits have declined to compel production of publicly available documents,[5] courts in

---

[4] In its reply brief, plaintiff again suggests that defendant should have the necessary information to enable defendant to complete the calculations requested. (Doc. 96, at 3). Plaintiff, however, offers no basis for the belief that defendant is capable of responding to the Interrogatory in full.

[5] *See, e.g.*, *Bleecker v. Standard Fire Ins. Co.*, 130 F. Supp.2d 726, 738-39 (E.D.N.C. 2000) (denying motion to compel where information sought was publicly available); *Dushkin Publ'g Grp., Inc. v. Kinko's Serv. Corp.*, 136 F.R.D. 334, 335 (D.D.C. 1991) (same); *S.E.C. v.*

the Eighth Circuit have explicitly rejected that position. Indeed, this very Court has held "the fact that [documents that are the subject of an appropriate discovery request] are publicly available is not a substantial justification for untimely production, nor does it make the failure to timely produce them harmless." *Transamerica Life Ins. Co. v. Lincoln Nat'l Life Ins. Co.*, 255 F.R.D. 645, 652 (N.D. Iowa 2009). *See also CitiMortgage, Inc. v. Allied Mortg. Grp., Inc.*, No. 4:10CV01863 JAR, 2012 WL 1554908, at *4 (E.D. Mo. May 1, 2012) (requiring production of publicly available information because defendant was in the best position to identify information responsive to the discovery request). As such, the Court finds that the public availability of the documents does not preclude defendant from being required to produce the documents, if the requests are otherwise proper.

### 3. Other Objections to Requests for Production Fifty-One Through Fifty-Four

Defendant objects to Requests for Production Fifty-Three and Fifty-Four because the requests purportedly "seek[ ] confidential and sensitive business information," and contain certain terms that are vague. (Doc. 81-3, at 33). Defendant has failed to substantiate these objections, however, and the Court is unable to ascertain the bases for these objections. As such, defendant has not met its burden with respect to objecting on the basis of "confidential and sensitive business information" and vagueness. *See Daughetee v. CHR Hansen, Inc.*, No. C09-4100-MWB, 2012 WL 12904379, at *2 (N.D. Iowa June 15, 2012) ("The responding party may object to improper requests [for production] but has the burden to substantiate its objections.").

Defendant also objects to Requests for Production Fifty-One through Fifty-Four on the bases that the requests are "overbroad and seek[ ] information that is not proportional to the needs of the case." (Doc. 81-3, at 31-33). Specifically, defendant

---

*Samual H. Sloan & Co.*, 369 F. Supp. 994, 995-96 (S.D.N.Y. 1973) (same).

argues that financial statements and income statements pertaining to years 2012 through 2015 are not relevant to plaintiff's claims because plaintiff "has not put forth any allegations that [defendant] may have improperly recruited [plaintiff's] drivers prior to 2016, [and,] therefore[, plaintiff's] request for [documents] that contain [information] for the years 2012-2015 are not relevant to [plaintiff's] claims or Defendant's defenses." (*Id.*).

In determining whether a discovery request is proportionate to the needs of the case, the Court is to consider "the importance of the issues at stake, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1). The Court is satisfied—and the parties seem to agree—that the issues at stake in this case are of great importance and that the amount in controversy is significant. Likewise, the litigation thus far has shown that both parties have substantial resources and have taken advantage of those resources in furtherance of this case. Plaintiff asserts that the information sought goes to its damages calculation, and defendant does not argue that the expense of producing the information would outweigh any probative value the information may have. As such, the Court will assume that the expense of producing the information sought does not outweigh the information's likely benefit.

The final remaining factor is significant here. Defendant contends that plaintiff has ready access to the information sought and even provides the web address at which the information can purportedly be found. (*See* Doc. 89, at 9 n.2). In its reply, plaintiff elaborates on the requests at issue and explains that plaintiff seeks defendant's "(detailed) income statements as well as financial statements containing (detailed) operating revenues and operating expenses for the time period of 2012-2017." (Doc. 96, at 2). Plaintiff further explains that the information available online is "consolidated (summary)

information." (*Id.*). Finally, plaintiff explains that defendant "knows from discussion and [plaintiff's] production of detailed financials," that the information plaintiff seeks is not the "consolidated" information available online. (*Id.*).

