# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| CRST EXPEDITED, INC., Plaintiff, vs. SWIFT TRANSPORTATION CO. OF ARIZONA, LLC, Defendant. | No. 17-CV-25-CJW  **ORDER** |

This matter is before the Court on Defendant's Motion to Compel Plaintiff's Discovery Responses and Document Production. (Doc. 61). The Court previously ordered plaintiff to file a partial resistance to defendant's motion, and plaintiff complied. (*See* Docs. 63, 64). The Court subsequently issued an Order denying "the portion of defendant's motion (Doc. 61) regarding plaintiff's ESI production." (Doc. 67). Plaintiff later timely filed its resistance to the remainder of defendant's motion. (Doc. 69). Defendant timely filed a reply. (Doc. 71).

On August 6, 2018, the Court held a hearing on all pending motions. During the hearing, the parties advised that they would further meet and confer in an attempt to resolve the remaining discovery issues raised in the instant motion to compel. (Doc. 61). The Court directed defendant to inform the Court by August 31, 2018, as to whether the parties were able to resolve the remaining issues or narrow the scope of the remaining issues. (Doc. 86, at 3). Defendant emailed the Court informing the Court that the parties were unable to resolve the remaining issues and that, as of August 31, 2018, plaintiff had yet to produce its electronically stored information ("ESI"). Defendant further stated

that plaintiff had not provided an update on the status of plaintiff's ESI production, but that plaintiff intended to make at least a partial ESI production on September 7, 2018, and would finalize its ESI production on a rolling basis thereafter. For the following reasons, the portion of defendant's motion upon which the Court did not previously rule is **granted in part and denied in part**.

## I. BACKGROUND

The Court has previously recounted the relevant factual background of this case and, for ease of reference, duplicates that background here:

> Both plaintiff and defendant are trucking companies that rely upon drivers to transport goods. These drivers must either hold or obtain commercial driver's licenses. Plaintiff alleges that it has established a driver training program to allow individuals to obtain such licenses. (Doc. 43, at 2). Plaintiff further alleges that in exchange for plaintiff training its drivers, the drivers sign a contract in which they agree to a ten-month exclusive employment term with plaintiff. (*Id.*, at 2-3). The contract also appears to contain a liquidated damages provision. (Doc. 2-1, at 2-3).[1] Plaintiff alleges that defendant has wrongfully recruited—and continues to recruit—plaintiff's drivers to breach their contracts with plaintiff in favor of working for defendant. (Doc. 43, at 4). As such, plaintiff brought claims against defendant for intentional interference with prospective economic advantage, unjust enrichment, and intentional interference with contract, and seeks a permanent injunction enjoining defendant "from any further or continued interference with [plaintiff's] prospective economic advantage and/or contracts with its drivers." (Doc. 43).

(Doc. 100, at 1-2 (footnote in original)).

The parties have encountered multiple discovery disputes, and defendant now seeks to have the Court compel plaintiff to "provide a fulsome response to Interrogatory

---

[1] This citation is to Exhibit A of plaintiff's original complaint. Although the original complaint no longer governs this case, the Court understands that the representative employment contract (Exhibit A) attached to the original complaint is the same contract that continues to be at issue in this case.

2

No. 18 [and] Request for Production No. 30." (Doc. 61, at 2). Although the Court has already ruled on the portion of the motion addressing plaintiff's ESI production, defendant's email provided the Court with an update as to the status of plaintiff's ESI production. Because the Court has already ruled on the motion before it with respect to plaintiff's ESI production, however, and because defendant has not renewed its request that plaintiff be compelled to begin its ESI production, the Court will not address the issue of plaintiff's ESI production.

## II. APPLICABLE LAW

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, . . . the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Although Rule 26 is "liberal in scope and interpretation, extending to those matters which are relevant and reasonably calculated to lead to the discovery of admissible evidence," the party requesting discovery must make "some threshold showing of relevance . . . before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *John Ernst Lucken Revocable Tr. v. Heritage Bankshares Grp., Inc.*, No. 16-CV-4005-MWB, 2017 WL 1217197, at *2 (N.D. Iowa Mar. 31, 2017) (alterations, internal citations, and quotation marks omitted). Once the requesting party has met its burden of making a threshold showing of relevance, the burden shifts to the party resisting discovery. *St. Paul Reinsurance Co. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 511 (N.D. Iowa 2000).

