# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

CRST EXPEDITED, INC,

      Plaintiff,

vs.

SWIFT TRANSPORTATION CO OF
ARIZONA, LLC,

      Defendant.

No. 17-cv-25-CJW-KEM

**MEMORANDUM OPINION
AND ORDER**

---

## TABLE OF CONTENTS

I.     *BACKGROUND* ................................................................... 2

II.    *MOTION FOR RECONSIDERATION AND/OR CLARIFICATION* . 5

    A.    *Reconsideration* ....................................................... 6

    B.    *Clarification* ............................................................ 14

III.   *MOTION FOR CERTIFICATION* .......................................... 15

    A.    *"Unenforceability"* ................................................... 18

    B.    **Restatement (Third) of Torts: Liability for Economic Harm**. 21

IV.   *CONCLUSION* ................................................................ 23

      This matter is before the Court on Swift Transportation's ("defendant") Motion for Clarification and/or Reconsideration of the Court's Order Applying Iowa Law to All 250 Driver Contracts at Issue (Doc. 183), and on defendant's Motion to Certify Questions Pursuant to Iowa Code Section 684A.1 and 684A.2 (Doc. 180). CRST Expedited, Inc. ("plaintiff") timely resisted both motions (Docs. 187, 188), and the Court entertained

oral argument on the motions on June 25, 2019.  For the following reasons, defendant's Motion for Clarification and/or Reconsideration of the Court's Order Applying Iowa Law to All 250 Driver Contracts at Issue (Doc. 183) is **granted in part**, **denied in part**, and **denied in part as moot**.  Defendant's Motion to Certify Questions Pursuant to Iowa Code Section 684A.1 and 684A.2 (Doc. 180) is **denied**.

## I.    BACKGROUND

On June 4, 2019, this Court entered its Order on the parties' cross motions for summary judgment.  *CRST Expedited, Inc. v. Swift Transp. Co. of Az., LLC*, No. 17-cv-25-CJW-KEM, 2019 WL 2358407 (N.D. Iowa June 4, 2019) ("*Swift*").  Defendant's current motions both relate, in certain ways, to the Court's summary judgment ruling.  The Court will not repeat the entirety of its summary judgment analysis in this Order and will, instead, summarize the relevant points and highlight the relevant issues.  The following facts are excerpted from the Court's summary judgment Order:

> Plaintiff and defendant are both commercial trucking companies that provide freight-hauling services throughout the country.  To operate a semi-trailer, an individual must possess a commercial driver's license ("CDL").  (Docs. 130-1, at 2; 146-1, at 2).  The trucking industry, however, is facing a shortage of licensed drivers.  (Docs. 130-1, at 1-2; 146-1, at 2).  Plaintiff operates a driver training program that allows individuals to obtain their CDLs.  (Docs. 130-1, at 2; 146-1, at 2).  When individuals enroll in the training program, plaintiff advances the costs of transportation to the training site, lodging, drug tests, physicals, and tuition for the program.  (*See* Docs. 130-1, at 2; 146-1, at 2).  These advances are ultimately to be repaid to plaintiff either through a reduced rate of pay until the debt has been satisfied, or through a lump sum payment to plaintiff, as is explained below.  (Docs. 140-1, at 8-9; 159-1, at 18, 20).
> . . . [T]hose [trainees] who are hired by plaintiff sign a Driver Employment Contract ("Driver Contract") (Docs. 140-1, at 12; 159-1, at 26).  The Driver Contracts contain either an eight-month or a ten-month restrictive term, during which time the driver-signatory is prohibited from driving for one of plaintiff's "competitors."  (Docs. 130-2, at 51-52; 140-1, at 12; 159-1, at 28).  If a driver is discharged or leaves employment

before the restrictive term ends, the driver cannot work for any "CRST competitor" during the remainder of the restrictive term. (Docs. 130-2, at 51-52; 140-1, at 16; 159-1, at 38-39). In addition, a driver who leaves employment before his restrictive term ends is charged $6,500, regardless of the amount of time remaining on his restrictive term. (Docs. 140-1, at 16; 159-1, at 38-39; *see also, e.g.*, Doc. 130-2, at 52 (a representative Driver Contract that contains a $6,500 liquidated damages provision)). Plaintiff asserts that if a driver repays the $6,500, he is released from the contract. (Doc. 159-1, at 39).

Plaintiff brought suit alleging that defendant has actively recruited and continues to actively recruit plaintiff's drivers, even though those drivers remain within the restrictive terms of their Driver Contracts. (Doc. 43, at 4). Specifically, plaintiff asserts that defendant is aware that the drivers at issue remain within the restrictive terms of their contracts, and that defendant's conduct of actively recruiting its drivers is the cause of the drivers leaving plaintiff to drive for defendant. (*Id.*, at 5-10). By hiring drivers who obtained their CDL at plaintiff's expense, plaintiff asserts that defendant is able to gain the advantage of hiring licensed commercial truck drivers without undertaking the expense of training those drivers. (*Id.*, at 6-7). Based on these allegations, plaintiff brought claims for intentional interference with contract, intentional interference with prospective economic advantage, and unjust enrichment. (*Id.*, at 5-8). Plaintiff also seeks permanent injunctive relief "enjoining [defendant] from any further or continued interference with [plaintiff's] prospective economic advantage and/or contracts with its drivers . . . ." (*Id.*, at 8-10).

