# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

CRST EXPEDITED, INC,

      Plaintiff,

vs.

SWIFT TRANSPORTATION CO OF
ARIZONA, LLC,

      Defendant.

No. 17-CV-25-CJW-KEM

**MEMORANDUM OPINION
AND ORDER IN LIMINE**

_____

## TABLE OF CONTENTS

I.     PLAINTIFF'S MOTION IN LIMINE.................................................... 4

    A.     Defendant's Affirmative Defenses ................................................ 4

        1.     Invalidity Defenses ....................................................... 4

        2.     Voidability Defenses ...................................................... 5

        3.     Blacklisting Statutes and Antitrust Defenses ........................... 6

    B.     Other Lawsuits ................................................................... 7

    C.     Plaintiff Has Not Sued the Drivers at Issue for Breach of Contract ........ 9

    D.     Advice of Counsel .............................................................10

    E.     Settlement Discussions .........................................................12

    F.     Related Corporations ...........................................................13

G.     Witnesses Not Called to Testify ................................................13

H.     Hearsay of Declarants Not Appearing to Testify at Trial ...................14

I.     Items Not Subject of Discovery ...............................................17

J.     Expert Witnesses Not Disclosed in Discovery ...............................18

K.     Exhibits and Witnesses Not Disclosed in Discovery .........................19

II.    DEFENDANT'S MOTION IN LIMINE................................................20

A.     Defendant's Financial Information and "Profit Per Driver Per Day".....20

B.     Expert Testimony of David Souza .............................................24

C.     Drivers Defendant Hired While Still Employed by Plaintiff................29

D.     Drivers Defendant Reimbursed .................................................30

E.     Independent Contractor Agreements ...........................................32

F.     Punitive Damages ...............................................................33

III.   CONCLUSION ......................................................................35

This matter is before the Court on the parties' motions in limine. (Docs. 181, 182). Each party timely resisted the opposing party's motion (Docs. 185, 186), and each party filed a reply in support of its own motion (Docs. 197, 207). "A district court has wide discretion in admitting and excluding evidence . . .." *Bennett v. Hidden Valley Golf & Ski, Inc.*, 318 F.3d 868, 878 (8th Cir. 2003) (citations omitted). "The Federal Rules of Evidence 'favor admitting relevant evidence absent a specific reason to exclude it.'" *Doe v. Young*, 664 F.3d 727, 733 (8th Cir. 2011) (citations omitted). For the following reasons, plaintiff's motion in limine (Doc. 181) is **granted in part**, **denied in part**, and **held in abeyance in part**. Defendant's motion in limine (Doc. 182) is **granted in part**, **denied in part**, and **held in abeyance in part**.

This case involves two competing trucking companies that employ individuals as drivers. *CRST Expedited, Inc. v. Swift Transp. Co. of Ariz., LLC*, No. 17-cv-25-CJW-KEM, 2019 WL 2358407, at *1 (N.D. Iowa June 4, 2019) ("*Swift*"). To work as a truck driver, an individual must possess a commercial driver's license ("CDL"). *Id.* (citations omitted). Plaintiff operates a driver training program that allows individuals to obtain their CDLs. *Id.* (citations omitted). Each driver who attends this training program and is hired by plaintiff signs a Driver Employment Contract ("Driver Contract" or "contract") that contains a restrictive term, during which time the driver-signatory is prohibited from driving for one of plaintiff's "competitors." *Id.* (footnote and citations omitted). Plaintiff brought suit alleging that defendant has actively recruited and continues to actively recruit plaintiff's drivers even though those drivers remain within the restrictive terms of their contracts. *Id.*, at *2 (citation omitted). This Court previously granted partial summary judgment. *See generally id.* As a result of the Court's summary judgment Order, only plaintiff's tortious interference with contract and unjust enrichment claims remain to be tried. *See id.*, at *30.

# I. PLAINTIFF'S MOTION IN LIMINE

## A. Defendant's Affirmative Defenses

Plaintiff seeks an order in limine barring defendant from introducing any evidence or making any reference to defendant's "failed" affirmative defenses because under Federal Rules of Evidence 401, 402, and 403, "[a]ny reference to evidence pertaining to these defenses is irrelevant to this lawsuit, has no tendency to make the existence of any fact that is of consequence in this case more or less probable, and would result in confusing the issues, misleading the jury, and unduly prejudicing [plaintiff] . . .." (Doc. 181-1, at 2). In its summary judgment Order, the Court found that certain affirmative defenses failed as a matter of law, certain survived, and certain failed on the record before the Court at the summary judgment stage. *Swift*, 2019 WL 2358407, at *27-30.

### 1. Invalidity Defenses

Defendant's first affirmative defense asserts, in part, that plaintiff's driver contracts are void as a matter of law. (Doc. 51, at 13). Defendant's twenty-eighth affirmative defense argues that the contracts are not supported by consideration, and, thus, are invalid. (*Id.*, at 17). The Court has already determined that the contracts are valid as a matter of law and that defendant's first affirmative defense fails as a matter of law to the extent it asserts that the contracts are void. *Swift*, 2019 WL 2358407, at *28-29.

Defendant's twenty-eighth affirmative defense also fails as a matter of law because the Court has found that the contracts are supported by consideration and, thus, cannot be considered invalid for lack of consideration. *Id.* Because these affirmative defenses fail as a matter of law and all relevant questions of law have been resolved as to the issue of validity, reference to these defenses would be irrelevant under Federal Rule of Evidence 401 and inadmissible under Federal Rules of Evidence 402. There is also a danger that evidence or argument referencing such defenses could also mislead the jury

and confuse the issues, making the evidence inadmissible under Rule 403 as well. Thus, plaintiff's motion is **granted** to the extent plaintiff seeks to exclude reference to and evidence of defendant's first affirmative defense, to the extent it asserts an invalidity defense, and defendant's twenty-eighth affirmative defense.

### 2.    *Voidability Defenses*

Defendant's twenty-sixth and twenty-seventh affirmative defenses, as well as the first affirmative defense, in remaining part, allege conditions of the contracts that, if shown, would make the contracts voidable. The Court previously held that defendant's first, twenty-sixth, and twenty-seventh affirmative defenses, to the extent they assert voidability defenses, failed as a matter of law on the record before the Court at the summary judgment stage, and would only prove viable if defendant could show that one or more drivers attempted to avoid his contract on the basis set forth in the respective defenses. *Id.*, at *28-29. At the trial stage, defendant will have the opportunity to more fully develop the record to show that one or more drivers attempted to avoid his contract on the basis of the relevant affirmative defense. Evidence of and reference to these defenses is, thus, relevant to the issue of causation.

Additionally, the twenty-sixth affirmative defense asserts that "[p]laintiff breached its [driver contracts] by failing to honor such contracts with its drivers." (Doc. 51, at 17). To the extent plaintiff's alleged breaches may be the cause of the drivers leaving plaintiff's employ, defendant may argue that those breaches, not defendant's conduct, were the cause of the drivers subsequently breaching their contracts by leaving plaintiff's employ. This defense would address the impropriety prong of the tortious interference claim and could address whether it would be unjust for defendant to retain the benefits it realized by hiring drivers who allegedly quit working for plaintiff because of plaintiff's own contractual breaches.

