**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

| | |
|---|---|
| CRST EXPEDITED, INC., | |
| Plaintiff, | No. 17-CV-25-CJW-KEM |
| vs. | **ORDER** |
| SWIFT TRANSPORTATION CO. OF ARIZONA, LLC, | |
| Defendant. | |

_____

**TABLE OF CONTENTS**

I.      BACKGROUND ............................................................................... 1

II.     RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW ............ 2

        A.      Applicable Law .......................................................................... 3

        B.      Intentional Interference with Contract ......................................... 5

                1.      Knowledge of Contracts .................................................. 6

                2.      Impropriety .................................................................. 8

                3.      Defendant's Conduct Caused Drivers to not Perform their Contracts ................................................................... 11

        C.      Unjust Enrichment ................................................................... 12

1.    Plaintiff Failed to Prove Adequate Unjust Enrichment Theory ....14

2.    Adequate Remedy at Law ...............................................16

3.    Plaintiff Failed to Prove it Had Contracts with Drivers............16

4.    Unjust to Retain a Benefit ..............................................17

III.    DEFENDANT'S MOTION FOR A NEW TRIAL ...................................18

A.    Applicable Law....................................................................18

B.    Grounds for a New Trial........................................................19

C.    Claims Raised on Motion for Judgment as a Matter of Law................19

1.    Intentional Interference with a Contract  .............................19

2.    Unjust Enrichment.......................................................20

D.    Additional Issues ................................................................20

1.    Juror Strike ..............................................................21

2.    Closing Arguments ......................................................22

E.    Damages ............................................................................23

1.    Punitive Damages........................................................24

a.    Sufficiency of the Evidence......................................24

b.    Constitutionality of the Punitive Damages Award ...........26

c.    Remittitur ........................................................29

  2. Interference with Contract……………………………………30

  3. Unjust Enrichment……………………………………………31

IV. MOTION TO AMEND JUDGMENT ………………………………31

V. MOTION FOR LEAVE TO FILE AMENDED BILL OF COSTS …………33

A. Amended Bill of Costs …………………………………………34

B. Reply in Support of Bill of Costs…………………………………34

VI. CONCLUSION ……………………………………………………35

This matter is before the Court on Swift Transportation Company of Arizona, LLC's ("defendant") Renewed Motion for Judgment as a Matter of Law and a New Trial on Damages, or in the Alternative, Remittitur (Doc. 242), CRST Expedited, Inc.'s ("plaintiff") Motion to Amend Judgment (Doc. 245), and plaintiff's Motion for Leave to File Amended Bill of Costs (Doc. 248). Plaintiff timely resisted defendant's Renewed Motion for Judgment as a Matter of Law (Doc. 254) and defendant filed a timely reply (Doc. 271). Defendant also timely resisted plaintiff's Motion for Leave to File Amended Bill of Costs (Doc. 250) and plaintiff filed a timely reply (Doc. 251). Plaintiff's Motion to Amend Judgment is unopposed. On October 11, 2019, the Court held a hearing on the Renewed Motion for Judgment as a Matter of Law and the parties presented oral arguments. (Doc. 272).

For the following reasons, defendant's Renewed Motion for Judgment as a Matter of Law is **granted in part** and **denied in part**. (Doc. 242). Defendant's Motion for a New Trial is also **granted in part** and **denied in part**. (*Id.*). Plaintiff's Motion to Amend Judgment is **granted**. (Doc. 245). Finally, plaintiff's Motion for Leave to File Amended Bill of Costs is **denied**. (Doc. 248).

## I.     BACKGROUND

This case involves two competing trucking companies that employ individuals as drivers. (Doc. 169, at 2). To operate a semi-trailer, an individual must possess a commercial driver's license ("CDL"). (*Id.*). There is, however, a shortage of licensed drivers in the trucking industry. (*Id.*). Plaintiff operates a driver training program that allows individuals to obtain their CDLs without having to pay the training fees upfront. (*Id.*, at 3). Each driver who attends this training program and is hired by plaintiff signs a Driver Employment Contract ("Driver Contract" or "contract"). (*Id.*). The Driver Contract contains a restrictive term, during which time the driver-signatory is prohibited from driving for one of plaintiff's competitors. (*Id.*). A driver who leaves or is

1

discharged from their employment before the restrictive term ends may not drive for a competitor during the restrictive term. (*Id.*). Additionally, if a driver leaves before the restrictive term expires, the driver must either complete the time on the restrictive term, or pay $6,500 to reimburse the training costs before the driver may be released from the contract. (*Id.*, at 4). Plaintiff sued, alleging that defendant has actively recruited and continues to actively recruit plaintiff's drivers even though those drivers remain within the restrictive terms of their contracts. (*Id.*).

A six-day jury trial was held from July 15, 2019, to July 22, 2019. The jury was instructed to consider plaintiff's claims of intentional interference with a contract and unjust enrichment. (Doc. 233). Before the case was submitted to the jury, defendant moved for judgment as a matter of law on both claims. (Doc. 232). The Court denied that motion. The case was then submitted to the jury. The jury returned a verdict in favor of plaintiff and awarded plaintiff $3 million for intentional interference with contracts, $7.5 million for unjust enrichment, and $5 million in punitive damages. (Doc. 236, at 1-4).

## II.    *RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW*

Defendant renews its motion for judgment as a matter of law on both of plaintiff's claims for intentional interference with contracts and unjust enrichment. (Doc. 242-1, at 8). First, defendant argues plaintiff failed to produce evidence of impropriety, causation of breach of an ongoing contract, and defendant's requisite knowledge of the contracts. (*Id.*, at 8-9). Defendant argues that because there was no evidence on these three elements, the jury's verdict for intentional interference with contracts cannot be sustained. (*Id.*). Second, as to the unjust enrichment claim, defendant alleges plaintiff did not show that defendant was enriched from the services of drivers with whom plaintiff had contracts, did not prove it was unjust for defendant to retain any benefit it may have received, and did not disclose a viable unjust enrichment theory. (*Id.*, at 9-10). Plaintiff

2

resists each of the arguments and insists there was sufficient evidence for the jury to find defendant liable on both claims. (Doc. 254). The Court will address each of these issues in turn.

## A. Applicable Law

Rule 50 of the Federal Rules of Civil Procedure establishes the standard for a court to grant a motion for judgment as a matter of law. It provides, in pertinent part:

**(a) Judgment as a Matter of Law.**
(1) In General. If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:

(A) resolve the issue against the party; and

(B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

(2) Motion. A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.

**(b) Renewing the Motion After Trial; Alternative Motion for a New Trial.** If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment—or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged—the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may:
(1) allow judgment on the verdict, if the jury returned a verdict;
(2) order a new trial; or
(3) direct the entry of judgment as a matter of law.

3

FED. R. CIV. P. 50(a) & (b). In ruling on a motion under Rule 50, a court must draw all reasonable inferences in favor of the nonmoving party. *Roberson v. AFC Enters., Inc.*, 602 F.3d 931, 933 (8th Cir. 2010); *Canny v. Dr. Pepper/Seven–Up Bottling Grp., Inc.*, 439 F.3d 894, 900 (8th Cir. 2006). A court must deny a motion for judgment as a matter of law if it concludes that reasonable jurors could draw different conclusions based on the evidence. *Roberson*, 602 F.3d at 933. A court must also "give the prevailing party the benefit of all favorable inferences which may reasonably be drawn from the facts." *Neely v. Am. Family Mut. Ins. Co.*, 930 F. Supp. 360, 368 (N.D. Iowa 1996) (quoting *Minneapolis Cmty. Dev. Agency v. Lake Calhoun Assoc.*, 928 F.2d 299, 301 (8th Cir. 1991). Stated another way, a court ruling on a renewed motion for a judgment as a matter of law, must

> (1) resolve direct factual conflicts in favor of the nonmovant, (2) assume as true all facts supporting the nonmovant which the evidence tended to prove, (3) give the nonmovant the benefit of all reasonable inferences, and (4) deny the motion if the evidence so viewed would allow reasonable jurors to differ as to the conclusions that could be drawn.