As the Court has not been a party to discovery and to the parties' discussions regarding the scope of the requests at issue, the Court is not in a position to evaluate what defendant should understand the requests to mean. Assuming, however, that the information is not available online, plaintiff would not have access to the information sought aside from through discovery. As such, this factor would weigh in favor of granting plaintiff's motion to compel with respect to Requests for Production Fifty-One through Fifty-Four. If the information is available online, the final factor would weigh against compelling production. If available online, however, the burden on defendant in producing the information would be so low that the balance would again tip in favor of granting production. Either way, the balance of the factors would counsel in favor of proportionality. As such, the Court finds that the requests at issue are not disproportionate to the needs of the case.

To the best of the Court's understanding, defendant's overbreadth objection rests on the notion that plaintiff's claims relate only to 2016 forward. The Court disagrees that plaintiff limited its claims to involve those actions occurring only from 2016 onward, and the Court therefore declines to limit discovery as strictly as defendant requests. The Court has previously addressed the relevant period of discovery and again imposes the same time limitation. (*See* Doc. 70, at 6). As such, defendant is directed to respond in full to Requests for Production Fifty-One, Fifty-Three, and Fifty-Four for each of the years 2013 through 2017.

### C. *Independent Contractor Agreements*

Plaintiff next seeks "[defendant's] form independent contractor agreements for trucking services for 2016 onward . . . because they typically include a daily value [that]

the trucking company charges an independent contract[or] if the independent contractor does not return a trailer as scheduled." (Doc. 81-1, at 14 (recounting information sought in Request for Production Fifty-Six)). Further, plaintiff argues that "[t]he existence of a value [that defendant] assigns to each day without a truck . . . has the tendency to show [plaintiff's] injury and damages from being deprived [of] a driver to fulfill [plaintiff's] own customer demands." (*Id.*). In response, defendant argues, *inter alia*, that this case addresses only employee drivers, not independent contractors used by defendant, and, therefore, information pertaining to those independent contractors is irrelevant. (Doc. 89, at 11).

The Court finds that plaintiff has not met its burden of showing some threshold level of relevance. *See Hofer*, 981 F.2d at 380. Plaintiff's Second Amended Complaint never once refers to independent contractors, and all references to the drivers at issue concern those drivers who signed an employee contract with plaintiff, which allegedly included a restrictive period during which the driver-signatory could not work for plaintiff's competitors. (*See generally* Doc. 43, & Doc. 43, at 3). The existence of the non-competition provision is one indicator that this suit, in truth, concerns employees, as opposed to independent contractors. *See Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323-24 (1992) (listing factors to be considered when determining whether a relationship is that of an employer and employee).

Moreover, plaintiff has not alleged that this suit concerns independent contractors, nor has plaintiff drawn a connection between defendant's use of independent contractors and plaintiff's damages. Although plaintiff argues that a liquidated damages clause in the form independent contractor agreement would show the value defendant places on "each day without a truck," which, plaintiff argues, would be probative on plaintiff's damages,

plaintiff's logic is flawed. (Doc. 81-1, at 14). Any liquidated damages provision[6] in the independent contractor agreement would be based on the damages incurred as a result of a breach when considering all factors involved in the agreement, including the employment status of the driver. Whether a driver is an employee or an independent contractor is a material difference that could affect any applicable liquidated damages provision. Plaintiff has failed to show that the level of damages incurred as a result of a breach by an independent contractor is probative on the level of damages plaintiff incurred as a result of allegedly being deprived of its employee-drivers. As such, plaintiff has failed to make a threshold showing of relevance, and plaintiff's motion to compel with respect to Request for Production Fifty-Six is **denied**.