## III.  DISCUSSION

### A.  *Interrogatory Number Eighteen*

Interrogatory Number Eighteen reads as follows: "Identify all lawsuits, proceedings and other legal actions initiated by [plaintiff] against any driver to enforce the Driver Employment Contract, including but not limited to the case or matter name, jurisdiction, case number, basis of the lawsuit or action, current status and/or ultimate outcome."  (Doc. 61-2, at 13).  Defendant argues that the information sought in Interrogatory Number Eighteen is relevant to plaintiff's request for permanent injunctive relief because the information will show that plaintiff has an adequate remedy at law and is therefore not entitled to injunctive relief.  (Doc. 61-1, at 2).  Defendant further contends that plaintiff's "collection of liquidated damages either through litigation or otherwise goes directly to its alleged damages in this matter."  (*Id.*).

Plaintiff objects to Interrogatory Number Eighteen on the basis that the Interrogatory "seeks information that is irrelevant and not proportional to the needs of the case."  (Doc. 69, at 1).  Further, plaintiff explains that the scope of plaintiff's initial objection to Interrogatory Number Eighteen was narrow.  Specifically, plaintiff explains that it did not object to Interrogatory Number Eighteen in its entirety, but rather objected only to providing the information sought with respect to those drivers who are not at issue in this case.  (*Id.*, at 3).  Finally, plaintiff asserts that it "has produced detailed records relating to the collection proceedings of several hundred drivers identified in this case in response to [a request for production]."  (*Id.*).

The Court has not been presented with enough information to enable the Court to determine whether plaintiff has responded to the Interrogatory in full.  Defendant, however, contends that plaintiff has responded to the Interrogatory only in part (Doc. 71, at 3), and the Court will assume, for purposes of this motion, that defendant has correctly determined that plaintiff has only partially responded to the Interrogatory.

4

The Court is not presently in a position to determine whether plaintiff is entitled to a permanent injunction. The Court is, however, able to address certain elements that must be shown in order for plaintiff to obtain a permanent injunction.

> A plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: 1) that it has suffered an irreparable injury; 2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; 3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and 4) that the public interest would not be disserved by a permanent injunction.

*Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156-57 (2010) (alteration and internal quotation marks omitted). For purposes of ruling on defendant's motion to compel, the Court need only address the second factor.

Defendant contends that plaintiff's efforts to recuperate a portion of its training costs by pursuing plaintiff's former drivers is relevant to a determination of whether plaintiff has an adequate remedy at law. (Doc. 61-1, at 5-6). If defendant is able to prove that such financial recuperation is adequate to compensate for the alleged damages, plaintiff will not be entitled to injunctive relief. *Monsanto Co.*, 561 U.S. at 156. It follows that defendant must be afforded the opportunity to discover information relevant to the defense of the existence of an adequate remedy at law. *See* FED. R. CIV. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . ..").

Likewise, the information sought speaks to the damages available to plaintiff in this suit. If the monies recovered by plaintiff from the drivers are duplicative of the damages sought from defendant, plaintiff may not be entitled to "double recovery." *Overton v. United States*, 619 F.2d 1299, 1305-07 (8th Cir. 1980) (explaining that absent an exception, such as the collateral source rule, a plaintiff is generally not entitled to double recovery). Defendant should, thus, be given an opportunity to discover

5

information pertaining to plaintiff's sources of recovery, if any, to determine whether any damages ultimately awarded should be reduced to prevent double recovery.