An essential element of plaintiff's tortious interference with contract claim is that the contracts with the drivers were valid. *See Gen. Elec. Capital Corp. v. Commercial Servs. Grp., Inc.*, 485 F. Supp. 2d 1015, 1025 (N.D. Iowa 2007) (citations omitted). Plaintiff's motion for summary judgment requests only that the Court find that the contracts were valid and that the Court "eliminate all affirmative defenses addressing that element." (Doc. 130, at 3). Defendant's motion seeks complete summary judgment as to each of plaintiff's claims. (Doc. 138).

*Id.*, at *1-2 (footnotes omitted). The Court ultimately granted summary judgment in defendant's favor as to the tortious interference with prospective economic advantage claim and plaintiff's request for injunctive relief. The Court granted partial summary

judgment in defendant's favor on the unjust enrichment claim, and the Court granted partial summary judgment in plaintiff's favor in finding the contracts valid.

The Court applied Iowa law in assessing the validity of the 250 contracts at issue here.[1]  *Id.*, at *3.  In seeking to establish the invalidity of the contracts at summary judgment, defendant argued, in relevant part, that the non-competition provisions contained in the Driver Contracts were not supported by a protectable interest and that the lack of a protectable interest rendered the contracts void *ab initio*.  *See id.*, at *9 (summarizing defendant's contract validity arguments).  The Court determined that it need not reach the issue of whether the contracts were supported by a protectable interest because the Court found that if the contracts did lack a protectable interest, the contracts would be rendered voidable, not void.[2]  *Id.*, at *13.  Thus, under the Court's analysis in its summary judgment Order, the non-existence of a protectable interest would not have been dispositive.

Relying on its argument that the non-competition provisions are not supported by a protectable interest, defendant now asks this Court to certify a question to the Iowa Supreme Court that would address the legal effect of a lack of a protectable interest.  (*See* Doc. 180, at 1).  Defendant also requests that the Court certify a second question that pertains to the type of interference that should be considered improper under a tortious interference with contract claim.  (*Id.*).

---

[1] Defendant now contests the Court's application of Iowa law.  This issue is discussed more fully in connection with defendant's motion for reconsideration and/or clarification.

[2] The Court has, on multiple recent occasions, held that if a contract is rendered voidable, as opposed to void, that contract may still form the basis for a tortious interference claim, so long as the contract has not been avoided by a contracting party.  *See Swift*, 2019 WL 2358407, at *7-8 (collecting authority distinguishing between contracts that are void and those that are voidable).

The questions for which defendant seeks certification do not form the basis for defendant's motion for reconsideration and/or clarification.[3] The motion for reconsideration and/or clarification is narrow and asks the Court 1) to engage in a conflict of laws analysis to determine which body of law to apply in determining the validity of each of the contracts at issue, 2) hold that laws of states other than Iowa apply to the majority of the contracts for purposes of determining the validity of the contracts, 3) alter or amend the summary judgment Order consistent with whether any or all of the contracts would be invalid under a body of law other than Iowa's, and/or 4) clarify and/or reconsider whether the Court will apply Iowa law to determine the validity of all of the contracts at trial. (Doc 183-1).

The motion for certification, on the other hand, pleads that the questions that are the subject of the motion "go directly to some of [defendant's] defenses in this case and its anticipated jury instructions." (Doc. 180, at 1).[4] Thus, defendant has not moved for reconsideration of the Court's summary judgment Order based on the answers that defendant anticipates the Iowa Supreme Court would give to the questions for which defendant seeks certification. In other words, defendant's motion for reconsideration largely seeks retrospective relief while the motions for clarification and for certification seek only prospective relief. The Court will first address defendant's motion for reconsideration and/or clarification before turning to the motion for certification.

## II.   MOTION FOR RECONSIDERATION AND/OR CLARIFICATION

Defendant's motion for reconsideration and/or clarification requests that the Court

---

[3] Although defendant's motion is more properly characterized as a motion for relief from judgment or order, defendant refers to the motion as one for reconsideration, and the Court will do so as well.

[4] Defendant does not explain which defenses or anticipated jury instructions would implicate the answers to the questions for which defendant seeks certification.

"alter or amend the [summary judgment Order] under Federal Rule of Civil Procedure 59(e)," and/or "grant [defendant] relief from the judgment under Rule 60(b)(6)." (Doc. 183-1, at 7). Specifically, defendant "moves the Court for clarification and/or reconsideration of its [summary judgment Order] as it related to the application of Iowa law to the validity of the majority of the Driver Contracts at issue." (Doc. 183, at 1). Defendant contends that the Court should engage in a conflict of laws analysis and apply a different body of law in assessing the validity of certain contracts. (Doc. 183-1, at 9-11). Under those governing bodies of law, defendant argues, the contracts would be void *ab initio*. (*Id.*, at 13-26). Defendant also seeks clarification as to whether the Court will apply Iowa law at trial in assessing the validity of any or all of the contracts. (*Id.*, at 10, 26-27).