The probative value of these defenses outweighs the danger of unfair prejudice, confusing the issues, or misleading the jury and, thus, are admissible under Federal Rule of Evidence 403. *McCrary-El v. Shaw*, 992 F.2d 809, 812 (8th Cir. 1993) ("The test of Rule 403 is whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice."). Plaintiff's motion in limine to exclude reference to or evidence of defendant's first, twenty-sixth, and twenty-seventh affirmative defenses is **denied**.

### 3. *Blacklisting Statutes and Antitrust Defenses*

Defendant's twenty-second and twenty-third affirmative defenses allege that plaintiff's requested relief would violate state blacklisting statutes, and the second defense could be read as implicating blacklisting and antitrust issues. (Doc. 51, at 16). The Court has already held that, "to the extent the second, twenty-second, and twenty-third affirmative defenses seek to show the invalidity of the contracts, the defenses fail as a matter of law." *Swift*, 2019 WL 2358407, at *29. Additionally, the Court found that although these affirmative defenses do not fail as a defense to plaintiff's prayer for injunctive relief, the Court has found injunctive relief inappropriate and, thus, the defenses are of no benefit to the extent they defend against injunctive relief. *Id.*

Plaintiff does not address the relevance the blacklisting and antitrust defenses may have on other issues. Defendant argues that these affirmative defenses are relevant to several of the factors for determining impropriety under plaintiff's tortious interference claim. (Doc. 185, at 3-7). The Court agrees and finds that these portions of the second, twenty-second, and twenty-third affirmative defenses are relevant in defending against the tortious interference claim. As with the voidability defenses, the probative value of these defenses outweighs the danger of unfair prejudice, confusing the issues, or misleading the jury and, thus, are not properly excluded under Federal Rule of Evidence 403. *McCrary-El*, 992 F.2d at 812. Plaintiff's motion in limine to exclude reference to

or evidence of defendant's second, twenty-second, and twenty-third affirmative defenses is **denied**.

### B.    *Other Lawsuits*

In its motion in limine, plaintiff argues that defendant "must not be permitted to reference [plaintiff's] lawsuits against TransAm Trucking, Inc., J.B. Hunt Transport, Inc.[,] or Knight Transportation, Inc., the status[,] or outcome of those lawsuits." (Doc. 181-1, at 4).  Plaintiff further argues that "[i]nformation relating to lawsuits, complaints, claims[,] or settlements other than the complaint at issue is not relevant to this lawsuit . . .." (*Id.*).  In its reply in support of its motion in limine, plaintiff makes more explicit that plaintiff's motion is not limited to the three cases identified in plaintiff's opening brief, but rather seeks exclusion of all evidence and reference to lawsuits other than this lawsuit. (*See* Doc. 197, at 6-7).  In light of plaintiff's more generalized argument in its opening brief regarding the irrelevance of information relating to lawsuits other than this one, the Court views the request to exclude evidence and reference to all other lawsuits, not just the lawsuits against TransAm, Hunt, and Knight, to have been properly raised in plaintiff's opening brief.  The Court will, therefore, address the broader issue of whether defendant should be able to reference or introduce evidence of any lawsuit other than the one currently before the Court.

Defendant argues that the existence of other lawsuits permits defendant to argue that the social interests at stake weigh against a finding of impropriety on the tortious interference with contract claim.  (Doc. 185, at 12-13).  Defendant further argues that "[f]ear of lawsuits similar to the ones in which [plaintiff] has been embroiled also goes to [defendant's] intent in changing its practice on accepting driver applications from any carrier." (*Id.*, at 13).  Defendant has not explained, however, why it is necessary to reference or introduce evidence of specific lawsuits involving plaintiff for defendant to argue that defendant could face liability for refusing to hire plaintiff's drivers.  That is,

defendant could introduce the possibility of adverse litigation without addressing plaintiff's involvement in similar litigation. The Court thus concludes that the existence of other lawsuits, complaints, claims, or settlements is irrelevant to this case and such evidence is, therefore, inadmissible. Plaintiff's motion is **granted** to the extent plaintiff seeks exclusion of any reference to or evidence of other lawsuits, complaints, claims, or settlements.

Plaintiff also moves in limine, more specifically, for the exclusion of evidence relating to the settlement and/or status of plaintiff's claims against Hunt, Knight, and TransAm in three cases that are companions to this case. *See CRST Expedited, Inc. v. TransAm*, 1:16-cv-00052-LTS-KEM; *CRST Expedited, Inc. v. Knight Transp., Inc.*, 1:17-cv-00024-CJW-KEM; *CRST Expedited, Inc. v. JB Hunt Transp., Inc.*, 1:17-cv-00026-CJW-KEM. Defendant seeks to introduce evidence of these settlements to show that plaintiff's "interests in its driver contracts cannot actually be that important" and to show that it would not be unjust to permit defendant to retain any benefit it may have gained from hiring plaintiff's drivers. (Doc. 185, at 13-14).

Rule 408 prohibits admission of evidence of compromise with third parties when admission is sought to prove or disprove the validity of a disputed claim. FED. R. EVID. 408(a) & advisory committee's note to proposed rule. Defendant seeks admission of evidence of the three companion cases to show that plaintiff does not have an important interest in its driver contracts and to show that plaintiff's unjust enrichment claim must fail. Thus, defendant seeks introduction of this evidence to show, directly, that plaintiff's claims are invalid. This is an impermissible purpose, and plaintiff's motion is **granted** to the extent plaintiff seeks exclusion of the status, outcome, or settlement of the three companion cases.

## C. *Plaintiff Has Not Sued the Drivers at Issue for Breach of Contract*

Plaintiff seeks an order in limine barring defendant from introducing evidence or making any reference to whether plaintiff sued any of the drivers at issue for breach of contract. (Doc. 181-1, at 2-3). Plaintiff argues that under Federal Rules of Evidence 401, 402, and 403, this issue is "irrelevant to this lawsuit, has no tendency to make the existence of any fact that is of consequence in this case more or less probable, and would result in confusing the issues, misleading the jury, and unduly prejudicing [plaintiff] . . . ." (*Id.*). Specifically, plaintiff asserts that "the instant lawsuit is limited to [plaintiff's] claims against [defendant] and does not involve claims for breach of contract against the drivers poached by [defendant]." (*Id.*, at 2).

Plaintiff's ability to sue the drivers at issue for breach of contract is relevant to the availability of an adequate remedy at law, the absence of which is a precondition to seeking recovery in equity.[1] *Moehn v. Hedrick*, 199 N.W. 252, 253 (Iowa 1924) ("It is elementary that a litigant cannot resort to equity when a plain, speedy, and adequate remedy at law exists." (citation omitted)). *See also Iowa, Dept. of Human Servs. ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142, 154 n.2 (Iowa 2001) ("The adequacy of a legal remedy is a general limitation on the exercise of equity jurisdiction and is properly considered when restitution is sought in equity . . .." (citation omitted)). Although the ability to sue the drivers may be irrelevant to the tortious interference claim, plaintiff's ability to recover breach of contract damages against the drivers is directly relevant to the unjust enrichment claim because defendant can defend against that claim by showing that plaintiff is able to sue the drivers, and that any resulting damages would be an adequate remedy.

---

[1] Plaintiff's claim for unjust enrichment sounds in equity.