*Stults v. Am. Pop Corn Co.*, 815 F.3d 409, 418 (8th Cir. 2016) (quoting *Jones v. Edwards*, 770 F.2d 739, 740 (8th Cir. 1985)). In drawing all reasonable inferences in favor of the nonmoving party, a court must "not make credibility determinations or weigh the evidence." *Meyers v. Starke*, 420 F.3d 738, 741 (8th Cir. 2005).

The Eighth Circuit has repeatedly stated that "[j]udgment as a matter of law is appropriate only when the record contains 'no proof beyond speculation to support the verdict.'" *Am. Bank of St. Paul v. TD Bank, N.A.*, 713 F.3d 455, 462 (8th Cir. 2013) (quoting *Wilson v. Brinker Int'l, Inc.*, 382 F.3d 765, 770 (8th Cir. 2004) (additional citations omitted); *see also Arabian Agric. Servs. Co. v. Chief Indus., Inc.*, 309 F.3d 479, 482 (8th Cir. 2002) ("[J]udgment as a matter of law is appropriate 'when the record contains no proof beyond speculation to support [a] verdict.'") (quoting *Sip–Top, Inc. v.*

4

*Ekco Grp., Inc.*, 86 F.3d 827, 830 (8th Cir. 1996)). In sum, judgment as a matter of law "is appropriate 'when all the evidence points one way and is susceptible of no reasonable inferences sustaining the position of the non-moving party.'" *Hortica–Florists' Mut. Ins. Co. v. Pittman Nursery Corp.*, 729 F.3d 846, 854 (8th Cir. 2013) (quoting *Ehrhardt v. Penn Mut. Life Ins. Co.*, 21 F.3d 266, 269 (8th Cir. 1994)). On the other hand, "'[a] mere scintilla of evidence is inadequate to support a verdict' and judgment as a matter of law is appropriate when the record contains no proof beyond speculation to support the verdict." *Clark v. Kan. City Mo. Sch. Dist.*, 375 F.3d 698, 701 (8th Cir. 2004) (quoting *Larson v. Miller*, 76 F.3d 1446, 1452 (8th Cir. 1996)).

### B. Intentional Interference with Contract

At trial, when the Court denied defendant's motion for judgment as a matter of law on plaintiff's intentional interference with contracts and unjust enrichment claims, the Court acknowledged that defendant had raised some significant issues. Nevertheless, the Court determined these issues could be appropriately decided by the jury. Although there were significant weaknesses in plaintiff's case, the Court maintains that there was more than a mere scintilla of evidence supporting plaintiff's intentional interference with a contract claim. Thus, the Court finds it would be inappropriate to reverse the jury's finding here. Courts should be highly reluctant to set aside a jury's verdict, as our system relies upon the judgment of citizens acting as jurors to resolve factual disputes. *See Kelly v. Armstrong*, 206 F.3d 794, 797 (8th Cir. 2000) (noting that the court is "very reluctant to set aside a jury's verdict and will not do so lightly").

For the jury to find defendant had intentionally interfered with contracts, it had to find the following elements:

*First*, [plaintiff] had employment contracts with drivers;

The contracts [plaintiff] had with its drivers included a "noncompete" clause. An employment contract may include such a clause, allowing an

employee to leave employment with a company at the employee's option, but prohibiting the employee for a period of time from engaging in employment that would compete with the former employer. The noncompete clauses in each of [plaintiff's] drivers' contracts were to last for a certain period of time, unless a driver repaid [plaintiff] for his training costs.

*Second*, [defendant] knew of the employment contracts between [plaintiff] and the drivers at issue in this case, or had knowledge of facts which, if followed by reasonable inquiry, would have led [defendant] to know of the contracts;

*Third*, [defendant] intentionally and improperly interfered with the contracts;

*Fourth*, [defendant's] conduct caused the drivers not to perform their contracts; and

*Fifth*, [defendant's] conduct resulted in damage to [plaintiff].

(Doc. 233, at 18). Plaintiff was required to prove each of the above elements by a preponderance of the evidence. (*Id.*). Defendant challenges the jury's finding that plaintiff produced evidence on elements two, three, and four. (Doc. 242-1, at 8-9). Viewed in the light most favorable to the jury's verdict, there was evidence from which a reasonable jury could find that defendant intentionally interfered with plaintiff's contracts with its drivers.

### 1. Knowledge of Contracts

For defendant to be found liable for intentional interference with a contract, plaintiff had to prove by a preponderance of the evidence that defendant either knew of the employment contracts between plaintiff and the drivers, or had knowledge of facts which, if followed by reasonable inquiry would have led defendant to know of the contracts. (*Id.*, at 18).

Defendant alleges that plaintiff failed to prove defendant knew of the employment contracts between plaintiff and at least 31 drivers and thus, the claim for intentional interference as it relates to those contracts must fail. (Doc. 242-1, at 25). At trial, plaintiff presented evidence that each time defendant sought to hire a driver still under contract with plaintiff, it sent a letter to defendant that gave notice the driver was still under contract. (Doc. 256, at 88). Defendant alleges that the names of these 31 drivers do not appear on admitted exhibits that include the contract notice letters, or on any other documents that suggest these drivers were under contract with plaintiff. (Doc. 242-1, at 25). Plaintiff concedes that "a few of those notices" were not available at trial. (Doc. 254, at 32). Plaintiff, however, asserts that it presented testimony at trial that it "sen[t] out letters to drivers under contract and did so for the 246 drivers at issue that gave [defendant] knowledge of the drivers' contracts." (*Id.*). Plaintiff specifically points to testimony given by Jenny Abernathy ("Abernathy") on the second day of trial to support its showing of knowledge. (*Id.*).

It is the jury's responsibility to determine what testimony to believe and what testimony to not believe. (Doc. 233, at 13). At trial, Abernathy testified that if a driver who has not satisfied their restrictive term applies to drive for another carrier, plaintiff always lets the other carrier know the term has not been completed. (Doc. 256, at 88). Abernathy also testified that notice is sent every time a carrier looks to hire an employee who is under contract with plaintiff. (*Id.*, at 89). A reasonable jury could have evaluated Abernathy's credibility and concluded that plaintiff sent contract notice letters as to all the drivers, not just the drivers named in the admitted exhibits. Although the actual contract notice letters would provide better support for the claim that defendant had knowledge of the contracts, the Court may not grant a motion for judgment as a matter of law simply because there was a better method of proof. Thus, the Court finds there

was sufficient evidence for the jury to conclude defendant was given notice of, and therefore knew of, the contracts of the 31 drivers.

### 2. Impropriety

The jury next had to consider whether defendant intentionally and improperly interfered with the contracts. (Doc. 233, at 18). Under Iowa law, several factors must be considered to determine whether conduct was improper and thus tortious interference with a contract. *See Green v. Racing Ass'n of Cent. Iowa*, 713 N.W.2d 234, 244 (Iowa 2006) (citing *Revere Transducers, Inc. v. Deere & Co.*, 595 NW.2d 751, 767 (Iowa 1999); RESTATEMENT (SECOND) OF TORTS § 767). The Court instructed the jury on these factors and directed the jury to consider the factors in evaluating the propriety of defendant's conduct. The factors include:

> (1) The nature of [defendant's] conduct; (2) [defendant's] motive; (3) [plaintiff's] interests that [defendant's] conducted interfered with; (4) social interests in protecting [plaintiff's] contracts and [defendant's] freedom of action; (5) the nearness of [defendant's] conduct to the interference; (6) the relationship between the parties, and (7) the interest sought to be advanced by [defendant].

(Doc. 233, at 19).