### D. ESI Protocol

Plaintiff next "seeks email correspondence from [defendant's] personnel which would show knowledge of [plaintiff's] noncompetition provisions and tortious intent." (Doc. 81-1, at 14). Specifically, Request for Production Fifty-Seven requests "Documents containing any ESI Search Term and resulting from an ESI search of all electronic mail accounts for [defendant's] employees within [defendant's] recruiting department." (Doc. 81-3, at 35). Request for Production Fifty-Eight requests "Documents containing any ESI Search Term and resulting from an ESI search of all electronic mail accounts for all persons having authority in the chain of command above [defendant's] recruiting department." (*Id.*).

Although defendant does not argue that the documents sought are irrelevant, defendant does argue that the two requests are excessively burdensome and disproportionate to the needs of the case. (Doc. 89, at 11-13). Turning to the same five

---

[6] Defendant contends that its form independent contractor agreement does not "include a daily value which the trucking company charges an independent contract[or] if the independent contractor does not return a trailer as scheduled." (Doc. 89, at 11 (internal quotation marks and alteration omitted)).

factors the Court consulted, *supra*, in determining proportionality, the Court finds that with respect to the two instant Requests for Production, the turning point is the burden on defendant in responding to the discovery requests, and the importance of the documents sought.

Defendant has shown that producing the documents sought would be a daunting task that could lead to the need to review over one million documents prior to production.[7] (*Id.*, at 12-13). Comparatively, defendant was previously called upon to produce 41,450 documents, which were produced over a span of approximately seven months. Based on the number of employees whose email accounts would need to be searched in order to comply with the two Requests for Production, the Court finds credible defendant's assertion that the task would be monumental and would likely be incredibly expensive. As such, this factor weighs heavily in favor of denying plaintiff's motion with respect to Requests for Production Fifty-Seven and Fifty-Eight, as written.

Although the aforementioned considerations weigh heavily in favor of denying the motion, a showing that the discovery would be invaluable could be sufficient to tip the balance toward granting plaintiff's motion as to this issue. Here, however, plaintiff has failed to show that the probative value of the documents would be so great that the Court should compel compliance with the two Requests. The Court does not doubt that the responsive documents could be relevant, but this, alone, is insufficient to compel a party

---

[7] Plaintiff argues that defendant has exaggerated the scope of defendant's ESI production thus far. (Doc. 96, at 4-5 n.6). The Court takes no position on this allegation. Even assuming defendant has exaggerated the extent of its ESI production, however, the Court's position does not change. First, in asserting that defendant has exaggerated its ESI production, plaintiff relies on the number of pages *produced* (*Id.*), while defendant's figures are based on the number of documents *reviewed* for production. (Doc. 89, at 12-13). These discrepancies largely account for defendant's assertion that compliance would be more burdensome than plaintiff realizes. Further, defendant is in a better position than plaintiff to estimate the burden defendant would be subjected to in complying with the Requests.

to incur such a great expense as would be incurred here. Plaintiff does not offer an explanation for why defendant should be compelled to respond to the Requests for Production as written, aside from the suggestion that defendant's failure to respond to a compromise offer warrants the Court mandating full compliance. Such a suggestion is not sufficient to tip the balance in favor of granting plaintiff's motion with respect to Requests for Production Fifty-Seven and Fifty-Eight. As such, the Court declines to compel compliance with Requests for Production Fifty-Seven and Fifty-Eight, as written.

### E. *Dates and Circumstances of Avoidance*

Plaintiff next seeks to compel defendant to answer Interrogatory Number Nineteen, which provides as follows: "If [defendant] contends that a driver identified in this case successfully avoided a contract with [plaintiff], completely describe the manner in which each driver avoided the contract, including the identification of each driver and the date of successful avoidance." (Doc. 81-3, at 44). Since the time plaintiff filed its motion, defendant has apparently agreed to provide the date of alleged avoidance for each driver. (Doc. 96, at 6). Plaintiff has consequently narrowed its request to the Court and now only seeks to compel defendant "to specify which manner of alleged avoidance applies to [each] driver," instead of simply providing a generic statement as to means of avoidance employed by the body of drivers as a whole. (*Id.*). Defendant argues that it is unable to determine whether a contract has been avoided without first knowing whether a driver was "under contract" with plaintiff at the time of the alleged avoidance. (Doc. 89, at 13-15). Defendant further argues that the meaning of "under contract," as used by plaintiff, is ambiguous and defendant is, therefore, unable to answer the Interrogatory. (*Id.*). The Court rejects defendant's position.