The Court's inquiry must proceed, however, to determine the scope of discovery permissible on the issue of financial recuperation from former drivers. The parties disagree as to whether plaintiff must be compelled to produce the information sought for *all* drivers against whom plaintiff has pursued "lawsuits, proceedings and other legal actions" to "enforce the Driver Employment Contract," or whether plaintiff must provide this information only for those drivers who were "recruited and hired by [d]efendant." (*See* Docs. 61-1, at 5-7; 69, at 3). Plaintiff has shown that the information sought is relevant with respect to the drivers allegedly poached by defendant. If the harm for which plaintiff seeks equitable relief—which concerns defendant's alleged poaching—may otherwise be remedied with monetary damages, injunctive relief will be inappropriate. *See Monsanto*, 561 U.S. at 156-57. Likewise, if a portion of the monetary damages sought from defendant has been obtained from the drivers themselves, it may be appropriate to reduce any damages ultimately awarded to plaintiff by the sum recovered from the drivers. *Overton*, 619 F.2d at 1305-07. Defendant's ability to argue that an adequate remedy exists at law for the alleged harm, and defendant's ability to argue against double recovery are both contingent upon defendant having information pertaining to actions pursued against those drivers at issue in this suit. Without such information, defendant will be unable to argue either theory. As such, the Court finds that defendant is entitled to discover the information sought with respect to the drivers at issue in this case.

Defendant has failed, however, to show the relevance of the information sought with respect to those drivers with whom defendant had no involvement. The monies recovered from this second class of drivers—those with whom defendant had no involvement—would be a remedy for a harm different than the harm the permanent

injunction seeks to remedy, and recovery for damages incurred against this second class of drivers could not lead to double recovery in this case. The monies recovered from the second class of drivers would aim toward remedying the breach of contract by those drivers *specifically*, as opposed to the losses incurred as a result of defendant's alleged poaching. The permanent injunction and monetary damages sought in the instant case, on the other hand, would aim toward remedying defendant's alleged poaching of plaintiff's drivers.[2] Because the breaches of contract of those drivers defendant did not allegedly poach are not at issue in this case, the Court fails to see the relevance of discovery pertaining to those drivers.

Plaintiff has no objection to providing the requested discovery with respect to the drivers at issue in this case. (*Id.*, at 3 (explaining that plaintiff's objection to the discovery sought was an objection only with respect to "drivers not within the merits of this litigation, i.e., drivers not recruited and hired by Defendant")). Based on the record before the Court, it appears as though defendant will have the information necessary to argue against a permanent injunction even if defendant only has access to the information sought with respect to the drivers at issue in this case. Such information should enable defendant to advance its argument that plaintiff has an adequate remedy at law. Any additional discovery with respect to those drivers not at issue in this case would be irrelevant.

As such, plaintiff is ordered to respond to Interrogatory Number Eighteen with respect to the drivers at issue in this case, to the extent plaintiff has not already done so.

---

[2] The Court notes, again, that the permanent injunction sought would not prevent drivers from breaching their contracts, but would merely prevent defendant from engaging in any allegedly wrongful poaching. *See CRST Expedited, Inc. v. Swift Transp. Co. of Ariz., LLC*, No. 17-CV-25-CJW, 2018 WL 2016274, at *5 (N.D. Iowa Apr. 30, 2018) ("Plaintiff's purpose in this suit is not . . . to prevent its drivers from breaching their contracts. Rather, plaintiff's purpose is to prevent defendant from wrongfully enticing the drivers to breach their contracts.").

Specifically, plaintiff is directed to respond with respect to those drivers known to be at issue in this case, as well as those drivers defendant was directed to identify as potentially being at issue in accordance with this Court's ruling regarding plaintiff's Interrogatory Number Five, which appears at page 6 of Docket Number 70.

### B. *Request for Production Number Thirty*

Request for Production Number Thirty seeks: "Any and all Documents, applications, letters, bids, or other submissions relating to the building and/or financing of the CRST Center, including Documents, applications, letters, bids, or other submissions relating to grants, tax credits, tax breaks, and/or other incentives." (Doc. 61-4, at 10).

In its brief, defendant explains that the CRST Center is "an eleven-story, $37-million office building." (Doc. 61-1, at 8). Defendant argues that it is entitled to discovery regarding the CRST Center "to the extent such [discovery] makes representations about [plaintiff's] workforce and fleet size," because these materials would be relevant to calculating plaintiff's damages and to determining whether plaintiff is entitled to injunctive relief. (Doc. 61-1, at 8). In support of this argument, defendant suggests that the documents requested may contain information contradictory to plaintiff's allegations in this case and that if such contradictory information does exist, that information would be relevant to plaintiff's claims in the instant case. (*See id.*).