### A.     *Reconsideration*

Federal Rule of Civil Procedure 59(e) addresses the Court's authority to alter or amend a judgment. Rule 60(b), on the other hand, addresses the Court's authority to "relieve a party . . . from a final judgment, order, or proceeding . . .." The Eighth Circuit Court of Appeals has addressed the relevant Rule to consider when a litigant seeks "reconsideration" of a non-final order, such as an order that grants summary judgment only in part, thus leaving a portion of the case to be resolved at a later time.[5]

> The Federal Rules of Civil Procedure do not account for "motions to reconsider." "However, we have determined that motions for reconsideration are 'nothing more than Rule 60(b) motions when directed at non-final orders.'" *Elder-Keep v. Aksamit*, 460 F.3d 979, 984 (8th Cir. 2006) (quoting *Anderson v. Raymond Corp.*, 340 F.3d 520, 525 (8th Cir. 2003)). The [plaintiffs'] motion to reconsider was directed at a non-final summary judgment order because that order resolved only part of their

---

[5] Although plaintiff indicates the potential applicability of Federal Rule of Civil Procedure 54(b), the Court finds it unnecessary to consider whether Rule 54 is applicable here. (*See* Doc. 187, at 5 n.1). Defendant has not moved under Rule 54, and the Eighth Circuit has directly addressed motions to reconsider that are brought under the same procedural posture as is present here.

dispute with [defendant]. *Auto Servs. Co. v. KPMG, LLP*, 537 F.3d 853, 856 (8th Cir. 2008) ("[A]n order dismissing fewer than all claims or parties is generally not a final judgment."). Therefore, we consider the [plaintiffs'] motion to reconsider as we would a Rule 60(b) motion. . . .

*Nelson v. Am. Home Assurance Co.*, 702 F.3d 1038, 1043 (8th Cir. 2012) (parenthetical alteration in original) (citation to internal footnote omitted). Because the Court's summary judgment Order disposed of only a portion of this case, the Court's summary judgment Order was a non-final order, and Rule 60(b) governs defendant's motion for reconsideration. *Id.*

Denial of a Rule 60(b) motion is reviewed for abuse of discretion. *Id.* "Such a motion is to be granted only in exceptional circumstances requiring extraordinary relief." *Id.* (citation and internal quotation marks omitted). A motion for reconsideration should not "'serve as the occasion to tender new legal theories for the first time.'" *Edeh v. Equifax Info. Servs., LLC*, Civ. No. 12-1301 (JNE/FLN), 2013 WL 1173920, at *1 (D. Minn. Mar. 20, 2013) (quoting *Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 414 (8th Cir. 1988)).

Defendant's motion for reconsideration argues that various non-Iowa bodies of law are applicable to determine the validity of certain contracts. Defendant does not specifically identify all of the contracts it contends should be governed by a body of law other than Iowa's. (*See* Doc. 183-1, at 12-26). Defendant had the opportunity to make this argument at the summary judgment stage, and defendant declined to do so. As the Court noted in its summary judgment Order, defendant indicated in its summary judgment briefing "that other states' laws may be applicable in determining the validity of the contracts," but "defendant d[id] not substantiate this argument or otherwise request that the Court engage in a conflict of laws analysis." *Swift*, 2019 WL 2358407, at *3. The Court, thus, did not engage in a conflict of laws analysis and, instead, applied Iowa law to all issues. *Id.*

Defendant now substantiates, to a degree, its argument that other states' laws should apply to determine the validity of the contracts and that, under those states' laws, certain contracts should be found invalid. In doing so, defendant addresses both prongs of its argument, turning first to Iowa's conflict of laws principles to argue in favor of applying the laws of other states, then addressing the substance of each of those bodies of law to assert that those laws would mandate a finding of invalidity as to the relevant contracts. (*Id.*, at 11-26). In addressing the second prong of its argument, defendant identifies certain groups of contracts by the driver-signatory's state of residence and applies the law of that state to those contracts.[6] (*Id.*).

In its summary judgment briefing, defendant did not address either prong of its argument, nor did defendant identify, in any fashion, which contracts defendant now contends should be governed by a body of law other than Iowa's. In resisting plaintiff's motion for summary judgment, defendant included a footnote purporting to reserve defendant's conflict of laws argument:

> As [defendant] has noted in multiple filings and pleadings, [plaintiff] has contracts with drivers from all over the country. Many states where the Drivers reside require application of their own law when interpreting or enforcing a non-compete, often for public policy reasons. [Defendant] does not concede or waive the argument that other states' laws apply for purposes of assessing the validity of the Driver Contracts, as every state disfavors non-competes and requires them to be supported by consideration, a protectable interest, and [be] reasonable in scope. [Defendant] is willing to submit additional authority on these points if the Court so desires.

(Doc. 146, at 6 n.1). When the Court pressed defense counsel during oral argument

_____

[6] For instance, defendant asserts that eighteen contracts should be governed by Alabama law. (Doc. 183-1, at 17). Defendant does not, however, identify which eighteen contracts, specifically, should be governed by Alabama law. Instead, defendant asserts that the contracts of the eighteen drivers who "reside in Alabama" should be governed by Alabama law. (*Id.*, at 17-18).

about why defendant did not fully brief the conflict of laws issue previously, counsel candidly admitted that defendant believed the Court would rule in its favor under defendant's interpretation of Iowa law, so did not think it necessary to argue in favor of applying the laws of other states. (Doc. 201, at 18-20).

This purported reservation of the argument "that other states' laws apply for purposes of assessing the validity of the [contracts]" is nothing more than a skeletal assertion that, at some future point, defendant may find it prudent to argue in favor of applying other states' laws. Indeed, defendant did not go so far as to actually advance the argument that the Court should apply other states' laws. Defendant merely noted the possibility of applying other states' laws. Such an assertion is insufficient to preserve defendant's ability to argue this point. *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim. Especially not when the brief presents a passel of other arguments, as [defendant's] did. Judges are not like pigs, hunting for truffles buried in briefs." (internal citation omitted)) (cited with approval in *Larson v. Nutt*, 34 F.3d 647, 648 (8th Cir. 1994)).