Nevertheless, whether plaintiff has sued to recover from any drivers, or the outcome of any such lawsuits, is not relevant, and the probative value of whether plaintiff has sued any drivers is substantially outweighed by the danger of unfair prejudice and confusing the issues. A party's decision whether to file suit in any given case is influenced by a wide variety of factors, including costs of litigation, that have nothing to do with whether the basis for the suit would be meritorious. Were defendant permitted to introduce evidence that plaintiff has not sued the drivers for breach of contract, it could leave jurors with the mistaken impression that plaintiff believes the noncompete contracts are unimportant or lack merit, when the decision not to sue the drivers could have turned on many other factors.

Thus, plaintiff's ability to sue the drivers to seek compensation for breach of contract is relevant and admissible for the purpose of showing that the suits could provide plaintiff with an adequate remedy such that plaintiff should not prevail on the unjust enrichment claim. On the other hand, whether plaintiff has, in fact, sued the drivers and the results of any such lawsuits is not relevant and is inadmissible. Plaintiff's motion to exclude evidence of or reference to whether plaintiff has sued any of the drivers is **granted in part and denied in part**.

### D. *Advice of Counsel*

Plaintiff seeks to preclude defendant from relying on advice of counsel as a defense at trial. (Doc. 181-1, at 3-4). Defendant changed its hiring practices in August 2016 to begin accepting driver applications from drivers who previously worked for any carrier, instead of accepting driver applications only from drivers who previously worked for certain carriers. (*Id.*, at 3). This change has been a central theme throughout this case, and it seems that plaintiff intends to address this change at trial. Plaintiff anticipates that defendant may try to defend against any wrongfulness inherent in this change by asserting that defendant made the change in reliance upon advice of counsel. (*Id.*). Plaintiff argues

that defendant should not be permitted to rely upon advice of counsel as a defense because defendant did not plead advice of counsel as an affirmative defense. (*Id.*). Plaintiff asserts that if defendant is permitted to rely on this defense at trial, plaintiff will be significantly prejudiced "because [plaintiff] has not had the opportunity to fully and adequately conduct discovery into said defense." (*Id.*).

The Court finds that defendant should be able argue, as a defense, that it consulted its attorneys before making the change in hiring practices. Defendant should not, however, be able to present evidence or testimony regarding the specific advice counsel provided, or any other information in connection with solicitation or receipt of that advice that was withheld during discovery on the basis of attorney-client or work product privilege. Defendant's alleged reliance on its counsel was made known during discovery. The summary judgment record includes an email dated August 23, 2016, from Otto Welch to Swift personnel stating: "Team, based on a conversation with general counsel this morning we are now clear to hire from all carriers as long as the driver meets our hiring criteria." (Doc. 185-2, at 2). At the bottom right corner of the document, a sticker has been affixed that indicates the email was originally Exhibit Number 17 in a matter involving "Welch" on June 26, 2018. On that date, Mr. Welch gave deposition testimony, in which exhibit 17 was an "August 23, 2016 Email From Otto Welch." (*See* Doc. 140-2, at 83 (index of exhibits introduced during Mr. Welch's deposition)).

The Court finds it likely that the August 23, 2016 email introduced during Mr. Welch's deposition is the same email that indicates that defendant's general counsel "cleared" defendant to begin hiring drivers from all carriers. If so, then plaintiff knew on June 26, 2018, at the latest, that defendant purportedly relied on counsel in changing its hiring practices and, presumably, intended to rely on that advice in defending against this suit. Because plaintiff had this information and should have realized the significance of the email more than one year before trial, the Court finds that plaintiff had ample

opportunity to investigate this potential defense and craft its arguments in opposition. Thus, at trial, defendant is permitted to introduce evidence that it consulted its attorneys and got their approval before making the hiring changes.

When, during discovery, plaintiff attempted to learn what it was that counsel said to defendant about the change in hiring practices, however, defendant asserted the attorney-client privilege. (*See, e.g.*, Doc. 185-1, at 10 (excerpt from Mr. Welch's deposition in which defense counsel requested that Mr. Welch not "divulge communications [Mr. Welch] had with [defendant's general counsel], or any other counsel . . . because those [communications] are privileged")). Defendant is not, therefore, permitted to rely on any underlying information or advice from counsel that defendant withheld during discovery on the basis of attorney-client or work product privilege.

Defendant contends that plaintiff had the opportunity to elicit from certain deposition witnesses additional information regarding the change in hiring practices, but that plaintiff declined to do so. (Doc. 185, at 11-12). The record on this point is not developed fully enough to permit the Court to rule on whether plaintiff had the opportunity to elicit additional information, nor does the Court know what that information may be and its potential relevance to defendant in defending against the remaining claims. The Court, thus, reserves ruling on plaintiff's motion in limine to the extent defendant contends plaintiff could have elicited additional information. Should this information become relevant at trial, the parties may address the issue then. Plaintiff's motion is **granted in part**, **denied in part**, and **held in abeyance in part**, consistent with the above rationale.

### E.    *Settlement Discussions*

Plaintiff seeks an order in limine to exclude "[a]ny reference to settlement discussions or negotiations" in this case "to show liability or damages." (Doc. 181-1, at

5).  "[Defendant] takes no issue with [this request] so long as the parties' obligations in this regard are mutual."  (Doc. 185, at 3).  Accordingly, plaintiff's motion is **granted**, and neither party is permitted to reference settlement discussions or negotiations in this case to show liability or damages.

### F.  Related Corporations

Plaintiff moves to exclude any reference to its related corporations.  (Doc. 181-1, at 5).  Defendant does not resist this motion, with four exceptions, to which plaintiff agrees, and under condition that the exclusion be mutually applicable to both parties. (Doc. 185, at 14-15; Doc. 197, at 7).  Those exceptions are to permit reference to 1) plaintiff's relationship with North American Driver Training Academy LLC, 2) David Souza's position as chief financial officer ("CFO") for CRST International, Inc., 3) entities cited on plaintiff's financial documents that Mr. Souza used in calculating plaintiff's damages, and 4) plaintiff's human resources department that is shared with CRST International, Inc.  (Doc. 185, at 14-15).  Plaintiff's motion is **denied** to the extent plaintiff moves for the exclusion of the references enumerated herein and **granted** as to all other references to plaintiff's related corporations.  Similarly, plaintiff is not permitted to reference defendant's related corporations.

### G.  Witnesses Not Called to Testify

Plaintiff moves to exclude any evidence or argument that plaintiff did not call certain witnesses to testify when those witnesses were equally available to defendant. (Doc. 181-1, at 5).  In support of its motion, plaintiff argues that whether it called certain witnesses is irrelevant to its showing that defendant interfered with plaintiff's driver contracts and "would result in confusing the issues, misleading the jury, and unduly prejudicing [plaintiff]."  (*Id.*).  Plaintiff adds in its reply that a reference to plaintiff's failure to call certain witnesses would suggest that the testimony of these witnesses would be adverse to plaintiff and is inadmissible hearsay.  (Doc. 197, at 8).  Defendant argues

that plaintiff's failure to call certain witnesses—specifically, former drivers—is relevant to the "improper conduct" and causation elements of tortious interference with contract and that it would be helpful for the jury to be able to compare facts elicited during trial with those facts that are noticeably absent from evidence. (Doc. 185, at 16).