Defendant argues the jury "misunderstood or ignored the requirement of impropriety" because plaintiff presented no evidence that defendant acted improperly. (Doc. 242-1, at 11). First, defendant alleges that plaintiff could have demonstrated impropriety by showing that defendant made changes in its hiring practice "specifically for the purpose of interfering with the contracts." (*Id.*, at 11-12) (emphasis omitted). Defendant alleges that, instead, it presented evidence that showed the changes were made in conformity with industry standards and applied similarly to several other competitors. (*Id.*, at 16-18). Second, defendant alleges plaintiff failed to introduce any other evidence that demonstrates any other form of impropriety based on the seven factors included in

the jury instructions. (*Id.*, at 14). For example, defendant asserts that plaintiff produced no evidence that defendant targeted plaintiff's drivers, that defendant's recruiters disparaged plaintiff to other drivers, or that defendant encouraged drivers to breach their contracts with other companies. (*Id.*, at 14-15).

Plaintiff disagrees and alleges there was enough evidence produced at trial to support the jury's verdict. First, plaintiff asserts that contracts that include a non-compete are held to a different standard and that "[e]xtending an offer of employment to a competitor's employee with knowledge of the existence of a non-compete is improper." (Doc. 254, at 20). In the alternative, plaintiff asserts that "[e]ven if the standard applicable to all other contracts is applied, [defendant's] conduct was improper under the seven Restatement § 767 impropriety factors set forth in Jury Instruction No. 15." (*Id.*, at 24).

When viewed in the light most favorable to the verdict, there was evidence from which a jury could find that the defendant acted improperly. The Court does not need to address whether there is a different impropriety standard for contracts that contain a non-compete clause because it finds there was sufficient evidence to sustain the jury's verdict under the seven-factor analysis. Although there was conflicting evidence about each of the seven impropriety factors, the Court must defer to the jury's determination of credibility and accuracy.

First, a jury could reasonably conclude the nature of defendant's conduct was to hire plaintiff's drivers to increase defendant's profits. Although defendant claims that it did not change its hiring practice to target plaintiff's drivers in particular, plaintiff produced evidence that defendant's hiring decision was made to increase its profits. For example, defendant's 2016 recruiting strategy was changed to accomplish its stated goal of meeting company needs and expectations. (Doc. 254, at 25) (citing Trial Exhibit 41). A jury could reasonably understand that the "company needs" included increasing profits.

9

A jury could therefore conclude the nature of defendant's conduct was to increase its profit.

Second, a jury could reasonably infer defendant's motive was to engage in competition by hiring drivers who had non-competes. Plaintiff produced testimony that defendant researched what plaintiff paid its drivers, and then offered to pay a higher rate. (*Id.*, at 26) (citing Trial Exhibits 11 and 12 and Video Deposition Testimony). It is not unreasonable for a jury to infer these actions show the motive was to compete for drivers with plaintiff by hiring drivers subject to a non-compete.

Third, plaintiff produced evidence of its interest in its driver training program. Throughout the trial there were numerous statements about the nationwide driver shortage and plaintiff's attempt to address the shortage by implementing its driver training program. The jury had ample opportunity to consider the training program and the value it provided to plaintiff.

Fourth, defendant also had several opportunities to explain its freedom to participate in the competitive market. It was within the jury's discretion, and in fact was the jury's responsibility, to weight these competing interests and determine the societal value of each one.

Fifth, the jury could find defendant's conduct was not remote because there was evidence defendant was directly involved with hiring drivers who were subject to non-competes. There was evidence both that the drivers had existing contracts and that defendant hired the drivers. (Doc. 254, at 27). Because defendant directly hired the drivers, a jury could determine the conduct was not remote.

Sixth, both sides presented evidence that the parties were trucking companies in a competitive shipping industry. Based on the evidence, the jury could reasonably determine the relationship between the parties was that of competitors who were vying for both drivers and shipping contracts.

Finally, similar to the first factor, the jury could weigh the evidence to determine defendant's interest in hiring the drivers was to increase its own profits.

Based on its weighing of these factors, when viewed in light most favorable to the verdict, a reasonable jury could conclude that the plaintiff's interest in the training program was significant, that defendant's motive in recruiting drivers was to compete with plaintiff and increase the number of drivers it employed, and that defendant's conduct was not remote. A jury could reasonably conclude this amounted to improper conduct. Accordingly, the Court concludes there was evidence to support the jury's finding on the impropriety element.

### 3. *Defendant's Conduct Caused Drivers to not Perform their Contracts*

To prevail on its intentional interference with contracts claim, plaintiff also had to prove by a preponderance of the evidence that defendant's conduct caused drivers to not perform their contracts.

Defendant alleges that plaintiff presented no evidence that defendant's conduct caused the drivers not to perform their contracts. (Doc. 242-1, at 18). Specifically, defendant argues there was no evidence that any of the drivers at issue failed to repay their training costs before they began working for defendant. (*Id.*). If plaintiff could not show the drivers had not repaid their training costs, defendant reasons, plaintiff could not show there was a contract to breach when the drivers began employment. To the contrary, defendant points to Abernathy's testimony that drivers regularly paid back the costs. (*Id.*, at 23). Plaintiff, however, counters this allegation by again citing testimony that notices were sent each time a driver under contract applied to work for defendant. (Doc. 254, at 30). Additionally, plaintiff argues the testimony of its damage expert, David Souza ("Souza"), indicates that every driver included in his damages calculation was under contract with plaintiff when they were hired by defendant. (*Id.*, at 31). Souza testified that he reached his conclusion after examining plaintiff's business records. (*Id.*).

11

When viewed in the light most favorable to the verdict, there was evidence from which a reasonable jury could find that the defendant caused the contract breach. The testimony provided by Abernathy could indicate to a reasonable jury that the drivers were under existing contracts when they were hired by defendant. Souza's testimony provided additional support for the jury to conclude that the drivers at issue were each under contract with plaintiff, but that defendant hired them anyway. The two witness' testimony does not provide direct evidence that the drivers did not repay the training costs before they began working for defendant. The jury, however, could perhaps draw an inference that the testimony meant the drivers had not repaid the training fees before being employed by defendant. Souza's testimony that he reviewed business records and only included drivers who were under contract in his damages calculations could particularly cause a jury to infer the costs had not been repaid. Because a jury could infer the drivers had not repaid the training costs, the jury could conclude that defendant caused the drivers to breach their contracts by offering them employment opportunities at a different company.

Thus, the Court finds there was enough evidence presented to support the jury's conclusion that defendant caused the drivers to breach their contracts. Because the jury reasonably found each of the three elements at issue in favor of plaintiff, the motion for renewed judgment as a matter of law as it relates to the intentional interference with a contract claim is **denied**.

### C. *Unjust Enrichment*

Defendant also renews its Motion for Judgment as a Matter of Law on plaintiff's unjust enrichment claim. (Doc. 242-1, at 8). Unjust enrichment is an equitable doctrine that is "based on the principle that a party should not be permitted to be unjustly enriched at the expense of another or receive property or benefits without paying just compensation." *Iowa ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142, 154 (Iowa 2001)

Case 1:17-cv-00025-CJW-KEM   Document 273   Filed 12/16/19   Page 15 of 39

(citations omitted). "[U]njust enrichment is a broad principle with few limitations." *Id.*, at 155. The benefits a defendant receives can be direct or indirect and benefits conferred by third parties can satisfy an unjust enrichment claim. *Id.* "The critical inquiry is that the benefit received be at the expense of the plaintiff." *Id.* (citation omitted).