First, the ability of defendant to provide the date of each alleged avoidance undercuts defendant's assertion that it is unable to ascertain whether a driver was "under contract" on the date of the alleged avoidance. Second, although defendant may not be

15

able to definitively ascertain at this stage whether a driver was under contract on any given day, defendant is capable of identifying those actions that could be considered acts of avoidance, assuming a driver was under contract on the date or dates of alleged avoidance. Therefore, for each driver for whom defendant may wish to argue avoidance as a defense, defendant is directed to completely describe the manner of alleged avoidance.

The Court recognizes that if defendant wishes to preserve its option to argue avoidance as a defense, defendant may be required to draw some assumptions regarding whether avoidance was effected. As the Court has not been called upon to resolve the meaning of "under contract," however, such assumptions are necessary. Reliance on these assumptions may cause defendant to feel compelled to provide a greater deal of information than defendant would provide if the meaning of "under contract" had already been determined. Although this is possible, and although this could create a greater burden on defendant, the Court finds it likely that this burden would not be excessive due to the relatively small number of drivers at issue. The Court also recognizes that defendant may intend to advance an alternative theory that does not involve arguing avoidance as a defense. If so, there would be no drivers for whom defendant may wish to argue avoidance as a defense, and defendant would therefore not be required to provide any additional information with respect to Interrogatory Number Nineteen. As such, plaintiff's motion to compel with respect to Interrogatory Number Nineteen is **granted**.

### F. *Retention and Recruiting Data*

Plaintiff's Interrogatory Number Twenty states as follows: "For each of the calendar years 2012 through 2017, identify all driver-related figures kept by [defendant's] recruiting or human resource department. [Defendant's] answer may include [defendant's] driver turnover ratio, the number of drivers [defendant] hired, and the number of qualified applicants [defendant] received for driving positions." (Doc. 81-3,

at 48). Although defendant initially resisted the Interrogatory on numerous grounds, defendant has since agreed to provide the information sought in the Interrogatory for the years 2016 and 2017, which eliminates the need for the Court to address defendant's substantive objections. (Doc. 89, at 15).

Defendant also objects to providing the information for the years 2012 through 2015 on the basis that these years are irrelevant to the claims asserted. (*Id.*). Because defendant now rests only on its objection as to the temporal scope of the Interrogatory and no longer contests the Interrogatory on any other basis, the Court will address only the temporal scope of the Interrogatory. The Court disagrees with defendant's position that the years prior to 2016 are irrelevant to this suit and will therefore impose the same time constraints it has imposed previously. To the extent defendant has not already provided such information, defendant is directed to respond to Interrogatory Number Twenty for each of the years 2013 through 2017.

### G. *Compliance with Interrogatory Number Twenty-One*

The scope of the parties' dispute with respect to Interrogatory Number Twenty-One is narrow and non-substantive in nature. The Interrogatory provides as follows: "For each Rule 34 production request served by [plaintiff] in this case, identify each Document that [defendant] produced pursuant to that request by bates number." (Doc. 81-3, at 49). Defendant does not object to complying with the Interrogatory, but the parties are in agreement that the information has yet to be provided. (Docs. 81-1, at 18; 89, at 16; 96, at 6). Plaintiff asserts that defendant "first agreed to supplement its discovery responses to identify the bates numbers of responsive documents on March 14, 2018, and did not do so, which forced [plaintiff] to serve Interrogatory No. 21 on June 6, 2018." (Doc. 96, at 6). Defendant offers no explanation for why it has not yet provided the information. As defendant does not object to the Interrogatory, defendant is ordered to provide the information sought in the Interrogatory no later than October

18, 2018.

## IV.  CONCLUSION

For the aforementioned reasons, plaintiff's Motion to Compel is **granted in part and denied in part**.

**IT IS SO ORDERED** this 18th day of September, 2018.

_____
C.J. Williams
United States District Judge
Northern District of Iowa