Plaintiff resists on the basis that the documents relating to the CRST Center are irrelevant to this lawsuit because plaintiff in this matter "does not own or hold tenancy in the CRST Center," and the company that is headquartered in the CRST Center—CRST International, Inc.—does not share a parent-subsidiary relationship with plaintiff in this action.[3] (Doc. 69, at 7-8). Plaintiff further asserts that the "request is improper and

---

[3] Plaintiff acknowledges that plaintiff and CRST International, Inc. "are affiliated within the CRST family of companies," but plaintiff maintains that the two entities do not share a parent-

8

unduly burdensome on its face." (*Id.*, at 6).

Although defendant argues that plaintiff's argument regarding the two different corporate entities amounts to a "lack of control" objection that was improperly raised, (Doc. 71, at 4-5), the Court disagrees. The Court does not view plaintiff as arguing, solely, that it lacks "possession, custody, or control," over the documents requested.[4] *See* FED. R. CIV. P. 34(a)(1). Rather, the Court views plaintiff's primary argument as being that the documents requested are irrelevant to this case because, based on the non-existence of a parent-subsidiary relationship between the two companies, the documents requested do not contemplate plaintiff's workforce and fleet size, but instead only reflect information pertaining to CRST International, Inc. Plaintiff's relevancy argument was properly raised in its objections to Request for Production Thirty.[5] (*See* Doc. 61-5, at 17-18).

Defendant next argues that plaintiff's "actions in this case belie its attempt to separate itself from CRST International, Inc. In its second supplemental disclosures served on April 11, 2018, [plaintiff] identified six representatives of CRST International,

---

subsidiary relationship. (Doc. 69, at 7 n.7).

[4] Although plaintiff asserts that "[d]efendant supplies no basis that [plaintiff] controls the blueprints and financing records for CRST International Inc.'s world headquarters," the Court finds that this assertion is offered *in addition* to plaintiff's argument regarding irrelevance. Defendant seems to argue that the aforementioned lack of control is the *only* basis upon which plaintiff resists production. (*See* Doc. 71, at 4-5).

[5] Specifically, the subject objection reads as follows:
> [Plaintiff] objects to this request as . . . seeking documents that are not relevant to the claims in this matter or proportional to the needs of the case. The CRST Center is the world headquarters of CRST International, Inc., which is not even a party to this matter. The building and/or financing of the CRST Center has absolutely no relation to [defendant's] recruitment of [plaintiff's] drivers, which is the basis of the claims at issue.

(Doc. 61-5, at 17).

Inc. . . . as individuals likely to have discoverable information about this case." (Doc. 71, at 5). To the extent defendant argues that such identification aids in an attempt to pierce the corporate veil existing between CRST International, Inc. and plaintiff, the Court finds that defendant has made an insufficient showing, at this stage, for the corporate veil to be pierced.[6]

Further, the allegations defendant has brought thus far are insufficient for the Court to find that discovery into documents surrounding the CRST Center would lead to information permitting the corporate veil to be pierced, or information that would be reasonably calculated to lead to discoverable information. *See John Ernst Lucken Revocable Tr.*, 2017 WL 1217197, at *2. As such, defendant has failed to meet its burden of showing that information pertaining to the building and financing of the CRST Center is relevant to this suit. *See id*. Because the Court has found that defendant failed to make a threshold showing of relevance, the Court need not address plaintiff's various objections to the Request for Production. Defendant's request to compel plaintiff to respond to Request for Production Number Thirty is therefore **denied**.

### IV. CONCLUSION

For the aforementioned reasons, the portion of defendant's motion upon which the Court did not previously rule is **granted in part and denied in part**.

**IT IS SO ORDERED** this 21st day of September, 2018.

_____
C.J. Williams
United States District Judge
Northern District of Iowa

---

[6] Notably, defendant does not specifically advance an argument that plaintiff and CRST International, Inc. share a corporate relationship other than the relationship plaintiff has acknowledged.