Neither is defendant's offer to "submit supplemental authority on these points" sufficient to preserve defendant's arguments. An argument is deemed waived if not timely raised. *See In re Miell*, No. C 09-112-MWB, 2009 WL 2590515, *4 n.2, 5 (N.D. Iowa Aug. 19, 2009) (collecting cases). To properly preserve the argument, defendant should have explained at the summary judgment stage why the laws of certain jurisdictions should apply in assessing the validity of the contracts, and defendant should have explained why each contract subject to those bodies of law should have been found invalid. Defendant did neither and, thus, has waived that argument.

Finally, the sampling of extra-jurisdictional cases that defendant cited in its

affirmative motion for summary judgment[7] and in resisting plaintiff's motion for summary judgment are insufficient to invoke the conflict of laws issue. In its resistance to plaintiff's motion for summary judgment, defendant cited to authority from Florida, Kansas, Tennessee, and Arkansas, but defendant did not explain why this Court should apply the laws of any of those states, nor did defendant apply those laws to any specific contract to argue in favor of a finding of invalidity. (*See* Doc. 146, at 5-6, 6 n.1, 9, 10).

Even now, defendant does not argue that the law of either Kansas or Tennessee should be applied to any of the contracts. (*See generally* Doc. 183-1). Further, defendant now argues, for the first time, that the laws of California, Oklahoma, Alabama, Georgia, Illinois, Louisiana, New York, North Carolina, and Wisconsin may apply to certain contracts. (*See generally id.*). In its summary judgment briefing, defendant did not mention the laws of any of these states. (*See generally* Doc. 146). Defendant, instead, chose to survey the laws of a small number of jurisdictions apparently with the hope that the Court would, *sua sponte*, undertake a conflict of laws analysis, in the event that the Court did not hold the contracts invalid under Iowa law. By taking such a generalized approach, defendant did not adequately raise the conflict of laws issue. The Court thus finds that it was wholly proper to apply the law of the forum in which this Court sits. *See Wolgin v. Simon*, 722 F.2d 389, 391 (8th Cir. 1984) ("A federal court exercising jurisdiction solely on the basis of diversity of citizenship must apply the substantive law of the forum in which it sits." (citation omitted)). For these reasons, defendant's motion for reconsideration is **denied**.

Even if the Court had been inclined to engage in a conflict of laws analysis *sua sponte*, it is unclear whether the summary judgment record contains sufficient information

---

[7] In its summary judgment Order, the Court more fully addressed the cases defendant cited in its affirmative motion for summary judgment. *See Swift*, 2019 WL2358407, at *11-12. The Court will not repeat that discussion here.

for the Court to reach the same conclusions as defendant in terms of which contracts defendant contends should be governed by which states' laws. For instance, each of the contracts contains two blank lines, one of which is for the driver-signatory's signature, and the other of which is for plaintiff's corporate representative's signature. (*See, e.g.*, Doc. 130-2, at 53). Beneath the driver-signatory's signature line, there are four blank lines to be filled out. (*E.g.*, *id.*). One line is for "Name." (*E.g.*, *id.*). There is little doubt that this line is for the driver-signatory to print his name. Beneath those lines are three blank lines for "Address," "City, State," and "Zip Code." (*E.g.*, *id.*). One could easily interpret these blank lines as being for the driver-signatory to indicate his home address. The parties have not informed the Court, however, whether any or all of the driver-signatories actually indicated their home address, as opposed to some other address.

If the Court had assumed that each address indicated reflected the driver-signatory's home address, and that the address indicated was the relevant address to consider in determining the driver-signatory's "home"[8] state, the Court would have drawn conclusions of material fact. Perhaps those conclusions would have been proper, but the parties did not address whether those were the correct addresses for the Court to consider, which left the Court unable to determine whether each driver's "home" state

---

[8] In now addressing the conflict of laws issue, defendant argues that a driver-signatory's state of "residence" is relevant. (*See* Doc. 183-1, at 17-27 (arguing in favor of the application of a certain state's body of law based on whether a driver "resides" in that state)). The Court finds it unnecessary to determine whether a driver-signatory's "residence" is applicable to the conflict of laws inquiry. Instead of referring to the drivers' states of "residency," as defendant has done, the Court will refer to the drivers' "home" states in addressing defendant's arguments. The Court declines to refer to the drivers' states of "residency" because the information the Court has is inadequate to determine whether a driver was truly a resident of a certain state. The Court also notes that defendant uses the present tense when referring to the drivers' "residences." (*Id.*). This creates confusion as to the date defendant contends is relevant in determining a driver's "residence."

was genuinely in dispute. In the absence of a request to do so, the Court did not attempt to ascertain each driver-signatory's "home" state in an attempt to engage in a conflict of laws analysis.