"Where witnesses are equally available to either of the parties, no adverse inferences may be drawn from the failure of one party to call them, but where witnesses are employees of one of the parties, they are not equally available to the other party, and failure to call them, where it appears that they may have knowledge of some material fact, warrants the inference that had they been called their testimony would have been adverse to the party failing to call [them]." *Ill. Cent. R.R. Co. v. Staples*, 272 F.2d 829, 834 (8th Cir. 1959). Witnesses who are beyond the subpoena power of the Court are considered "unavailable" and, thus, do not fall within the purview of the "missing witness" rule. FED. R. EVID. 804(a)(5). *Hale Cty. A & M Transp., LLC v. City of Kansas City, Mo.*, No. 4:12-CV-00265-DGK, 2014 WL 545779, at *6 (W.D. Mo. Feb. 11, 2014).

To the extent witnesses are equally available to defendant, no negative inference may be made regarding plaintiff's failure to call such witnesses. Plaintiff's motion is **granted**, and both parties are prohibited from commenting on the failure of the other party to call witnesses equally available to either side. To the extent witnesses are available only to one party who did not call that witness, the opposing party may fairly comment on the failure, so to that extent, plaintiff's motion is **denied**.

### H.   *Hearsay of Declarants Not Appearing to Testify at Trial*

Plaintiff moves to exclude the introduction of declarations and affidavits made by persons not present to testify at trial because the "statements are inadmissible hearsay" and because "[t]he introduction of such statements would be incomplete, confusing and unfairly prejudicial to [plaintiff]." (Doc. 181-1, at 6). The only subject statements that

have been identified were made by Swift recruiting employee Amy Gruver, and five former CRST drivers. (*See* Doc. 185, at 17-19). The reasons defendant proffers for the unavailability of the five drivers are not encompassed by Rule 804. (Doc. 185, at 17). Defendant does not address Ms. Gruver's testimony or whether she will be available at trial. Based on the record before the Court, no exception applies to Ms. Gruver's testimony such that her hearsay declaration is admissible. *See* FED. R. EVID. 804(a). Thus, plaintiff's motion as to Ms. Gruver's hearsay testimony, should plaintiff move to offer it in the absence of the witness herself, is **granted**.

Declarations made by former CRST drivers regarding the drivers' reasons for leaving plaintiff or how the drivers came to be employed by defendant are relevant under Rule 401 because they could make more or less probable whether defendant's acts of hiring those drivers actually caused the drivers to breach their contracts. The reason why a driver breached his contract is material to deciding plaintiff's tortious interference with contract claim. *See Swift*, 2019 WL 2358407, at *19. The relevant testimony, however, is only admissible if it is not hearsay or if it falls into a hearsay exception. *See* FED. R. EVID. 803, 804, & 807.

The driver declarations defendant intends to offer are hearsay because they are out-of-court statements offered for the truth of the matter asserted; specifically, the truth of the drivers' reasons for leaving and/or how the drivers came to be employed by defendant. FED. R. EVID. 801. Defendant argues that these hearsay statements fall into the residual exception of Rule 807 and, thus, should be admissible. (Doc. 185, at 17-19). Defendant has not, however, provided the Court with information surrounding the circumstances under which the declarations were made.

"Rule 807 is applicable only in exceptional circumstances." *Estate of Thompson v. Kawasaki Heavy Indus., Ltd.*, 933 F. Supp. 2d 1111, 1135 (N.D. Iowa 2013) (citation omitted). "Accordingly, the party offering the evidence bears a heavy burden of

presenting the trial court with sufficient indicia of trustworthiness to trigger application of [Rule 807]." *United States v. Trujillo*, 136 F.3d 1388, 1396 (10th Cir. 1998) (citations omitted). Rule 807 includes four elements that must be satisfied in order to qualify for this exception to the exclusion of hearsay. FED. R. EVID. 807(a). Although defendant has satisfied the second element, which addresses materiality, defendant has not satisfied the remaining three elements.

Element one requires that the hearsay statements have "equivalent circumstantial guarantees of trustworthiness" to the enumerated exceptions. FED. R. EVID. 807(a)(1). "[A] Rule 807 analysis must consider whether the declarant's original statements now being offered in court have guarantees of trustworthiness given the circumstances under which they were first made." *Rivers v. United States*, 777 F.3d 1306, 1313 (11th Cir. 2015). A sworn affidavit made under undisclosed circumstances carries little, if any, guarantee of trustworthiness. Defendant has failed to make any showing that the out-of-court driver declarations sufficiently guarantee trustworthiness and, thus, defendant fails to satisfy the heavy burden of Rule 807.[2]

The declarations of the drivers who will not testify also fail to satisfy the third element, which requires the statement be "more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts." FED. R. EVID. 807(a)(3). Defendant does not explain whether it made reasonable efforts to secure the evidence through a means that would allow plaintiff the opportunity to conduct cross-examination, such as through a deposition. Nor has defendant made any showing why such efforts, if not made, could not be made or would have been

---

[2] The 2019 amendment to Rule 807, effective December 1, 2019, may change the first element by replacing "the statement has equivalent circumstantial guarantees of trustworthiness" with "the statement is supported by sufficient guarantees of trustworthiness." FED. R. EVID. 807 advisory committee's note to 2019 amendment. The Court's holding as to this element would be unaffected by the change.

unsuccessful. In our legal system, cross-examination is regarded as a key tool for obtaining trust and "has been the principal justification for the Anglo-American tradition of excluding hearsay statements." *United States v. Salerno*, 505 U.S. 317, 328 n.4 (1992) (citations omitted). Defendant has failed to make a sufficient showing to compel the Court to deprive plaintiff of the value that cross-examination affords. Thus, the Court finds that defendant has not satisfied the third element.

For the same reasons already enumerated, defendant fails to satisfy element four, which requires that "admitting [the hearsay statement] will best serve the purposes of these rules and the interests of justice." FED. R. EVID. 807(a)(4). The admission of declarations that lack any indicia of reliability surrounding their making would not serve the interests of justice. The drivers' hearsay declarations fail under the heavy burden required by Rule 807 and, thus, plaintiff's motion to exclude these statements is **granted**. The Court reserves ruling on any potential "statements or reports made or drafted by any person not present to testify or not subject to cross-examination on the contents of such statement or report" that have not been directly addressed by the parties, and by the Court in this Order.

### I. *Items Not Subject of Discovery*

Plaintiff seeks an order in limine excluding "[a]ny demands or requests before the jury for items contained in [plaintiff's files] which have not been the subject of discovery in this case." (Doc. 181-1, at 6). Specifically, plaintiff requests that defense counsel "be instructed not to make any such demands or requests for items including, but not limited to, statements, corporate records, and other documents." (*Id.*). Defendant does not resist plaintiff's motion but requests that plaintiff's counsel receive the same instructions. Plaintiff's motion is **granted**. Neither party is permitted to make any demands or requests before the jury for items that have not been the subject of discovery

in this case, including, but not limited to, statements, corporate records, and other documents.

###### J. Expert Witnesses Not Disclosed in Discovery

Plaintiff seeks exclusion of "[o]pinions, statements, or testimony by any expert witness for [defendant] other than those disclosed in discovery." (Doc. 181-1, at 7). In its resistance, defendant addresses plaintiff's motion by arguing that the testimony of two witnesses, specifically, should be admissible. (Doc. 185, at 20-21). Plaintiff's reply explains that these two witnesses are not encompassed by plaintiff's motion. (Doc. 197, at 10). Rather, plaintiff seeks exclusion of expert witnesses who were not properly disclosed in accordance with Federal Rule of Civil Procedure 26. (*Id.*). Federal Rule of Civil Procedure 37(c) provides limitations on a party's ability to rely on testimony from a witness when that witness was not timely disclosed in accordance with Rule 26(a). Rule 37(c) does not, however, wholly ban reliance on undisclosed witnesses and, instead, instructs the Court that exclusion of an untimely disclosed witness is an improper sanction if the failure to timely disclose the witness was substantially justified or is harmless. Thus, there may be situations in which the untimely disclosure of a witness may not result in exclusion of that witness's testimony at trial.