Although unjust enrichment is a broad principle, recovery on an unjust enrichment claim is not without limits. For the jury to find that defendant was unjustly enriched here, plaintiff had to prove by a preponderance of the evidence that: "*First*, [defendant] was enriched by a benefit from the services of drivers with whom [plaintiff] had contracts; *Second*, [defendant's] unjust enrichment was at the expense of [plaintiff]; and *Third*, it is unjust to allow [defendant] to retain a benefit those drivers provided to [defendant] under the circumstances." (Doc. 233, at 20). Further, in the Court's summary judgment Order, the Court limited the measure of damages to the amount that was just compensation for the benefit defendant received. (Doc. 169, at 49). The Court speculated just compensation might be measured by the cost plaintiff incurred in training the drivers but left open the possibility of alternative theories. (*Id.*). The Court did, however, determine that damages on the unjust enrichment claim could not be based on a disgorgement theory. (*Id.*).

Defendant alleges plaintiff failed to prove that there was no adequate remedy at law, that plaintiff failed to prove defendant was enriched by a benefit from the services of drivers with whom plaintiff had contracts, that plaintiff failed to establish it is unjust to allow defendant to retain a benefit provided to defendant under the circumstances, and that plaintiff failed to prove any unjust enrichment damages theory other than the rejected disgorgement theory. (Doc. 242-1, at 26-34). Plaintiff, however, disputes each of defendant's allegations and asserts that the adequacy of a remedy at law does not bar this claim, that defendant unjustly benefitted from hiring its drivers, and that plaintiff presented a theory of damages that the jury accepted. (Doc. 254, at 33-50).

13

The Court finds the unjust enrichment theory plaintiff presented at trial amounts to the disgorgement theory the Court previously held was not a viable basis for recovery. Because plaintiff produced no evidence on an alternative theory, plaintiff did not show that defendant was enriched by a benefit received from plaintiff's drivers. The Court will review this issue and the parties' other arguments below.

### 1. *Plaintiff Failed to Prove Adequate Unjust Enrichment Theory*

For plaintiff to be successful on its unjust enrichment claim, at trial it had to present some theory and evidence as to how defendant was enriched by a benefit from the services of drivers with whom plaintiff had contracts. In its summary judgment Order prior to trial, the Court held that "[d]amages under a claim of unjust enrichment are limited to the value of what was inequitably retained.'" (Doc. 169, at 48) (quoting *Catipovic v. Turley*, 68 F. Supp. 3d 983, 996 (N.D. Iowa 2014)). The measure of damages, then, is what was just compensation for the benefits received. (*Id.*). Just compensation, however, would not require defendant to disgorge all additional profits it received by hiring drivers who did not need to be trained. (*Id.*). Although the Court could not determine the theory upon which unjust enrichment would be based, the Court conceived a viable theory could be presented to the jury at trial and thus denied summary judgment on this ground. Summary judgment was, however, granted to the extent defendant sought to limit plaintiff's damages and the Court precluded damages based on a disgorgement theory. (*Id.*).

Plaintiff alleges it presented a viable damages theory for its unjust enrichment claim at trial that was consistent with the Court's jury instructions. (Doc. 254, at 45). Plaintiff further alleges its theory was the basis of the jury's verdict on the unjust enrichment claim. (*Id.*). Plaintiff's damages claim sought to recover the benefit provided by the drivers, which it asserts were the driving services that were contractually pledged to plaintiff. (*Id.*). Plaintiff measured this as the "fair market value of the benefit

Case 1:17-cv-00025-CJW-KEM   Document 273   Filed 12/16/19   Page 17 of 39

attributable to the services of drivers under contract with [plaintiff]." (*Id.*, at 49) (internal quotation marks omitted). The fair market value was calculated as the revenue such drivers produced (defendant's profits per driver per day) minus their expense. (*Id.*).

Plaintiff alleges the jury found the value of the benefit of the services was the amount of money drivers generate and that this finding was the basis of the jury's $7.5 million unjust enrichment award. (*Id.*, at 48). Plaintiff did, in fact, present evidence at trial that could cause a jury to reach this conclusion. Specifically, plaintiff offered damages testimony from Souza that calculated the profit per driver per day. (*Id.*, at 49). Evidence was also admitted at trial that showed the profits per driver per day and an itemized unjust gain analysis that totaled $9,201,326.61. (*Id.*) (citing Docs. 234-51 & 234-65).

Although plaintiff presented and supported this damages calculation at trial, the theory and calculation was based on a disgorgement theory that the Court excluded in its summary judgment Order. As the Court explained in its Order, "[i]f defendant were required to disgorge all additional profits it received by hiring drivers who did not need to be trained, defendant would not be 'compensating' plaintiff for training the drivers. Rather, defendant would be disgorging the entire benefit it received." (Doc. 169, at 49). This goes beyond what is required for an unjust enrichment claim and exceeds "just compensation." (*Id.*). The damages amount was calculated by determining the amount of profit each driver generates per day. That number was then multiplied by the number of days each driver who had a contract with plaintiff drove for defendant. (Doc. 234-51). The profits for each driver were then added together for a total of approximately $9.2 million dollars. (*Id.*). This total is the amount of profits defendant received by hiring drivers from plaintiff who did not need to be trained. This total was not the amount necessary for defendant to compensate plaintiff for training the drivers. The Court excluded this calculation in its summary judgment Order because it was not just

15

compensation and went beyond what is required for an unjust enrichment claim. Because the theory presented at trial is inconsistent with the Court's Order and contrary to established unjust enrichment law, and because plaintiff did not present an alternative theory for the jury to consider at trial, plaintiff failed to prove the first element needed to succeed on an unjust enrichment claim.

### 2. *Adequate Remedy at Law*

Defendant alleges that "Iowa courts require a party seeking unjust enrichment to establish that it lacks an adequate remedy at law." (Doc. 242-1, at 26). Defendant cites the Court's summary judgment Order in support of its proposition. (*Id.*) (citing Doc. 169).

In its summary judgment Order, the Court considered that Iowa law may require proof of an additional element for unjust enrichment claims. (Doc. 169, at 46). Specifically, the Court considered whether the plaintiff must show that there was no at-law remedy available to succeed on its unjust enrichment claim. (*Id.*, at 46, n.16) (citing *Palmer*, 637 N.W.2d at 154). There is no principle under Iowa law, however, that restricts restitution to cases where alternative remedies are inadequate and the *Palmer* Court did not explicitly add an additional element for unjust enrichment. (*Id.*) (citing *Palmer*, 637 N.W.2d at 154). In its Order, the Court therefore declined to address the issue, "including the issue of whether the adequacy of a legal remedy is a separate and distinct element of plaintiff's claim." (*Id.*).

The Court finds it unnecessary to definitively rule on the issue here and thus again declines to address this issue.

### 3. *Plaintiff Failed to Prove it Had Contracts with Drivers*

Defendant next alleges plaintiff "fail[ed] to prove each of the 246 drivers at issue did not repay [plaintiff] $6,500" and thus there was no evidence that plaintiff had a contract with any of the drivers hired by defendant. (Doc. 242-1, at 30). Both parties

16

argued this issue as it related to the intentional interference with contract claim. Because the Court has fully explained the argument in the previous section related to that claim, it will not repeat the arguments here. For the reasons the Court discussed above, the Court finds there was sufficient evidence—particularly the testimony of Abernathy and Souza—for the jury to conclude that contracts did exist between plaintiff and the drivers at issue.

### 4. *Unjust to Retain a Benefit*

Defendant also argues plaintiff failed to establish that it was unjust for defendant to retain the benefit under the circumstances. (Doc. 242-1, at 31). The jury instructions state that the jury must determine whether "it is unjust to allow [defendant] to retain a benefit those drivers provided to [defendant] *under those circumstances*." (Doc. 233, at 20) (emphasis added). Defendant argues the circumstances in this case involve a competitive industry in which carriers consistently hire from other carriers "and the industry as a whole is churning drivers." (Doc. 242-1, at 31). Defendant additionally argues it was not unjust to retain a benefit because plaintiff could have sought recovery from each of the drivers. (*Id.*, at 32).