Even if the Court had drawn these conclusions, it is unclear whether the Court would have reached the same conclusions that defendant now reaches as to which body of law governs which contracts. In defendant's motion for reconsideration, defendant identifies, by name, nineteen drivers whose contracts contain choice of law provisions selecting either Florida, California, or Oklahoma law. (Doc. 183-1, at 12 n.1-3). Defendant then goes on to assert that 139 other contracts have Iowa choice of law provisions that should not be enforced because "none of [those 139 drivers] resides in Iowa." (*Id.*, at 16). Defendant then asserts that a specific number of drivers "reside" in each of twelve states. (*See, e.g.*, *id.*, at 17). Based on this information, defendant urges the Court to reject the Iowa choice of law provisions and, instead, apply the laws of each driver's state of "residence" to determine the validity of the contracts whose driver-signatories "reside" in that state. (*E.g.*, *id.*, at 17-18). Defendant concludes that each of the 139 contracts is invalid under the laws of the applicable state. Aside from identifying those nineteen drivers whose contracts contain a Florida, California, or Oklahoma choice of law provision, defendant does not identify, by name or other identifier, which contracts defendant argues are subject to which state's body of laws.

Defendant includes a single citation to "Driver Contracts, Exhibit B," following the assertion that "none of these drivers resides in Iowa." (Doc. 183-1, at 16). Exhibit B to defendant's motion for reconsideration is comprised of driver contracts. From this citation, the Court assumes that defendant gleaned its assessment of the drivers' residency from the addresses indicated on the contracts themselves. This is, however, far from clear. Perhaps the Court could scour the summary judgment record and, by process of elimination, determine which drivers defendant contends are residents of which state and,

thereby, examine those drivers' contracts to determine whether the contracts contain an Iowa choice of law provision. From there, perhaps the Court could attempt to analyze whether those choice of law provisions should be enforced. The Court's analysis would, however, almost certainly be flawed based on the limited information the Court had at the summary judgment stage and the limited information the Court has even now.

For instance, in arguing that the Court should not apply the Iowa choice of law provisions, defendant addresses only one portion of the relevant inquiry. Iowa conflict of laws principles, in relevant part, "'permit[ ] the parties to agree on the law to be applied to the contract in most cases so long as it does not override the public policy of a state having a materially greater interest in the transaction.'" *Pro Edge, L.P. v. Gue*, 374 F. Supp. 2d 711, 737 (N.D. Iowa 2005) (quoting *Joseph L. Wilmotte & Co. v. Rosenman Bros.*, 258 N.W.2d 317, 328 (Iowa 1977)). For each driver who lives in a state other than Iowa but signed a contract with a choice of law provision, defendant argues that the driver's state of residence has "a materially greater interest [than Iowa] in the determination of the particular issue." (*See* Doc. 183-1, at 16). Defendant asserts that "Iowa does not have a substantial interest in [the determination of the enforceability of restrictive covenants against non-Iowa residents]." (*Id.*, at 17). Defendant does not explain how it reaches this conclusion.[9]

Plaintiff is headquartered in Iowa, and Iowa has an interest in ensuring that its citizen entities engage in lawful behavior. If the contracts are, as defendant argues, unenforceable, unconscionable, or otherwise void or voidable, Iowa has an interest in addressing plaintiff's use of those contracts. This is only one of many considerations that

---

[9] In arguing in favor of applying the Florida, California, and Oklahoma choice of law provisions, defendant asserts that "Iowa does not have a fundamental policy regarding restrictive covenants." (Doc. 183-1, at 13). This inquiry goes to the issue of whether Iowa has a public policy on restrictive covenants and does not address whether Iowa's interest in the transactions is greater than those of Florida, California, and Oklahoma.

defendant has failed to address. Defendant's discussion of why other states have "a materially greater interest in the determination of the particular issue[s]" is, thus, of little benefit because defendant does not address the full extent of Iowa's interest in the restrictive covenants. (*See* Doc. 183-1, at 16).

Finally, the scant information the Court has does not enable the Court to determine which facts may be relevant in determining which states may have a greater interest in the transactions than does Iowa. In support of its argument, defendant only addresses purported states of residence. Defendant does not explain why other facts may be irrelevant to the conflict of laws analysis, nor does defendant explain why it argues that the states of residence for the driver-signatories have a greater interest in the transactions than Iowa, which is home to the other party to the contracts. Consequently, the Court is unable to determine whether any state, including the thirteen states defendant references in its motion to reconsider, truly has a materially greater interest than Iowa in the transactions at issue. Even on the record now before the Court, defendant's pleadings are insufficient to permit the Court to engage in an accurate and complete conflict of laws analysis. For these reasons, to the extent defendant's Motion for Clarification and/or Reconsideration (Doc. 183) seeks reconsideration of the Court's summary judgment Order, that motion is **denied**.[10]

### B.    *Clarification*

Defendant also seeks clarification that the Court "will apply other states' laws to evaluating the validity and enforceability" of the contracts at trial. (Doc. 183, at 2). To

---

[10] Defendant asserts that because the Court has yet to render a final Order, the Court has greater discretion to grant defendant's motion for reconsideration than the Court would have if a final order had issued. (Doc. 183-1, at 8). Regardless of whether the Court has greater discretion in this case, the Court would deny the motion to reconsider because defendant failed to substantively address the conflict of laws issue in its summary judgment briefing. Even now, defendant's analysis is lacking, which further convinces the Court that it is proper to deny the motion to reconsider.

the limited extent defendant seeks clarification of the Court's summary judgment Order, defendant's motion is **granted**. The Court **denies**, however, defendant's request for "clarification" that the Court will apply other states' laws at trial.