Plaintiff has not identified, with specificity, which witnesses plaintiff seeks to exclude for having been untimely disclosed. The request to exclude these witnesses, then, is made in the abstract. With such minimal information, the Court cannot determine whether exclusion of these hypothetical witnesses would be proper. Plaintiff's motion in limine is **denied**. Should defendant seek to rely on undisclosed witness testimony at trial, plaintiff may renew its motion specifically with respect to that witness or witnesses.

In its resistance, defendant brings its own motion and argues that "[plaintiff] should be precluded from offering any opinions, statements[,] and testimony to rebut the testimony of [defendant's] expert witness due to [plaintiff's] failure to provide any

rebuttal opinions, statements[,] or testimony during the course of discovery." (Doc. 185, at 21). Local Rule 7(e) provides that "[a] resistance to a motion may not include a separate motion or a cross-motion by the responding party. A separate motion or cross-motion must be filed separately as a new motion." Thus, defendant's motion to exclude plaintiff's rebuttal witnesses, which was made in its resistance to plaintiff's motion in limine, was brought improperly. To the extent defendant has attempted to move for the exclusion of plaintiff's rebuttal "opinions, statements, and testimony," that motion is **denied**. (Doc. 185, at 21).

### K. *Exhibits and Witnesses Not Disclosed in Discovery*

Plaintiff seeks the exclusion of "[a]ny exhibit or witness not previously disclosed to [plaintiff] through [defendant's] discovery responses in this matter." (Doc. 181-1, at 7). Defendant does not resist plaintiff's motion but requests that the restriction be mutually applicable, and defendant contends that the restriction should not apply for rebuttal purposes. (Doc. 185, at 21-22). Plaintiff agrees to defendant's proposition that the restriction not apply for rebuttal purposes, other than "to the extent [defendant's] resistance seeks to permit testimony from former Swift general counsel, Mick Dragash." (Doc. 197, at 11). To the extent defendant would seek to introduce Mr. Dragash's testimony, plaintiff reasserts its arguments regarding defendant's reliance on the advice of counsel. (*Id.*). Based on the parties' agreement, plaintiff's motion is **granted in part and denied in part**. The parties are not permitted to introduce any exhibit or witness not previously disclosed in discovery, other than for rebuttal purposes, and defendant's reliance on the advice of counsel defense is subject to the same limitations imposed by this Order in ruling on plaintiff's motion in limine regarding the advice of counsel defense.

## II.    DEFENDANT'S MOTION IN LIMINE

### A.    Defendant's Financial Information and "Profit Per Driver Per Day"

Defendant seeks to exclude evidence of its financial statements, income statements, operating revenues, operating expenses, and related financial reports (collectively "financial information"), as well as plaintiff's calculation of defendant's "increased profit" and "profit per driver per day." (Doc. 182, at 3-8). In support, defendant argues that this information and plaintiff's purported calculations of defendant's profits are irrelevant to the remaining claims and, thus, inadmissible under Rules 401 and 402. (*Id.*). As to the subject financial information, defendant further argues that "evidence of [defendant's] financial wealth" would unduly prejudice defendant and must be excluded under Rule 403 because admission of this evidence "would only lead to a comparison of the relative worth of the parties." (Doc. 182, at 5). Finally, defendant argues that Rule 403 prohibits admission of evidence pertaining to defendant's purported "profit per driver per day" because, in short, defendant asserts that plaintiff's calculations are baseless. (*Id.*, at 5-8).

Defendant's arguments under Rules 401 and 402 are premised on the idea that plaintiff's damages in this case cannot be based on defendant's profits. In its summary judgment Order, the Court explained that by hiring drivers who already possess their CDLs, defendant "presumably" experiences a greater profit margin than defendant would have experienced had defendant trained the drivers itself. *Swift*, 2019 WL 2358407, at *24. The Court further reasoned that "[t]he difference between defendant's actual profit margin for each driver at issue and the lesser profit margin defendant would have realized had it been required to train the drivers at issue are profits that defendant indirectly obtained . . . ." *Id.* (citation omitted). This finding led the Court to conclude that these profits, if established at trial, could show that defendant was enriched by receipt of a benefit and that the enrichment was at plaintiff's expense, which are the first two elements

of an unjust enrichment claim. *Id.*, at *23-24.

The Court also noted, however, that "[t]he measure of defendant's benefit is not necessarily the same as the measure of damages plaintiff may recover." *Id.*, at *24 n.18. The Court determined that the proper measure of damages on the unjust enrichment claim is "just compensation" for the benefits defendant received. *Id.* at *25. The Court did not conclusively determine what "just compensation" would be in this case, but the Court did find that "'just compensation' is not disgorgement of defendant's profits." *Id.*, at *25. Thus, although defendant's profits is not the proper measure of "just compensation," the fact of defendant's increased profit margin—or lack thereof—is relevant to plaintiff's *prima facie* case.

The parties have not informed the Court as to the specific purpose for which each piece of financial information would be offered, and the Court, therefore, is unable to conclude whether any piece of evidence would be irrelevant to showing whether defendant was enriched at plaintiff's expense. To the extent defendant moves to exclude specific financial information as irrelevant, defendant's motion is **held in abeyance**. The Court will rule on the issue at trial, should plaintiff seek to introduce the subject financial information, and should defendant renew its objection at that time.

Similarly, although plaintiff's purported calculations of defendant's "profit per driver per day" are not a measure of damages available to plaintiff under the unjust enrichment claim, the fact of increased profitability is relevant to plaintiff's *prima facie* case. Thus, defendant's motion is **denied** to the extent defendant seeks to exclude plaintiff's calculation of defendant's "profit per driver per day" as irrelevant. Although relevant, the evidence "may be excluded if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403. Defendant argues that plaintiff's calculation of

defendant's "profit per driver per day" should be excluded because "the calculations have no basis in fact and would only mislead the jury." (Doc. 182, at 6). Plaintiff does not directly respond to defendant's argument that the evidence would be misleading other than noting in a footnote that "[defendant] bears the 'residual risk of uncertainty' for [plaintiff's] calculation of [defendant's] per-driver-per-day profits." (Doc. 186, at 15 (citation omitted)).

In its briefing, plaintiff does not explain how it determined that defendant's "profit per driver per day" is $195.44. (*See* Doc. 182-2, at 11-15). Plaintiff's interrogatory responses show that plaintiff reached this figure by subtracting defendant's variable operational expenses from defendant's total operating revenue. (*Id.*). The resulting number was then divided by the "average number of Swift trucks" to reach the purported "profit per solo truck per day." (*Id.*). Plaintiff then divided that number by 365 (the number of days in one year) to reach defendant's "profit per solo truck per day." (*Id.*). As each solo truck is driven by only one driver, as opposed to two drivers who drive as a team, plaintiff asserts that defendant's "profit per driver per day" is the same as defendant's "profit per solo truck per day." (*Id.*). Plaintiff asserts that it obtained the numbers used in these calculations from defendant's 2016 annual report to shareholders that defendant submitted to the United States Securities and Exchange Commission and from "information provided by [defendant's] Chief Financial Officer . . .." (Doc. 182-2, at 12, 14).