Plaintiff, on the other hand, asserts the jury's finding that defendant acted with impropriety supports the conclusion that the retention of benefits would be unjust. (Doc. 254, at 40). Plaintiff also asserts the jury considered defendant's claim that hiring drivers from other carriers was common in the industry and concluded that defendant violated that standard of justice and fairness. (*Id.*).

The Court finds that if the jury concluded that defendant acted improperly, the jury could have also concluded it was unjust for defendant to retain the benefit received from its improper conduct. The jury acknowledged a right that had been interfered with and that the interference violated a standard of justice and fairness in the industry. As discussed above, though, the value received by defendant could not be based on a theory

17

of disgorgement, so the enrichment defendant received had to be limited to what could be proved under an alternative theory.

For the reasons above, defendant's renewed motion for judgment as a matter of law is **granted** as to the unjust enrichment claim. Because there was no unexcluded theoretical basis for the jury's verdict, there was also no basis for the jury's $7.5 million award on the claim.

### III.   DEFENDANT'S MOTION FOR A NEW TRIAL

#### A. Applicable Law

Defendant has also moved for a new trial pursuant to Federal Rule of Civil Procedure 59 in conjunction with its Rule 50 motion. Federal Rule of Civil Procedure 50(c) states that "[i]f the court grants a renewed motion for judgment as a matter of law, it must also conditionally rule on any motion for a new trial by determining whether a new trial should be granted in event the judgment is later vacated or reversed." Rule 59(a) states:

> A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States.

The Eighth Circuit has held that "[a] motion for a new trial based on sufficiency of the evidence should be granted only 'if the verdict is against the weight of the evidence and allowing it to stand would result in a miscarriage of justice.'" *Bennett v. Riceland Foods, Inc.*, 721 F.3d 546, 552-53 (8th Cir. 2013) (quoting *Shaw Grp., Inc. v. Marcum*, 516 F.3d 1061, 1067 (8th Cir. 2008)). In reviewing Rule 59 motions, unlike Rule 50 motions, "the trial court can rely on its own reading of the evidence—it can 'weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain a verdict.'" *Waitek v. Dalkon Shield Claimants Tr.*, 934 F. Supp. 1068, 1092 (N.D. Iowa 1996) (quoting *White v. Pence*, 961 F.2d 776, 780 (8th Cir. 1992)).

18

### B. Grounds for a New Trial

Defendant brings its Rule 59 motion as an alternative to its Rule 50 motion. As such, the arguments raised in its motion for judgment as a matter of law—that there is no evidentiary support for the intentional interference with a contract claim or the unjust enrichment claim—apply to the Rule 59 motion as well. Defendant also claims a juror issue and comments made by plaintiff during closing arguments prejudiced defendant's case and warrant a new trial. (Doc. 242-1, at 48-51). Lastly, defendant seeks a new trial on damages because it alleges the jury's award was excessive and not supported by the evidence presented at trial. (*Id.*, at 35).

### C. Claims Raised on Motion for Judgment as a Matter of Law

In its motion for new trial, defendant asserts that the Court "should grant [defendant] a new trial because the verdict is against the evidence, as described above." (*Id.*). Because defendant appears to be making the same arguments it did in support of its renewed motion for judgment as a matter of law claims for intentional interference with contracts and unjust enrichment, the Court does not need to repeat them here. The Court will, however, address its findings as to each of the claims here.

#### 1. Intentional Interference with a Contract

The Court ruled above that there was sufficient evidence for the jury to conclude that defendant was liable on the intentional interference with contracts claim. In making that determination, the Court was not permitted to weigh the evidence. Because the issue here is raised under Rule 59, however, the "Court can rely on its own reading of the evidence—it can 'weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain a verdict." *See Waitek*, 934 F. Supp. at 1092.

Even though the Court noted during trial that it saw weaknesses in plaintiff's case, and even if the Court may have decided differently if serving as a juror, the Court declines

to grant a new trial on this claim. A new trial should only be granted if the verdict is against the weight of the evidence and allowing it to stand would result in a miscarriage of justice. Here, there is evidence that weighs against the verdict, but it is not such that it resulted in a miscarriage of justice. As the Court has already discussed, the jury's verdict is sufficiently supported by the evidence. That "reasonable persons could differ about the correct outcome" does not necessarily mean there has been a miscarriage of justice. *Ryther v. KARE 11*, 864 F. Supp. 1510, 1520 (D. Minn. 1994).

Thus, the motion for new trial on the intentional interference with contracts claim is **denied**.

### 2. Unjust Enrichment

The Court granted defendant's motion for judgment as a matter of law as it pertains to the unjust enrichment claim above. In doing so, the Court concluded that plaintiff had presented no theory of damages, other than the prohibited disgorgement theory, that could serve as a basis for recovery. To permit the verdict to stand when there was no viable theory or evidence presented would be a miscarriage of justice. Because the weight of the evidence was against the verdict and because allowing a verdict that was not based on a viable damages theory to proceed would result in a miscarriage of justice, the Court **conditionally grants** defendant's motion for new trial on the unjust enrichment claim if the decision to grant the motion for judgment as a matter of law is vacated on appeal.

### D. Additional Issues

Defendant additionally alleges two other events prejudiced defendant at trial such that a new trial is warranted. First, defendant alleges the Court's refusal to strike a juror for cause necessitates a new trial. (Doc. 242-1, at 48). Second, defendant alleges plaintiff violated the Court's Order in limine during closing argument and the statements

20

made significantly prejudiced defendant. (*Id.*, at 49). The Court finds neither of these issues warrant a new trial.

### 1. Juror Strike

Defendant alleges the Court erred in not striking a juror for cause. (*Id.*, at 48). Prior to jury selection, one prospective juror noted in his questionnaire that he "d[idn't] like blacks, Mexicans, gays, lesbians, trans people, or illegals, and Muslims, Japanese [and] Chinese." (Doc. 213-3, at 121). At sidebar, defendant moved to strike this juror for cause based on defendant's plan to call an African-American, lesbian witness. (*Id.*). Defendant alleges the witness would have been called to testify that she left plaintiff's employment because she did not like the working conditions. (*Id.*). Defendant further alleges that it did not call her as a witness because of the juror's beliefs and that it prevented them from contradicting that drivers would have stayed with plaintiff if defendant had not caused the breach.

> When empaneling a jury,
>
> [t]he courts presume that a prospective juror is impartial, and a party seeking to strike a venire member for cause must show that the prospective juror is unable to lay aside his or her impressions or opinions and render a verdict based on the evidence presented in court. Essentially, to fail this standard, a juror must profess his inability to be impartial and resist any attempt to rehabilitate his position.

*Nemmer v. Ford Motor Co.*, 686 F.3d 486, 492 (8th Cir. 2012) (quoting *Moran v. Clarke*, 443 F.3d 646, 650-51 (8th Cir. 2006). During voir dire, the Court asked the prospective jurors if they could think of any reason why they could not be impartial, and the juror at issue gave no indication that he was unable to do so. (Doc. 265, at 57-58). Furthermore, the prospective juror at issue was asked by defendant's counsel directly whether he could be impartial to all of the witness and all of the lawyers in the case, to which he responded he could. (*Id.*, at 107). The Court also found that neither of the parties was one of the

21

races noted by the juror and race was not a central issue and therefore did not warrant granting the motion to strike for-cause. (*Id.*, at 138). Defendant has failed to meet its burden of showing that the challenged prospective juror was unable to lay aside his impressions or opinions and render a verdict based of the evidence presented. Thus, the Court was justified in not dismissing the juror for cause.