In its summary judgment Order, the Court held as follows:

> Plaintiff's motion for partial summary judgment seeks, in part, to establish the existence of valid contractual relationships with the drivers. The Court finds that plaintiff is entitled to summary judgment to the extent plaintiff's motion seeks to establish that the Driver Contracts, and the restrictive covenants contained therein, are valid. Plaintiff's motion is **granted** to this limited extent. Plaintiff is not, however, entitled to a finding that plaintiff had valid contracts with the drivers for the drivers' continued employment because . . . the drivers were at-will employees.

*Swift*, 2019 WL 2358407, at *15 (emphasis in original). The Court granted summary judgment in plaintiff's favor as to the validity of the contracts. The validity of the contracts has been established, and the validity of the contracts is not a triable issue. Thus, it is unnecessary to address whether the Court will apply other states' laws to this issue at trial because the issue will not arise. To the extent defendant's motion for clarification (Doc. 183) seeks a ruling that the validity of the contracts remains to be determined, the motion is **denied**, and to the extent the motion seeks to establish that the Court will apply other states' laws in assessing the validity of the contracts at trial, the motion is **denied as moot**.

### III. *MOTION FOR CERTIFICATION*

The Iowa Supreme Court "may answer questions of law certified to it by . . . a United States district court . . . when requested by the certifying court, if there are involved in a proceeding before it questions of law of [the State of Iowa] which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the appellate courts of this state." IOWA CODE § 684A.1 (2018). "Whether a federal district court

should certify a question of state law to the state's highest court is a matter committed to the discretion of the district court." *Catipovic v. Peoples Cmty. Health Clinic, Inc.*, 239 F. Supp. 2d 917, 922 (N.D. Iowa 2003) (citations and internal quotation marks omitted). *Accord Babinski v. Am. Family Ins. Grp.*, 569 F.3d 349, 353 (8th Cir. 2009). "[F]ederal courts have a duty to address matters of state law, even when that law is unsettled." *Jung v. Gen. Cas. Co. of Wis.*, 651 F.3d 796, 801 (8th Cir. 2011) (citation omitted).

Defendant requests that the Court certify two separate questions to the Iowa Supreme Court:

1. Does the lack of a protectable or legitimate business interest in a restrictive covenant or non-compete agreement render the agreement or its non-compete provision void as a matter of law under Iowa law?

2. Would the Iowa Supreme Court adopt the *Restatement (Third) of Torts*[*: Liability for Economic Harm*] § 16 and apply it to tortious interference with contract claims, particularly as it relates to the requirement that the tortfeasor "approach" the contracting employee for purposes of establishing impropriety?

(Doc. 180, at 1).

Defendant's motion to certify was brought only after this Court granted partial summary judgment in plaintiff's favor, and defendant's motion only addresses issues on which the Court ruled against defendant. *See Swift*, 2019 WL 2358407, at *7 (rejecting defendant's arguments under the *Restatement (Third) of Torts: Liability for Economic Harm*), *9-11 (interpreting Iowa law to mean that even if the contracts at issue are unsupported by a protectable interest, those contracts would be rendered voidable, not void, and, thus, could still form the basis for liability under plaintiff's tortious interference with contract claim).

> The practice of requesting certification after an adverse judgment has been entered should be discouraged. Otherwise, the initial federal court decision will be nothing but a gamble with certification sought only after an adverse decision. Once a question is submitted for decision in the district court, the

parties should be bound by the outcome unless other grounds for reversal are present. Only in limited circumstances should certification be granted after a case has been decided. *See, e.g.*, *In re Complaint of McLinn*, 744 F.2d 677, 681 (9th Cir. 1984) (party should not be allowed a "second chance at victory" after district court has decided issue"); *Harris v. Karri-On Campers, Inc.*, 640 F.2d 65, 68 (7th Cir. 1981) (certification after case is tried would only prolong litigation).

*Perkins v. Clark Equip. Co., Melrose Div.*, 823 F.2d 207, 210 (8th Cir. 1987). *See also Jung*, 651 F.3d at 801 (The Eighth Circuit Court of Appeals "generally do[es] not allow certification after a case has been decided." (citation omitted)).

Defendant had every opportunity to move for certification at numerous points throughout this litigation, but defendant declined to do so. Instead, defendant waited until after the Court ruled in plaintiff's favor on certain issues to pursue the certification avenue. The timing and substance of defendant's motion to certify indicate that defendant now seeks certification because defendant is dissatisfied with this Court's ruling adverse to defendant's interests. The motion was filed nine days after the Court entered its summary judgment Order (*see Swift*, 2019 WL 2358407 & Doc. 180), and, as to the first issue, is premised entirely on the Court's determination that "under Iowa law, a non-competition clause that is not reasonably necessary does not, alone, serve to void either the non-competition clause or the contract as a whole" (Doc. 180-1, at 4 (citing *Swift*, 2019 WL 2358407, at *10)).

The issues upon which defendant rests its motion for certification were not raised by the Court *sua sponte*. Thus, defendant cannot properly argue that it was unaware of the potential applicability of certification until after the Court issued its summary judgment Order. Instead, defendant, in its affirmative motion for summary judgment, implicated both issues that now form the basis for the motion to certify.