There is little detail provided in plaintiff's calculations, and the precise information plaintiff relied upon is not clear from the calculations. This, however, does not necessarily mean that the evidence will mislead the jury, nor does it mean that the danger of misleading the jury would substantially outweigh any probative value the evidence may hold. To the extent defendant finds plaintiff's calculations deficient, those deficiencies are more appropriately addressed through cross examination or rebuttal evidence than

through exclusion of plaintiff's calculation of defendant's "profit per driver per day." As the Supreme Court has explained:

> Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence. Additionally, in the event the trial court concludes that the scintilla of evidence presented supporting a position is insufficient to allow a reasonable juror to conclude that the position more likely than not is true, the court remains free to direct a judgment, FED. R. CIV. P. 50(a), and likewise to grant summary judgment, FED. R. CIV. P. 56. These conventional devices, rather than wholesale exclusion under an uncompromising "general acceptance" test, are the appropriate safeguards where the basis of scientific testimony meets the standards of Rule 702.

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993) (citations omitted). Defendant's motion is **denied** to the extent it seeks exclusion of this calculation under Rule 403.

Defendant also argues that "evidence of [defendant's] financial wealth" must be excluded as unfairly prejudicial. (Doc. 182, at 4). In support, defendant cites authority standing for the proposition that evidence of the parties' *relative* worth is inadmissible. In the cited case, *Bruhn Farms Joint Venture v. Fireman's Fund Insurance Co.*, this Court noted that a defendant's wealth is relevant in determining whether to award punitive damages, but "the *relative* worth of the parties is irrelevant to any issue." No. 13-CV-4106-CJW, 2017 WL 752282, at *6 (N.D. Iowa Feb. 27, 2017) (emphasis in original). Further, in *Bruhn Farms*, this Court was addressing the defendant's motion to exclude evidence of the *plaintiff's* wealth. *Id.* The Court, thus, did not prohibit introduction of evidence of the *defendant's* wealth, which would be relevant to punitive damages. *Id.* To the extent defendant seeks to exclude "a comparison of the relative worth of the parties," defendant's motion is **granted**. (Doc. 182, at 5). The relative worth of the parties is, as it was in *Bruhn Farms*, "irrelevant to any issue." 2017 WL 752282, at *6.

To the extent defendant seeks to exclude evidence of its own financial condition, including for purposes of assessing whether to award punitive damages, defendant's motion is **denied**.

### B.    *Expert Testimony of David Souza*

Defendant contends that "[p]laintiff's expert testimony of David Souza, [p]laintiff's Chief Financial Officer, must be excluded because it fails to meet any of the elements of [Federal Rule of Evidence] 702." (Doc. 182, at 8-11). Defendant also contends that Mr. Souza's testimony should be excluded under Rule 403. (*Id.*, at 13-14). In support of its *Daubert* argument, defendant asserts that Mr. Souza's "damages calculation is based on an unreliable methodology employing 'averages,'" fails to accurately account for each subject driver's anticipated tenure with plaintiff, and fails to accurately account for the differing profit margins realized with respect to each driver. (*Id.*, at 8-13). Finally, defendant argues that Mr. Souza is not qualified to offer expert testimony. (*Id.*, at 13).

The testimony defendant seeks to exclude as to Mr. Souza addresses *plaintiff's* "profit per driver per day." From the motions in limine, it does not appear that Mr. Souza's testimony will address *defendant's* "profit per driver per day," and, if it will, defendant has not moved to exclude that testimony. This distinction is important because although defendant's "profit per driver per day" would be probative on plaintiff's impermissible disgorgement of profits damages theory, *plaintiff's* "profit per driver per day" would not be probative on this theory.

Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Under the Federal Rules of Evidence, "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589.

"[A]n expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." *Id.* at 592 (citations omitted). "Presumably, this relaxation of the usual requirement of firsthand knowledge . . . is premised on an assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline." *Id.* In determining whether expert testimony is admissible, the Court is to assess "whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592-93.

Defendant argues, first, that Mr. Souza's "profit per driver per day" calculation is "purely speculative and unreliable" because it relies on the law of averages, as opposed to a specific calculation for each driver at issue. (Doc. 182, at 9-11). Defendant urges that because each driver may generate a different degree of profit for plaintiff based on a number of variables, it is improper for Mr. Souza to offer expert opinions that are premised on the average profit each driver generates per day. (*Id.*, at 10). "The plaintiff who seeks damages for profits prevented is required to introduce evidence that will enable those profits to be calculated with reasonable certainty." *King Features Syndicate, Dept. of Hearst Corp. Int'l News Serv. Div. v. Courrier*, 43 N.W.2d 718, 726 (Iowa 1950).

"Showing average past earnings has been recognized as a valid method [of proving damages] in some circumstances." *ConAgra, Inc. v. Inland River Towing Co.*, 252 F.3d 979, 985 (2001). "No more is required of a district court than to adopt a methodology that permits it to arrive at a damage amount with reasonable certainty." *Id.* (citations

and internal quotation marks omitted). Similarly, under Iowa law, "[c]ourts have recognized a distinction between proof of the fact that damages have been sustained and proof of the amount of those damages." *Orkin Exterminating Co., Inc. (Arwell Div.) v. Burnett*, 160 N.W.2d 427, 430 (Iowa 1968) ("*Orkin*"). "If it is speculative and uncertain whether damages have been sustained, recovery is denied. If the uncertainty lies only in the amount of damages, recovery may be had if there is proof of a reasonable basis from which the amount can be inferred or approximated." *Id.* (citations omitted).

Defendant does not presently challenge the merits of whether plaintiff sustained damages. Defendant argues only that if plaintiff did sustain damages, Mr. Souza's calculation of an average "profit per driver per day" is an improper method of measuring those damages and Mr. Souza's testimony must, therefore, be excluded. The Court disagrees that Mr. Souza's testimony must be excluded on this basis. The nature of plaintiff's alleged harm makes it difficult, if not impossible, to calculate, with precision, the exact degree of damages plaintiff may have sustained. Doing so would require plaintiff to predict the exact length of time each driver would choose to continue working for plaintiff. Because the drivers themselves could choose to stop working for plaintiff at any time—and did choose to do so in many cases—such a prediction would be impossible to make with absolute certainty.

Absolute certainty is not, however, the benchmark for measuring damages. Rather, an injured party must only show damages to a *reasonable* degree of certainty. *ConAgra*, 252 F.3d at 983. Moreover, defendant does not challenge Mr. Souza's damages calculation on the basis that no damages were incurred, which means that plaintiff need only prove a reasonable basis from which the amount of plaintiff's damages, if any, can be inferred or approximated. *Orkin*, 160 N.W.2d at 430. Here, an average "profit per driver per day" calculation provides such a reasonable basis. Although the calculation likely does not provide a perfect measure of damages, it is based on plaintiff's

historical driver retention and profit data. (*See* Doc. 186, at 5-6, 8 (explaining methodology)).