Further, defendant has not made any showing of real prejudice. As the Eighth Circuit Court of Appeals has explained, "[t]he district court has broad discretion in determining whether to strike jurors for cause, and we will reverse only where actual prejudice has been demonstrated." *United States v. Blum*, 65 F.3d 1436, 1442 (8th Cir.1995) (internal quotation marks and citation omitted). The Court will not presume prejudice. *United States v. Williams*, 935 F.2d 1531, 1537 (8th Cir. 1991). Although the Court accepts as true that defendant did not call the witness because of concerns over the juror's beliefs, it is mere speculation that had defendant called that single truck driver that it would have made a difference in the jury's decision. The witness, at best, would have established that she left employment because she did not like the working conditions. This testimony would have addressed only the issue of causation. Defendant was permitted to offer other evidence that truckers left CRST for a variety of reasons, including not liking the working conditions. In short, there has been no showing that defendant's inability to call a single witness was so prejudicial as to constitute a miscarriage of justice necessitating a new trial.

Defendant's motion to grant a new trial on this basis is **denied**.

### 2. *Closing Arguments*

Defendant alleges that plaintiff made statements during closing arguments that defendant contends warrant a new trial. (Doc. 242-1, at 49). During closing argument, in violation of the Court's Order in limine, plaintiff's counsel mentioned defendant's failure to call any of the drivers on three separate occasions. (Doc. 262, at 214-15).

Defendant did not object contemporaneously during the closing argument but raised the issue after the case was submitted to the jury.

"A failure to object to statements made during closing argument waives such an objection." *Billingsley v. City of Omaha*, 277 F.3d 990, 997 (8th Cir. 2002). Even though it may be a difficult choice for counsel to make, "where an improper remark is made during closing argument, counsel may, and preferably should, make the objection, take an exception, or ask for remedial action at the close thereof and before the case is submitted to the jury." *Williams v. Butler*, 746 F.2d 431, 443 (8th Cir. 1984) (quoting *Lange v. Schultz*, 627 F.2d 122, 127 (8th Cir. 1980)) (alterations omitted).

Defendant failed to object to the improper statements each of the three times plaintiff made the statements during closing argument. Defendant also did not object to the statements or ask for a limiting instruction until after the case had been submitted to the jury for deliberation. By failing to object to the remarks made by plaintiff during closing argument, or seeking a remedy before the Court submitted the case to the jury, defendant waived its right to object to the error. Thus, plaintiff's improper statements during closing arguments do not warrant a new trial. Defendant's motion to grant a new trial on this basis is **denied**.

### E. Damages

Defendant requests a new trial on all matters presented in its motions, but asserts a new trial on damages is especially warranted. (Doc. 242-1, at 35). In the alternative, defendant seeks a remittitur. (*Id.*). Defendant alleges the jury had no basis in awarding plaintiff $5 million in punitive damages and, alternatively, that the $5 million was unconstitutionally excessive. (*Id.*, at 43). Defendant also alleges the intentional interference with a contract and unjust enrichment damages awards are excessive, unreasonable, and lack evidentiary support. (*Id.*, at 36-42). For the following reasons, defendant's motion for a new trial on damages is **denied**.

23

## 1. *Punitive Damages*

### a. *Sufficiency of the Evidence*

Defendant claims there was no evidence in the record to support the jury's punitive damage award of $5 million for intentional interference with a contract. (*Id.*, at 43).

Under Iowa law, there is no separate cause of action for punitive damages. *Burke v. Deere & Co.*, 6 F.3d 497, 511 (8th Cir. 1993). "Only evidence which is relevant to the conduct for which liability is imposed can support an award of punitive damages." *Id.* To support a punitive damage award there must be clear, convincing, and satisfactory evidence of "willful and wanton disregard for the rights of another." *Condon Auto Sales & Serv., Inc. v. Crick*, 604 N.W.2d 587, 594 (Iowa 1999). "Conduct is willful and wanton when the actor has intentionally done an act of unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm will follow." *Burke*, 6 F.3d at 511 (citing *Larson v. Great W. Cas. Co.*, 482 N.W.2d 170, 174 (Iowa Ct. App. 1992)). Moreover, punitive damages are not appropriate if there is "reasonable disagreement over the relative risks and utilities of the conduct at issue." *Id.*

Consistent with Iowa law, the Court instructed the jury that if they found in favor of plaintiff and against defendant on the intentional interference with contracts claim, then they should consider whether punitive damages were appropriate. (Doc. 233, at 24). The Court's jury instruction, in pertinent part states:

> You may award punitive damages if you find that [plaintiff] has proven by a preponderance of clear, convincing and satisfactory evidence that [defendant's] conduct constituted a willful and wanton disregard for the rights of another and caused actual damage to [plaintiff]. Conduct is willful and wanton when a person or company intentionally does an act of unreasonable character in disregard of a known or obvious risk that is so great as to make it highly probable that harm will follow.

(*Id.*).

24

Plaintiff asserts there was sufficient evidence for the jury to conclude that defendant's conduct was willful and wanton. Specifically, plaintiff asserts defendant "knowingly targeted [plaintiff] each time it extended an offer of employment to a driver that had pledged driving services to [plaintiff]," that defendant knew about the contracts with each driver because it received notices from plaintiff, and that defendant knew that significant harm would be inflicted because defendant had their own training school and understood the associated costs. (Doc. 254, at 62).

The Court finds the evidence presented at trial supports the jury's finding that the defendant's conduct was willful and wanton. First, the jury could have reasonably concluded that defendant intentionally committed an act of unreasonable character. At trial, plaintiff presented evidence that defendant knew about the non-compete contracts plaintiff had with its drivers. (*Id.*) (citing Exhibits 8A and 8B). Plaintiff also presented evidence that defendant offered employment to plaintiff's drivers despite the non-compete contracts. (*Id.*). Defendant, on the other hand, provided competing testimony that its hiring efforts were not targeted at plaintiff's drivers, but that its hiring practices applied to all carriers and was consistent with industry practices. (Doc. 242-1, at 43). It was the jury's duty to consider the evidence and decide whether defendant's hiring practices were applied to other carriers, whether the practices conformed to industry practices, and whether that made the conduct reasonable. After considering the competing evidence, the jury did not accept defendant's argument and instead concluded defendant's practice of hiring drivers who were under contract with other carriers was of an unreasonable character.

Second, plaintiff produced evidence that could lead a reasonable jury to conclude defendant's conduct disregarded a risk so great as to make it highly probable that harm would follow. At trial, plaintiff presented evidence that defendant knew the costs and challenges associated with training drivers. (Doc. 254, at 62). Plaintiff also presented

25

evidence that the entire industry was struggling to hire enough drivers. (*Id.*). Additionally, defendant's own witnesses testified that defendant has its own driver training school, that defendant knew the costs associated with operating a driving school, and knew how difficult it was to hire enough drivers. (*Id.*). From this evidence, a reasonable jury could find a carrier would be harmed if it had to find replacement drivers. A jury could also find a carrier would be harmed if its training program was unsuccessful in helping the carrier meet its driver needs because the drivers were being hired by other carriers. Additionally, a reasonable jury could find that because defendant operated its own driver training school and understood the problems with driver shortages, defendant could be reasonably certain it would harm plaintiff by hiring drivers who were still under contract. Thus, a jury could reasonably conclude defendant's conduct disregarded a risk so great as to make it highly probable that plaintiff would be harmed.

Because plaintiff presented evidence that defendant committed an act of an unreasonable character and that the act was done in disregard of a known or obvious risk that is so great as to make it highly probably that harm would follow, the Court finds a reasonable jury could conclude defendant's conduct was willful or wanton. Thus, the jury's decision to award punitive damages was proper and the Court denies defendant's motion for a new trial on this issue.

### b.    *Constitutionality of the Punitive Damages Award*

"[P]unitive damages . . . are aimed at deterrence and retribution." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003) (citations omitted). "Punitive damages may properly be imposed to further a State's legitimate interests in punishing unlawful conduct and deterring its repetition." *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 568 (1996) (citations omitted). Nevertheless, "it is well established that there are procedural and substantive constitutional limitations on these awards." *Campbell*, 538 U.S. at 416 (citations omitted). "[P]unitive damages are grossly excessive

if they 'shock the conscience of this court or . . . demonstrate passion or prejudice on the part of the trier of fact.'" *Ondrisek v. Hoffman*, 698 F.3d 1020, 1028 (8th Cir. 2012) (quoting *Stogsdill v. Healthmark Partners, L.L.C.*, 377 F.3d 827, 832 (8th Cir. 2004)) (alteration in original).