## A. *"Unenforceability"*

In its motion for summary judgment, defendant included a subsection entitled "Non-competes unsupported by a protectable interest are void." (Doc. 140, at 26-30). In that subsection, defendant cited to numerous cases that stand for the proposition that non-competition provisions that are not supported by a protectable interest are rendered "void and unenforceable." (*Id.*, at 26 (citing *Spectrum Creations, L.P. v. Carolyn Kinder Int'l, LLC*, No. SA-05-CV-750-XR, 2008 WL 416264, at *66 (W.D. Tex. Feb. 13, 2008)), 27 n.7-8 (citing *GPS Indus., LLC v. Lewis*, 691 F. Supp. 2d 1327 (M.D. Fla. 2010); *Rebsamen Ins. v. Milton*, 269 Ark. 737, 744 (Ark. Ct. App. 1980)); 30 (citing *In re Maxxim Med. Grp., Inc.*, 434 B.R. 660, 684 (M.D. Fla. 2010))). The cases defendant cited in its motion for summary judgment illustrate the lack of clarity as to whether a contract that is unenforceable carries the same legal ramifications as one that is void. Thus, defendant raised the issue of whether the lack of a protectable interest would render a contract void, as opposed to unenforceable.

Not only did defendant raise the issue, but defendant highlighted the issue by alleging deficiencies in this Court's past treatment of the issue in a companion case. Specifically, defendant stated as follows:

> "In [*CRST v. TransAm*, No. C16-52-LTS, 2018 WL 3738017 (N.D. Iowa July 31, 2018)], the [C]ourt did not analyze whether the Driver Contract is necessary to protect a protectable interest, simply observing that "arguments as to whether the restrictive covenants . . . are necessary to protect CRST's business [ ] fall under the 'voidable contract' theory." 2018 WL 3738017, at *11. Respectfully, the *TransAm* [C]ourt's position on this issue is not fully developed or consistent with governing law, though the [C]ourt likely did not address it due to the paucity of the arguments on this issue in the *TransAm* record. . . .

(Doc. 140, at 27 n.8 (omissions in original)). In contesting the sufficiency of the Court's prior treatment of the issue, defendant impliedly requested that the Court address the

issue again and that, in doing so, the Court more fully develop its analysis.

Finally, defendant went beyond asking the Court to elaborate upon its previous determination that "arguments as to whether the restrictive covenants . . . are necessary to protect CRST's business [ ] fall under the 'voidable contract' theory." (*Id.* (alteration in original) (citing *CRST v. TransAm*, 2018 WL 3738017, at *11)). Defendant directly advocated in favor of the conclusion that the lack of a protectable interest would render a contract facially invalid instead of unenforceable. (*Id.* ("Whether or not there is a protectable interest goes to the validity of the restrictive covenant on its face, not simply to whether it is enforceable. *GPS Indus.*, 691 F. Supp. 2d 1327.")). This is the exact issue the Court addressed in its summary judgment Order. *See Swift*, 2019 WL 2358407, at *9 ("If a non-competition provision is not reasonably necessary, it is 'unenforceable.' . . . The Court finds that the use of the term 'unenforceable,' as opposed to 'void,' is intentional. The Iowa Supreme Court has repeatedly recognized the distinction between contracts that are unenforceable versus those that are void." (citations omitted)).

In affirmatively moving for summary judgment, defendant must have been aware of the potential benefit of seeking an answer to the first question. Defendant litigated the legal effect of the lack of a protectable interest and, in doing so, defendant cited to cases from several different jurisdictions, including Iowa. None of the cases issuing from an Iowa state or federal court,[11] however, are cited for the proposition that a restrictive covenant that is unsupported by a protectable interest would be void. Indeed, the cases that defendant relied on in support of its motion for summary judgment speak in terms of enforceability of non-competition clauses.[12]

---

[11] The Court notes that although some of the cases defendant cited in its motion for summary judgment applied the law of a different forum, the only cited cases that applied Iowa law issued from an Iowa state or federal court.

[12] Defendant cited: *Dan's Overhead Doors & More, Inc. v. Wennermark*, No. 06-1049, 2007

That Iowa caselaw addresses enforceability of non-competition clauses, instead of validity, should have made readily apparent to defendant the potential issue of whether an unenforceable non-competition clause is necessarily void. Additionally, defendant's motion for summary judgment cited numerous non-Iowa cases holding that an improper non-competition clause renders the clause—or the contract as a whole—"void *and* unenforceable." (*See* Doc. 140, at 26, 27 n.7, 30 (emphasis added)). Iowa, however, has not adopted the same "void and unenforceable" terminology. The juxtaposition of the Iowa terminology using "unenforceable," against other jurisdictions' use of "void and unenforceable" should have highlighted for defendant the issue of whether Iowa considers "unenforceable" contracts to be "void."

Moreover, the Court finds it probative that defendant relied on Iowa law in addressing the standard for determining enforceability but turned to the law of other jurisdictions to support defendant's argument that an unenforceable non-competition provision is void. The Court has already noted its inability "to find any Iowa state court decision, Iowa federal court decision, or Eighth Circuit Court of Appeals decision . . . holding that an improper non-competition provision would render a contract—or the non-