Extrapolating from the historical data in this case would provide a reasonable basis from which the factfinder can infer or approximate damages because the damages figures would be based on actual data and would not be the product of speculation. Although employing averages could be an imperfect methodology, defendant will have the opportunity to show this through vigorous cross examination and presentation of its own damages expert and/or through presentation of its own theory of damages. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." (citation omitted)).

The Court finds that Mr. Souza's "profit per driver per day" is sufficiently reliable to be admissible under Rule 702, and it will be for the factfinder to determine how much weight to afford this theory. Similarly, to the extent defendant argues that Mr. Souza's testimony should be excluded because Mr. Souza "failed to consider alternative methodologies or failed to consult any professional literature to ascertain general acceptance" (Doc. 182, at 13), those challenges go to the factual bases of Mr. Souza's opinions, not the reliability of those opinions. *See Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*, 401 F.3d 901, 916 (8th Cir. 2005). Thus, it will be for the factfinder to afford appropriate weight to Mr. Souza's opinions based on these facts. *Id.*

Defendant also argues that "[d]ue to the unfounded and unreliable nature of Mr. Souza's testimony and [p]laintiff's damages calculation, and the ease in which they could mislead the jury," the Court should exclude Mr. Souza's testimony under Rule 403. (Doc. 182, at 13-14). The Court has rejected defendant's argument that Mr. Souza's opinions are "unfounded and unreliable," and has determined that defendant's arguments address the factual bases of Mr. Souza's opinions rather than the reliability of those

opinions. Defendant has offered no other theory in support of its argument that Mr. Souza's opinions and testimony should be excluded under Rule 403 and defendant's motion as to Mr. Souza is therefore **denied** to the extent it is brought under Rule 403.

Defendant next contends that Mr. Souza is not "qualified to offer the expert testimony for which he opines." (Doc. 182, at 13). Based on the remainder of the parties' arguments surrounding Mr. Souza's opinions, the Court assumes defendant to be arguing that Mr. Souza is not qualified to offer expert testimony on the issue of damages. Defendant's arguments as to Mr. Souza's qualifications are as follows:

> [Mr. Souza] has never been designated as an expert witness, has never been retained as an expert witness, has never been deposed as an expert, has never testified in court as an expert, has never been deposed before on the issue of damages calculations concerning a tortious interference or unjust enrichment claim, has never even prepared a damages calculation aside from this one in any other tortious interference or unjust enrichment case, has never authored an expert report, and has never worked on an expert report at the direction of another expert.

(Doc. 182, at 13 (citations omitted)). Without directly responding to defendant's argument, plaintiff contends that Mr. Souza's damages testimony is permitted under Rule 701 because Mr. Souza "is familiar with and refers to [plaintiff's] financial reports on a regular basis as part of his responsibilities overseeing profit and loss as the chief financial officer of [plaintiff]." (Doc. 186, at 9-10).

The Court agrees that Mr. Souza's damages testimony is admissible under Rule 701. The 2000 Advisory Committee's Note to Rule 701 is helpful:

> [M]ost courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert. . . . Such opinion testimony is admitted not because of experience, training, or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business.

Consistent with this Note, the Eighth Circuit Court of Appeals "will not reverse a district court for admitting testimony by a business owner or officer regarding lost profits when his experience in the business provided the foundation for all the specifics to which he testified." *Hot Stuff Foods, LLC v. Hous. Cas. Co.*, 771 F.3d 1071, 1079 (8th Cir. 2014) (citations and internal quotation marks omitted).

Mr. Souza's testimony, if offered as lay opinion testimony on the issue of damages, will be permitted. Plaintiff asserts that Mr. Souza's calculations are based on plaintiff's actual financial data from 2016 and plaintiff's actual driver records. (Doc. 186, at 12). Plaintiff further argues that Mr. Souza's damages testimony should be permitted because Mr. Souza's calculations "rel[y] on the application of basic arithmetic" to financial records that Mr. Souza has personal knowledge of, as well as plaintiff's business records. (*Id.*, at 9-10). The Court agrees that should plaintiff be able to lay a sufficient foundation under Rule 701, Mr. Souza's testimony will be admissible. Thus, to the extent defendant's motion as to Mr. Souza is brought under Rule 701, the motion is **denied**. In light of this determination, the Court **defers** ruling on whether Mr. Souza is qualified to offer expert testimony and, specifically, defers making a finding as to whether Mr. Souza was properly disclosed as an expert witness such that he may offer expert testimony at trial under Rule 702.

### C. *Drivers Defendant Hired While Still Employed by Plaintiff*

Defendant asserts that it hired nine drivers while they were still employed by plaintiff and, consequently, defendant's act of hiring the drivers could constitute only "interference with their at-will employment, not their non-compete" agreements. (Doc. 182, at 14-16). In support, defendant turns to the Court's determination that interference with at-will employment is properly analyzed as interference with a prospective economic advantage. (*Id.*, at 14-15). Because the Court granted summary judgment in defendant's

favor on plaintiff's tortious interference with prospective economic advantage claim, defendant reasons that evidence of the nine drivers who were still employed by plaintiff when defendant hired them is irrelevant to any remaining issue because this evidence would be probative only on the prospective economic advantage claim. (*Id.*, at 15-16).

Defendant misreads the Court's summary judgment Order. The Court determined that if the contractual provisions regarding either the restrictive covenants, the employment relationships between plaintiff and the drivers, or both, were terminable at will, the Court would "characterize the claim relating to that provision as a claim for tortious interference with a prospective economic advantage." *Swift*, 2019 WL 2358407, at *4. The Court found that the employment relationships were terminable at will but that the restrictive covenants were not. *Id.*, at *6. Further, the Court construed the restrictive terms as beginning to run on the date each driver entered into his respective contract. *Id.*, at *14-15. Thus, the restrictive terms did not become effective upon termination of the employment relationship, and liability for interference with the restrictive covenants is independent of the existence of an employment relationship. That the drivers still worked for plaintiff when defendant hired them is, therefore, inconsequential in assessing liability. Defendant's motion to exclude the nine drivers (Doc. 182, at 15 (listing the nine drivers)) is **denied**.

### D. Drivers Defendant Reimbursed

Defendant asserts that it reimbursed seventeen drivers for their CDL training and those drivers "should be excluded from [p]laintiff's alleged damages calculations, as to both [p]laintiff's unjust enrichment claim and tortious interference with contract claims." (Doc. 182, at 16). As to unjust enrichment, defendant argues that the reimbursements amount to "just compensation" for any benefit defendant may have obtained by hiring those drivers and, thus, those drivers are not relevant in calculating any unpaid damages plaintiff may have sustained. (*Id.*). As to tortious interference with contract, defendant

argues that because the liquidated damages provision in the driver contracts may serve as an approximation for potential damages and plaintiff has already paid this amount in the form of reimbursement to the seventeen drivers, "there can be no liability or damages related to these seventeen (17) drivers and evidence related to them is irrelevant." (*Id.* at 16-17).

In moving to exclude the seventeen drivers, defendant effectively suggests that the measure of damages for unjust enrichment should be limited to the cost of training. In its summary judgment Order, the Court noted that "[t]he measure of defendant's benefit is not necessarily the same as the measure of damages plaintiff may recover." *Swift*, 2019 WL 2358407, at *24 n.18. The Court determined that the proper measure of damages on the unjust enrichment claim is "just compensation" for the benefits defendant received. *Id.* at *25. The Court did not conclusively determine what "just compensation" would be in this case, but the Court did find that "'just compensation' is not disgorgement of defendant's profits." *Id.* The factfinder is responsible for determining the amount of damages awarded and the theory under which just compensation is measured. *Id.* Defendant can seek to offset any damages awarded by the amount defendant paid to the seventeen drivers.