The United States Supreme Court has established three "guideposts" for reviewing a punitive damages award: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *Campbell*, 538 U.S. at 418 (citation omitted). Courts view the degree of reprehensibility as the most important factor. *Id*. at 419 (citing *Gore*, 517 U.S. at 575). Reprehensibility requires consideration of factors such as to whether: "the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident." *Campbell*, 538 U.S. at 419 (citing *Gore*, 517 U.S. at 576-77).

Reviewing these factors in light of the evidence in this case, the Court finds there was little or no reprehensibility in defendant's conduct. Few of the factors relevant to reprehensibility apply here. The harm was economic, not physical. The conduct did not evince an indifference to anyone's health or safety. There is no evidence showing plaintiff was financially vulnerable; to the contrary, the evidence showed plaintiff was a large, successful trucking company. The conduct was repeated, but there was no evidence of trickery, or deceit. There was no evidence of malice. This factor weighs against a large punitive damages award.

27

With regard to the proportionality between the actual or potential harm and the punitive damage award, the Court finds the punitive damage award is not unconstitutionally disproportionate to the amount of actual or potential damages. The jury found actual damages of $3 million on the tortious interference claim. The jury then awarded plaintiff $5 million in punitive damages, an amount equal to less than twice the amount of actual damages. In *Gore*, the Supreme Court noted that a punitive damages award "of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety." *Campbell*, 538 U.S. at 425. The Eighth Circuit Court of Appeals has noted that "a 4.8–to–1 ratio is the current constitutional boundary for multimillion dollar compensatory awards," but that "higher ratios [may be appropriate] for smaller compensatory damage awards." *May v. Nationstar Mortgage, LLC*, 852 F.3d 806, 817 (8th Cir. 2017) (citations omitted). Further, defendant itself is a large, successful trucking company for whom a $5 million punitive damage award is not so great as to suggest it would be unconstitutional. *See, e.g.*, *May*, 852 F.3d at 817 (a defendant's wealth may be considered in assessing the constitutionality of a punitive damage award); *Campbell*, 538 U.S. at 427 ("[t]he wealth of a defendant cannot justify an otherwise unconstitutional punitive damages award.") (citation omitted).

A final factor under *Gore* a court should consider in determining whether a punitive damage award is unconstitutional is the comparative amount of civil or criminal penalties that could have been imposed for the conduct. Here, defendant agrees that there are no available civil or criminal penalties against which to measure the proportionality of the punitive damages award. (Doc. 242-1, at 40-41).

Having analyzed the jury's punitive damage award in this case under the *Gore* factors, the Court finds little to no reprehensibility, but finds that the punitive damage award is not disproportionate to the compensatory damages found by the jury. The Court

concludes that the jury's punitive damages award, then, is not unconstitutional and, thus, defendant is not entitled to a new trial on this issue.

### c. Remittitur

Defendant argues in the alternative that the Court should remit the jury's punitive damages award. (Doc. 242-1, at 45). When presented with a question as to whether a state law claim damage award is excessive, state substantive law guides our review. *Jones v. Swanson*, 341 F.3d 723, 736 (8th Cir. 2003). The Iowa Supreme Court has adopted the following standard in considering remittitur:

> We will reduce or set aside a jury award only if it (1) is flagrantly excessive or inadequate; or (2) is so out of reason as to shock the conscience or sense of justice; or (3) raises a presumption it is a result of passion, prejudice or other ulterior motive; or (4) is lacking in evidentiary support. The most important of the above enumerated tests is support in the evidence. If the verdict has support in the evidence the others will hardly arise, if it lacks support they all may arise. If a verdict meets this standard or fails to do substantial justice between the parties, we must either grant a new trial or enter a remittitur.

*Condon Auto Sales & Serv., Inc. v. Crick*, 604 N.W.2d 587, 595 (Iowa 1999), as amended on denial of reh'g (Feb. 4, 2000) (internal citations omitted). "Juries have considerable flexibility in determining the level of punitive damages." *Ondrisek v. Hoffman*, 698 F.3d 1020, 1028 (8th Cir. 2012).

Here, as the Court noted, there was little or no evidence showing that defendant's conduct was reprehensible. Defendant did not specifically target plaintiff through recruiting efforts, nor employ trickery, deceit or misrepresentations. A punitive damage award here is excessive in light of the evidence of actual wanton wrong-doing and the damages suffered. Thus, the Court exercises its discretion to remit the jury's punitive damages award to $3 million to place it on a 1 to 1 ratio with the actual damages found by the jury in this case.

29

## 2. *Interference with Contract*

Defendant next alleges the jury's intentional interference with a contract damages award is "flagrantly excessive, out of reason, and lacking evidentiary support, thus raising a presumption of ulterior motive." (Doc. 242-1, at 36). Again, a court should only set aside or reduce a jury award if it: (1) is flagrantly excessive or inadequate; (2) is so out of reason as to shock the conscience or sense of justice; or (3) raises a presumption it is a result of passion, prejudice or other ulterior motive; or (4) is lacking in evidentiary support. *Condon Auto,* 604 N.W.2d at 595. "[I]f the jury's award is within the evidence [courts] will not disturb it." *Tullis v. Merrill*, 584 N.W.2d 236, 241 (Iowa 1998).

Here, the jury's award for $3 million in damages on the intentional interference with a contract claim has evidentiary support. At trial, plaintiff presented testimony from Souza that the amount of damages on this claim totaled $7,746,781.50. (Doc. 254, at 51). Souza calculated the damages on a profit per driver per day basis. (*Id.*, at 52). Defendant argues the method used by Souza to calculate the damages had several flaws that inflated the damages amount and resulted in an excessive award by the jury. (Doc. 242-1, at 38).

Defendant may be correct that the method used by plaintiff to determine damages contained flaws. The jury, however, was free to consider these flaws when calculating how much to award in damages. The numbers and methodology were presented as evidence and the jury determined $3 million dollars was an appropriate amount to award plaintiff. Because the jury's award of damages was within the evidence, it would be inappropriate for the Court to disturb it. Nor does the Court find the award to be flagrantly excessive or inadequate; so out of reason as to shock the conscience or sense of justice; or that it raises a presumption it is a result of passion, prejudice or other ulterior motive. Thus, the Court **denies** defendant's motion for a new trial, or in the

30

alternative a remittitur, as it applies to the intentional interference with a contract damages award.

### 3. Unjust Enrichment

The Court has already granted defendant's motion for judgment as a matter of law on plaintiff's unjust enrichment claim in this Order. In granting that motion, the Court found there was no basis for the jury's verdict on the unjust enrichment claim and therefore no basis for awarding damages. Because the Court has already vacated the damages, it does not need to address whether they were excessive or not here.

## IV. MOTION TO AMEND JUDGMENT

In its Motion to Amend Judgment, plaintiff moves to amend the judgment entered in this matter to specifically state that the judgment includes post-judgment interest. (Doc. 245, at 1). Plaintiff raises this motion pursuant to Federal Rules of Civil Procedure 59(e) and 60. (*Id.*). Defendant does not resist plaintiff's motion.