---

WL 1486133, at *2 (Iowa Ct. App. May 23, 2007), which states: "In deciding whether to *enforce* a restrictive covenant in an employment agreement, Iowa courts apply a three-pronged test . . .." (emphasis added) (Doc. 140, at 26-28); *Ag Spectrum Co. v. Elder*, 191 F. Supp. 3d 966, 971 (S.D. Iowa 2016), which discusses Iowa law on whether to enforce non-competition clauses (*id.*, at 27); *IOwa Office Supply, Inc. v. Access Techs., Inc.*, No. EQCV150495, 2013 WL 6511495, at *4 (Iowa Dist. Ct. Feb. 22, 2013), which contains an entire section addressing "enforceability" of non-competition agreements (*id.*); *Brux, Inc. v. Zimmerman*, No. LACV074484, 2014 WL 1924617, at *11 (Iowa Dist. Ct. Mar. 10, 2014), which suggests that unenforceable contracts remain valid until *invalidated* by court order, and stating that "[c]ontracts that contravene public policy will not be enforced" (*id.*); *Iowa Glass Depot, Inc. v. Jindrich*, 338 N.W.2d 376, 382 (Iowa 1983), which addresses validity of restrictive covenants but speaks of when restraints will be *enforced* against employees and recounting an instance in which the Iowa Supreme Court "refused to *enforce* the covenant on the basis that the restriction was unreasonable" (emphasis added) (*id.*).

competition provision alone—void." *Swift*, 2019 WL 2358407, at *10. One possible reason for defendant's reliance upon the law of other jurisdictions is that defendant, likewise, was unable to find any Iowa law holding that an improper non-competition provision would render the provision void. The lack of Iowa authority should, again, have alerted defendant to the potential benefit of seeking guidance from the Iowa Supreme Court on what it means for a non-competition provision to be "unenforceable." As noted above, defendant should have become aware of this when researching and drafting its motion for summary judgment, if not sooner.

In raising the unenforceability issue, defendant's motion for summary judgment cited to a number of cases. The Court discussed and rejected every case defendant relied on in support of its argument that the lack of a protectable interest would render a contract void. *See id.*, at *11-13. Thus, the first issue upon which defendant now seeks certification was raised by defendant, was thoroughly litigated by defendant, was fully addressed by this Court in response to defendant's arguments, and the Court ultimately rejected defendant's position. Defendant's request for certification at this stage is an attempt to seek reconsideration of certain portions of the Court's summary judgment Order that are adverse to defendant. As set forth above, dissatisfaction with a court's decision is not an appropriate basis upon which to seek certification. *Perkins*, 823 F.2d at 210.

### B. Restatement (Third) of Torts: Liability for Economic Harm

Defendant also argues that this Court should certify a question to the Iowa Supreme Court inquiring as to whether that court would adopt Section 16 of the *Restatement (Third) of Torts: Liability for Economic Harm* and, specifically, "as it relates to the requirement that the tortfeasor 'approach' the contracting employee for purposes of establishing impropriety." (Doc. 180, at 1). Defendant points, more specifically, to comment l of Section 16, which instructs: "If the plaintiff claims that the defendant induced a breach

of contract by another, the defendant's knowledge of the existing contract is necessary but not sufficient to support liability. The plaintiff must also show that the defendant initiated the breach." Illustration 26 to comment l, which defendant relies on heavily, is as follows:

> Employee of Company approaches Rival and asks for a job. Rival knows that Employee has a five-year contract with Company; Rival does not see how Employee can honor that contract and work for Rival at the same time. Rival nevertheless offers Employee a job. Employee accepts the job and breaks his contract with Company. Company does not have a claim against Rival under this Section because Rival did not induce Employee to break his contract with Company. The result would be otherwise if Rival had approached Employee to recruit him.

In moving for summary judgment, defendant offered this same theory and urged the Court to adopt the *Restatement (Third) of Torts: Liability for Economic Harm*. (*See* Doc. 140, at 15-24). The Court rejected that argument, having already established an inability "to find any Iowa caselaw adopting the *Restatement (Third) of Torts: Liability for Economic Harm*, which is still in draft form and has yet to be officially published." *Swift*, 2019 WL 2358407, at *7. Defendant did not argue that should the Court decline to adopt the *Restatement (Third) of Torts: Liability for Economic Harm*, the Court should certify the issue of whether to adopt the *Restatement (Third) of Torts: Liability for Economic Harm* to the Iowa Supreme Court. Defendant asked the Court to certify this question only *after* the Court declined to adopt defendant's argument. As with the first question, defendant's failure to bring its motion to certify the second question until after an adverse ruling issued is improper. *Perkins*, 823 F.2d at 210.

In short, although defendant's choice to bring its motion to certify may have been spurred by this Court's summary judgment Order, certification did not become a potentially relevant issue as to either of defendant's questions because of this Court's summary judgment Order. Rather, defendant should have recognized the potential

relevance of the certification issue in researching and drafting its motion for summary judgment, if not sooner. Thus, the Court views defendant's motion as having been brought as a result of an unfavorable ruling on issues that were thoroughly litigated by the parties and addressed by the Court. Defendant's motion is not the result of legal issues that the Court raised *sua sponte*. For these reasons, defendant's motion for certification (Doc. 180) is **denied**.

## IV. CONCLUSION

For the stated reasons, defendant's Motion for Clarification and/or Reconsideration of the Court's Order Applying Iowa Law to All 250 Driver Contracts at Issue (Doc. 183) is **granted in part**, **denied in part**, and **denied in part as moot**. Defendant's Motion to Certify Questions Pursuant to Iowa Code Section 684A.1 and 684A.2 (Doc. 180) is **denied**.

**IT IS SO ORDERED** this 28th day of June, 2019.

_____
C.J. Williams
United States District Judge
Northern District of Iowa