Neither defendant's "benefit received" nor "just compensation" for that benefit has been determined, and, thus, the Court is unable to conclude whether the reimbursements paid to the seventeen drivers would amount to just compensation under plaintiff's unjust enrichment claim. If the factfinder is to determine whether defendant has paid just compensation for any benefit it may have received, the factfinder needs to know what measure of compensation, and to whom, defendant has paid. Thus, evidence that defendant reimbursed seventeen drivers, and the amount of those reimbursements is admissible. It will be for the factfinder to determine whether defendant should pay just compensation and, if so, whether the reimbursements amount to just compensation.

As to the tortious interference claim, "a proper measure of damages for the contract claim would center around the contract at issue." *Id.*, at *19. The Court previously provided that "a reasonable basis for the measure of . . . damages exists," and there are multiple theories plaintiff could pursue in showing such damages. *Id.*, at *19-20. The reimbursements made to the seventeen drivers is irrelevant to the damages plaintiff suffered under the tortious interference with contract claim because the fact of reimbursement cannot relieve defendant from any tortious conduct defendant may have committed. *See Royal Indem. Co. v. Factory Mut. Ins. Co.*, 786 N.W.2d 839, 849-50 (Iowa 2010) (distinguishing between contract damages and tort damages). That defendant reimbursed these seventeen drivers may, however, be relevant for other purposes, such as showing that any interference was intentional. Thus, defendant's motion is **denied** to the extent it seeks to exclude the seventeen drivers it reimbursed for purposes of calculating damages, and the amount of those reimbursements.

###### E.    *Independent Contractor Agreements*

Defendant requests that the Court exclude evidence of defendant's independent contractor agreements as irrelevant. (*Id.*, at 18-19). Plaintiff "does not intend to offer any evidence of [defendant's] [i]ndependent [c]ontractor [a]greements" (Doc. 186, at 20), and the Court finds that neither defendant's independent contractors, nor the independent contractor agreements, are at issue in this case. *See CRST Expedited, Inc. v. Swift Transp. Co. of Az., LLC*, 328 F.R.D. 231, 238-39 (N.D. Iowa 2018) (discussing relevance of independent contractors). Defendant's motion to exclude evidence of its independent contractor agreements is **granted**. To the extent "[c]ertain of [plaintiff's] exhibits . . . contain information concerning owner-operators and independent contractors" (Doc. 207, at 11), that information is inadmissible and should be excluded from exhibits that are offered into evidence.

## F.    Punitive Damages

Defendant's motion in limine on punitive damages is twofold. First, defendant seeks exclusion of "any evidence of punitive damages." (Doc. 182, at 19). Second, defendant seeks confirmation from the Court "that [p]laintiff is not entitled to punitive damages." (*Id.*). Defendant urges that the Court's summary judgment Order precludes plaintiff from seeking punitive damages. (*Id.*) The second issue informs the first and the Court will, thus, turn to defendant's second request before addressing defendant's motion to exclude evidence of punitive damages.

In its summary judgment Order, the Court found that defendant was entitled to summary judgment on plaintiff's claim for tortious interference with prospective economic advantage. *Swift*, 2019 WL 2358407, at *23. In doing so, the Court found that plaintiff could not satisfy the impropriety prong of the claim:

> Under [tortious interference with] prospective economic advantage claims, the plaintiff is required to produce "substantial evidence that the defendant's predominant or sole motive was to damage the plaintiff." *Compiano v. Hawkeye Bank & Tr. of Des Moines*, 588 N.W.2d 462, 464 (Iowa 1999).
> . . . [P]laintiff has produced no evidence that would permit a reasonable factfinder to determine that defendant was motivated, even in part, to damage plaintiff. . . . Plaintiff's inability to make a showing of defendant's motive renders plaintiff wholly incapable of showing that defendant's primary or sole motive was to injure plaintiff. . . .

*Id.*, at *21. Defendant asserts that "[b]ased on this ruling, [p]laintiff is not entitled to punitive damages as a matter of law." (Doc. 182, at 19). Specifically, defendant argues that "[g]iven the Court's finding that [p]laintiff cannot make a showing that [defendant] was motivated, even in part, to damage [p]laintiff, [plaintiff] cannot meet the standards for punitive damages." (*Id.*).

Under Iowa law, "to receive punitive damages, [the] plaintiff must prove by a preponderance of clear, convincing, and satisfactory evidence that the defendant's

conduct amounted to a willful and wanton disregard for the rights of another."
*Hockenberg Equip. Co. v. Hockenberg's Equip. & Supply Co. of Des Moines, Inc.*, 510
N.W.2d 153, 156 (Iowa 1993) (citing IOWA CODE § 668A.1). "Thus, merely
objectionable conduct is insufficient to meet the standards of [S]ection 668A.1." *Id.*
(citation omitted). "To receive punitive damages, [the] plaintiff must offer evidence of
[the] defendant's persistent course of conduct to show that the defendant acted with no
care and with disregard to the consequences of those acts." *Id.* (citation omitted).
Further, an award of punitive damages is permissible if a plaintiff shows that the
defendant was guilty of malice. *Pogge v. Fullerton Lumber Co.*, 277 N.W.2d 916, 920
(Iowa 1979) (citations omitted). "It is not an essential element of malice that defendant's
actual spite or wicked intent be demonstrated: An issue may be made by evidence of legal
malice, which may be established by showing wrongful or illegal conduct committed or
continued with a willful or reckless disregard of another's rights." *Id.* (citations omitted).

In its summary judgment Order, this Court only held that plaintiff would be unable
to demonstrate "that defendant's primary or sole motive was to injure plaintiff." *Swift*,
2019 WL 2358407, at *21. To receive punitive damages, however, plaintiff is not
required to show that defendant was motivated, in any part, to injure plaintiff. Instead,
plaintiff can receive punitive damages if plaintiff is able to show, for instance, that
defendant acted with willful or reckless disregard of plaintiff's rights. *Pogge*, 277
N.W.2d at 920. This is a different standard from the standard that must be met for a
plaintiff to succeed on a tortious interference with prospective economic advantage claim.
Thus, plaintiff's inability to succeed on its prospective economic advantage claim does
not necessarily defeat plaintiff's request for punitive damages.

To the extent defendant's motion seeks "confirmation" that plaintiff is not entitled
to punitive damages, the motion is **denied**. Whether plaintiff is entitled to punitive
damages is an issue more appropriately addressed at trial. The only basis for defendant's

motion to exclude evidence of punitive damages is defendant's argument that the Court's summary judgment Order precludes plaintiff from pursuing punitive damages. The Court has rejected that argument and, as defendant has not moved in limine on any other basis as to punitive damages, defendant's motion "to exclude any evidence of punitive damages" is **denied**.

### III.    CONCLUSION

For the reasons stated above, plaintiff's motion in limine (Doc. 181) is **granted in part**, **denied in part**, and **held in abeyance in part**. Defendant's motion in limine (Doc. 182) is, likewise, **granted in part**, **denied in part**, and **held in abeyance in part**.

**IT IS SO ORDERED** this 8th day of July, 2019.

_____
C.J. Williams
United States District Judge
Northern District of Iowa