Rule 59(e) provides that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." The language of Rule 59(e) provides only a deadline for motions "to alter or amend," without specifying the standards for alteration or amendment. The Eighth Circuit Court of Appeals has explained that, under Rule 59(e), a court may alter or amend a judgment only if it finds a "manifest" error of law or fact in its ruling. *See Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 414 (8th Cir. 1988) (quoting *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir.), *as amended*, 835 F.2d 710 (7th Cir. 1987), quoting in turn *Keene Corp. v. Int'l Fidelity Ins. Co.*, 561 F. Supp. 656, 665–66 (N.D. Ill. 1982), *aff'd*, 736 F.2d 388 (7th Cir. 1984)). The Eighth Circuit Court of Appeals has more fully explained the standard under Rule 59(e):

> Federal Rule of Civil Procedure 59(e) was adopted to clarify a district court's power to correct its own mistakes in the time period immediately following entry of judgment. Rule 59(e) motions serve a limited function

> of correcting manifest errors of law or fact or to present newly discovered evidence. Such motions cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment.

*Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black Hills*, 141 F.3d 1284, 1286 (8th Cir. 1998) (internal quotations omitted) (citations omitted).

Federal Rule of Civil Procedure 60 provides that "[t]he court may correct . . . a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." "Rule 60(a) is used to provide relief from judgment based on . . . mistakes in the record where the parties' intentions are clearly defined and all the court need do is employ the judicial eraser to obliterate a mechanical or mathematical mistake." *EEOC v. CRST Van Expedited, Inc.*, No. 07-CV-95-LRR, 2017 WL 4873070, at *2 (N.D. Iowa Oct. 27, 2017) (citing *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1539 (8th Cir. 1996)) (internal quotation marks and alterations omitted). In sum, "[t]his rule allows the district court to correct omissions in its judgment so as to reflect what was understood, intended and agreed upon by the parties and the court." *United States v. Mansion House Ctr. N. Redevelopment Co.*, 855 F.2d 524, 527 (8th Cir. 1988) (per curiam).

The Court finds Rule 59(e) applies here, and therefore does not need to address the motion under Rule 60. Courts have found that "a motion for prejudgment interest is subject to Rule 59(e) because it 'is an element of plaintiff's complete compensation' and 'it does not raise issues wholly collateral to the judgment in the main cause of action.'" *Reyher v. Champion Intern. Corp.*, 975 F.2d 483, 488 (8th Cir. 1992) (quoting *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 175 (1989). Like prejudgment interest, post-judgment interest is also an element of plaintiff's complete compensation and does not raise issues wholly collateral to the judgment in the main cause of action. Title 28, United States Code, Section 1961 states: "Interest shall be allowed on any money judgment in a

civil case recovered in a district court." Courts have found Title 28, United States Code, Section 1961 to mean that post-judgment interest is mandatory and should be awarded. *Travelers Prop. Cas. Ins. Co. of Am. v. Nat'l Union Ins. Co. of Pittsburgh*, 735 F.3d 993, 1007 (8th Cir. 2013). Because post-judgment interest is mandatory, it is an element of plaintiff's compensation and does not raise issues wholly collateral to the judgment.

As it applies to calculating post-judgment interest, Section 1961 provides: "Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of judgment."

Because the motion was properly raised and because post-judgment interest is mandatory, the Court therefore amends the judgment here to clarify plaintiff's entitlement to post-judgment interest. Thus, the Motion to Amend the Judgment is **granted**. The judgment is hereby amended to state that it includes post-judgment interest from its date of entry, July 23, 2019.

## V. *MOTION FOR LEAVE TO FILE AMENDED BILL OF COSTS*

Plaintiff also moves for leave to file an amended bill of costs and a reply in support of the bill of costs. (Doc. 248). Plaintiff asserts the amended bill of costs is necessary "to correct the inadvertent omission of costs relating to the video deposition of Otto Welch, the invoice relating to the video deposition of Kort Chase and itemized invoices for the depositions of Tim McLain, David Souza, Chris Spier and Richard Stocking." (*Id.*, at 2). Plaintiff also moves for leave to file a reply to defendant's objection and resistance to plaintiff's bill of costs. (*Id.*, at 1).

Defendant resists plaintiff's motion. (Doc. 250). Defendant first asserts that the amended bill of costs should be denied as improper and untimely because a bill of costs must be filed within 14 days after entry of judgment, and the amended bill of costs is "an

improper run around" of that requirement. (*Id.*, at 3). Defendant next argues plaintiff's motion for leave to file a reply brief should be denied because local rules do not permit filing a reply brief unless the Clerk of Court requests one and because plaintiff did not comply with the local rule's good faith meet and confer requirement. (*Id.*, at 1).

### A. Amended Bill of Costs

Local Rule 54 establishes the local procedure for taxation of costs. Rule 54(a)(1) states: "Within 14 days after entry of judgment, a party entitled to recover costs must complete and file a form A.O. 133. ... Failure to file the form by this deadline constitutes a waiver of the right to have costs taxed." The Bill of Costs Guidelines for the Northern District of Iowa ("Local Guidelines") additionally state that "[s]upporting documentation should be filed as attachments to that same event." Local Guidelines, at 2. "It is normally for the district court to enforce compliance with its local rules." *Drake v. Scott*, 812 F.2d 395, 401 (8th Cir. 1987). Local Rule 54, therefore, controls this matter.

Here, judgment was entered on July 23, 2019. (Doc. 238). Plaintiff, therefore, was required to file its bill of cost no later than August 6, 2019. On August 6, 2019, plaintiff timely filed an A.O. 133 form and provided documentation for some of the costs. (Doc. 239). On August 26, 2019, plaintiff filed its amended bill of costs that included additional itemized costs and documentation for several costs listed on the first bill of costs. Because the additional itemizations and documentation were submitted 20 days after the deadline to file a bill of costs, the additional itemizations are untimely. The Court will not tax such costs. The Court further denies plaintiff's requests for costs where plaintiff submitted no timely documentation.

Plaintiff's motion for leave to file an amended bill of costs is therefore **denied**.

### B. Reply in Support of Bill of Costs

As previously discussed, Local Rule 54 establishes the procedure for taxation of costs and the local rules should be applied here. The Local Rules permit a party opposing

the taxation of costs to file a resistance to the bill of costs within 14 days after service of the costs. LR 54(a)(1)(C). Local Rule 54(a)(1)(D), however, provides that a reply to the resistance "is not needed unless the Clerk of Court indicates that a reply would be helpful in resolving a dispute." The Local Guidelines provides further guidance for the local rules and states that "[r]eplies to the resistance are not to be filed unless requested by the Clerk of Court." Local Guidelines, at 3. Although the Court stayed a decision on the bill of costs pending a decision on defendant's Renewed Motion for Judgment as a Matter of Law, the Court's Order made clear the stay "does not alter the applicability of Local Rule 54(a)(1)(D) in this case." (Doc. 244, at 2). Here, the Clerk of Court has not requested a reply from plaintiff. Because the Clerk of Court has not requested a reply, plaintiff should not be permitted to file a reply.

Plaintiff's motion for leave to file a reply in support of its bill of costs is therefore **denied**.

## VI. CONCLUSION

For these reasons, defendant's Renewed Motion for Judgment as a Matter of Law (Doc. 242) is **granted in part and denied in part**, and defendant's alternative motion for a new trial or a remittitur (*Id.*) is also **granted in part and denied in part**. The renewed motion for judgment as a matter of law is denied as it pertains to the intentional interference with a contract claim and is granted as it relates to the unjust enrichment claim. Similarly, the motion for a new trial is denied as to the intentional interference with a contract claim and conditionally granted as to the unjust enrichment claim if the judgment is later vacated or remanded on appeal. Additionally, the motion for a new trial on damages is **denied** based on the Court's findings on the damages awards, but defendant's alternative motion for remitter is **granted**, in part, to reduce the jury's punitive damages award to $3 million.

Plaintiff's Motion to Amend Judgment (Doc. 245) is **granted**. Plaintiff's Motion for Leave to File Amended Bill of Costs (Doc. 248) is **denied**.

**IT IS SO ORDERED** this 16th day of December, 2019.

_____
C.J. Williams
United States District Judge
Northern District of Iowa

36